UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED

Scott Stern,
400 West Main Street
North Adams, MA. 01247, (413)664-7805
and other persons similarly situated in the
Commonwealth of Massachusetts; and other persons
similarly situated in the United States of America; and
other persons similarly situated not currently residing
within the Commonwealth of Massachusetts or the
United States of America,

      Plaintiff,
vs.

) Case No.: 04-30176-MAP
)
)
)
)
)
)
)
)
)
)
)
)
)

University of Massachusetts at Amherst
University Health Services
Director of Health Services, Bernadette Melby
150 Infirmary Way
Amherst, Massachusetts. 01003,
Defendant

and,

University of Massachusetts at Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts 01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts 02108
Defendant

and,

Massachusetts Board of Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696
Defendant

and,

Division of Health Care Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

_____

## COMPLAINT-CLASS ACTION

### I. Preliminary Statement

1. This is a class action lawsuit charging the University of Massachusetts at Amherst, Health Services with systemic discrimination against part-time students enrolling in less than 75% of the University of Massachusetts at Amherst guidelines for enrollment requirements for full-time Students.

2. The University of Massachusetts Health Services demands and requires that all Part-Time students enrolled in more than five (5) credits are required to enroll in the Qualifying Student Health Insurance Plan, hereinafter referred to as "QSHIP" according to Massachusetts General Law Chapter 15A, §18.

3. The Plaintiff named above, was a part-time student in the Fall of 2003, enrolled at the University of Massachusetts at Amherst with two courses which the University of Massachusetts at Amherst has defined and credited as being six (6) credits.

4. The Plaintiff named above, maintains that the University of Massachusetts Health Services has violated statutory rights by over-charging students, that are legally defined as "part-time" by the Massachusetts Legislature; the Code of Massachusetts Regulations and the University of Massachusetts at Amherst, with a health fee in the amount of $705 and other amounts over a period of over ten (10) or more Years. Said period of time can be since September 1, 1989 when the Legislature enacted M.G.L. 15A.

5. The Plaintiff named above, maintains that he has attempted to discuss and resolve this matter with the University of Massachusetts at Amherst Director of Health Services, Bernadette Melby, 150 Infirmary

Way, Amherst, Massachusetts; Gladys Rodriguez, Associate Dean of Students, University of Massachusetts at Amherst, 227 Whitmore Administration Building, Amherst, Massachusetts; Brian Burke, Associate Counsel, Office of the General Counsel, University of Massachusetts at Amherst, 300 Whitmore Administration Building, Amherst, Massachusetts; Tom Mathers, Interim Director of the Bursars Office, University of Massachusetts, 215 Whitmore Administration Building, Amherst, Massachusetts.

6. The Plaintiff named above, is unable to be enrolled at the University of Massachusetts at Amherst for the Fall 2004 semester because the University of Massachusetts at Amherst has withdrawn the Plaintiff for Administrative Reasons, the non-payment of this University of Health Services mandated fee of $705.

7. The Plaintiff named above, maintains that the University of Massachusetts at Amherst Student Legal Services Office was unable to proceed with a lawsuit against the University of Massachusetts at Amherst against the Massachusetts Board of Trustees because of Administrative Bulletin # and vote by the University of Massachusetts Board of Trustees that removed the ability of the University of Massachusetts at Amherst Student Legal Services office to sue on behalf of the Plaintiff, and other students similarly situated, named above in this matter.

8. The Massachusetts Board of Trustees receives its authority from the Massachusetts General Court, the Massachusetts State Legislature under Massachusetts General Law Chapter 75 §1, Status; Governing Body.

9. The University of Massachusetts at Amherst receives its management policy, guidelines and Regulations from the Massachusetts Board of Trustees under Massachusetts General Law Chapter 75, § 1, Status; Governing Body.

10. The University of Massachusetts at Amherst Health Services receives its management, policy and regulations from the Massachusetts Board of Trustees under Massachusetts General Law Chapter 75, § 1, Status; Governing Body.

11. The Massachusetts Board of Education receives its authority from the Massachusetts General Court, the Massachusetts State Legislature under Massachusetts General Law Chapter 15A, § 1

12. The Plaintiff named above, is a client of the Massachusetts Rehabilitation Commission and is an individual with a disability and receives his funding to attend the University of Massachusetts at Amherst through the Massachusetts Rehabilitation Commission.

13. The Massachusetts Rehabilitation Commission receives its authority from the Massachusetts General Court, the Massachusetts State Legislature under Massachusetts General Law Chapter 6, §75, of which the Massachusetts General Court derives its regulatory authority from the United States Code 706 and 722, as amended by the Rehabilitation Act Amendments of 1992, P.L. 102-569, regulations regarding referral and application, eligibility and order of selection can be found at 107 CMR 4.00:M.G.L. c. 6, s. 75

14. The Massachusetts Rehabilitation Commission is authorized under the Federal Government Code of Federal Regulations, Title 34, Chapter III, part 361, which Under the State Vocational Rehabilitation Services Program (Program), the Secretary(U.S. Education) provides grants to assist States in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs, each of which is—
(a)An integral part of a statewide workforce investment system; and (b)Designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that they may prepare for and engage in gainful employment. (Authority: Section 100(a)(2) of the Act; 29 U.S.C. 720(a)(2))

## II. Jurisdiction and Venue

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331(a) and Sections 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 to declare the rights of the parties and to grant all further relief found to be necessary and proper.

16.. Venue is proper in the United States District Court for Western District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred within this judicial district and all relevant facts to this action occurred in this District.

## III. Parties

17. Scott Stern is a resident of North Adams, Massachusetts

18. University of Massachusetts Board of Trustees is the Management of the University of

Massachusetts at Amherst within the Commonwealth of Massachusetts and oversee five campuses including the University of Massachusetts at Amherst.

19. University of Massachusetts at Amherst Health Services is the Health Services Office, medical facility at the University of Massachusetts at Amherst Campus.

20. Bernadette Melby, is Director of the University of Massachusetts Health Services, responsible for enforcement of the Code of Massachusetts Regulations regarding health insurance for full-time and part-time students, and is being sued under her official capacity only.

21. Brian Burke, is Associate Counsel for the University of Massachusetts at Amherst Campus. and is being sued under his official capacity only.

## IV Class Action Allegations

22. The individual Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on behalf of himself and on behalf of a class consisting of all past, present and future University of Massachusetts at Amherst part-time students, that, because of fraudulent and discriminatory activities on the part of Director of Health Services Bernadette Melby, has sought to over-charge students that classify as part-time according to the Code of Massachusetts Regulations. Students that are enrolled in five (5), six(6), seven (7) or eight (8) credits at the University of Massachusetts Amherst Campus.

23. The Plaintiff is an aggrieved person under federal civil rights law as a result of the actions, policies and practices of Defendants. The named individual Plaintiff seek immediate declaratory and injunctive relief on behalf of himself to prevent Defendants from denying Plaintiff access to enroll at the University of Massachusetts at Amherst during the Fall of 2004 by removing the status of "Administrative Withdrawal" from his record(s) and allow Plaintiff to sign up and continue his pursuit of a higher education.

24. All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of Defendants. Plaintiff seeks, on behalf of all class members, an order from this court, that shall prevent the Defendants from over-charging students, and the class members, here in named in this class action suit, presently and in the future.

25. All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of Defendants. Plaintiff seeks, on behalf of all class members, the University of Massachusetts Health Services to reimburse, credit or otherwise refund any and all monies charged against the class

members to this suit, for whatever period of time the Defendants have been incorrectly, wrongfully charging students a mandatory health fee, during regular academic session, during non-regular academic session, whenever such fee was billed and received as monies from the class members, irregardless of the term the class members were attending the University of Massachusetts at Amherst.

26. This matter is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) in that:

(a) The class members are so numerous as to make the joinder of all them impracticable. Based on information and belief, there have been thousands of students enrolled at the University of Massachusetts at Amherst Campus on a part-time basis. These students have been enrolled in courses to further their personal and education goals. The class members may or may not still be attending the University of Massachusetts at Amherst; may or may not reside in the Commonwealth of Massachusetts; may or may not reside in the United States of America. The class members affected may be matriculating or non-matriculating students. The class members may be both older and younger students and did not realize that they were being charged a fee that was not mandatory. The failure of the University of Massachusetts at Amherst Health Services to distinguish between the two classifications of part-time students has led to a discriminatory act against the class members. The failure of the University of Massachusetts at Amherst to monitor the compliance of their Health Services Office with regard to the QSHIP program under Massachusetts General Laws has led to a discriminatory act against the class members. The failure of the University of Massachusetts Board of Trustees to ensure that students were properly classified according to the Massachusetts General Laws and the Code of Massachusetts Regulations has led to a discriminatory act against the class members. The failure of the Director of Health Services, Bernadette Melby to take remedial action to overcome the effects of past policies and practices has led to this class action lawsuit on behalf of the class members.

(b) There are questions of law and fact common to the class members. These common Questions of law and fact predominate over questions affecting individual class members. Among the questions of law and fact common to the class is whether the practices and policies of the University of Massachusetts at Amherst Health Services; the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; and the Massachusetts Board of Higher Education; the Division of Health Care Finance and Policy has violated the class members rights to seek a higher education without exploiting their status as part-time students by

mandating a health insurance program in violation of the Code of Massachusetts Regulations CMR 114.6 3.00 Qualifying Student Health Insurance Program (QSHIP). Whether the University of Massachusetts Board of Trustees has denied these class members the ability to sue, on their behalf, against the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; the Board of Higher Education, and the Division of Health Care Finance and Policy by the University of Massachusetts Student Legal Services Office which is funded by both Full-time and Part-time students at the University of Massachusetts at Amherst. Whether the University of Massachusetts Board of Trustees can prevent the University of Massachusetts Student Legal Services Office from seeking injunctive and declaratory relief on behalf of a class of students such as name in this proposed class action suit.

(c) The claims of the individual Plaintiff are typical of the claims of the proposed class members. The Plaintiff, as the other class members, are students that wish to continue their education on a part-time basis, and desire to further their education without being mandated to participate in a health insurance program at the University of Massachusetts at Amherst through the University of Massachusetts at Amherst Health Services Office. The Plaintiff, as the other class members, may have already enrolled in courses at the University of Massachusetts at Amherst and may have been subjected to this mandatory fee of the health insurance program.

(d) The named individual Plaintiff will fairly and adequately protect the interests of the class members.

(e) Defendants have acted on grounds generally applicable to the class, thereby making final declaratory and injunctive relief with respect to the class as a whole appropriate.

## V.    Facts

27.    During the Fall of 2003, the Plaintiff, a double-major in Legal Studies and Political Science attended the University of Massachusetts at Amherst Campus and enrolled in two (2) courses.

28.    Plaintiff's two (2) courses at the University of Massachusetts amounted to six (6) credits.

29.    Plaintiff, according to the University of Massachusetts guidelines regarding part-time and full-time status, is classified as a part-time student.

30.    Plaintiff, during the fall of 2003, received funding to return to the University of Massachusetts at Amherst through the Massachusetts Rehabilitation Commission.

31. Plaintiff was informed, during the fall of 2003 semester, that this fee was mandatory and it must be paid otherwise Plaintiff would be withdrawn from the University of Massachusetts at Amherst.

32. Plaintiff met with the Director of Health Services, Bernadette Melby and disagreed with the billing of this mandatory program. The Director of Health Services, Bernadette Melby, during this meeting, suggested that "she could reduce the minimum number of credits to one (1) as opposed to five (5) if she so desired." and, in addition, having known and been properly informed of the issue, in advance, failed to provide any documentation to back up this variation with the Code of Massachusetts Regulations. Plaintiff attempted to reason with the Director by arguing that the Board of Trustees cannot change the drinking age on the University of Massachusetts at Amherst Campus by lowering the age for students to purchase alcoholic beverages, on the Amherst or any other Campus, to 18, contrary to Massachusetts General Laws which allow alcoholic beverages to be purchased if one is over the age of 21.

33. Plaintiff met with Daniel Maguffin, during the fall of 2003 and was able to convince Mr. Maguffin that said fee was inappropriate and should not have been billed. The result of this meeting between Plaintiff and the Bursar, Dan Maguffin, allowed Plaintiff to remain active and enrolled at the University of Massachusetts at Amherst during the fall of 2003 and the subsequent amount was credited on Plaintiff's tuition statement.

34. Plaintiff received notification, by means of a tuition statement, that said health program was credited and removed from Plaintiff's bill.

35. Plaintiff received notification, by means of a tuition statement, that said health program was being rebilled for the health insurance program.

36. Plaintiff received notification, by means of a registered letter, on August 23, 2004, by means of a registered letter, which indicated that there was an outstanding balance on Plaintiff's account, of which, $705 was for this health insurance program. This letter was written by Elizabeth Reardon, Collections Officer from the University of Massachusetts at Amherst, 406B Goodell Building, 140 Hicks Way, Amherst, Massachusetts 01003 This bill, fortunately, informed Plaintiff that he was entitled to respond to the matter and explain the situation. This letter noted that "actions may include assignment of the outstanding balance to an outside agency, or an attorney for litigation. Both of these actions will result in additional costs assessed against the balance due. In additional, under Massachusetts General Law Ch. 7A, Ch. 62D and 815 CMR 9.00, any unpaid balances may be subject to late charges and processing fees, and intercept of State payment or Tax refunds" Plaintiff telephoned

the individual named Elizabeth Reardon, and explained the situation that he was having with regard to the outstanding amount. Ms. Reardon is currently, for the time being, allowing the account to be placed on a "hold" status to avoid further penalties and further collection efforts until this matter becomes resolved.

37.     Plaintiff contacted the Interim Bursar, Tom Mathers, at the University of Massachusetts at Amherst, 215 Whitmore Administration Building, Amherst, Massachusetts on Friday, September 3, 2004 and explained the situation to him in an effort to maintain an "active" status on the University campus. Tom Mathers attempted to contact Brian Burke, Associate Counsel for the University of Massachusetts at Amherst at 300 Whitmore Administration Building, Amherst, Massachusetts. Tom Mathers also called Bernadette Melby in regard to this situation and was told, by Ms. Melby, that Plaintiff should "just pay it" and then "seek a refund." Tom Mathers, Interim Bursar, agreed that from a customer standpoint, Plaintiff should not have to pay for an item that is incorrect while waiting for disposition to be properly heard and adjudicated. Tom Mathers also contacted his supervisor, the Controller for the University of Massachusetts at Amherst, Andrew Mangles, who felt that the situation was "unique" and "that Mr. Stern may have stumbled across something which could cost the University thousands of dollars"

38.     Under the Code of Massachusetts Regulations 114.6 CMR 3.00 Student Health Insurance Program, where one can obtain this regulation at the website: www.mass.gov/dhcfp/pages/dhcfp10.htm [handwritten], the CMR defines, on page 15 of this report, under CMR 3.02, the classification of students as follows:

Full-time- A student who meets the minimum academic requirements for full-time students as Defined by the institution of higher education in which the student is enrolled.

Part-time- A student who participates in at least 75% of the academic requirements for full-time Students.

39.     The Code of Massachusetts Regulations CMR 114.6 CMR 3.00 is promulgated in accordance with the authority granted to the Division of Health Care Finance and Policy by Massachusetts General Law Ch. 15A, § 18 and St. 1996, c. 151, §597

40.     The University of Massachusetts Board of Trustees allows the individual five University campuses to set their own guidelines in regard to what constitutes a full-time status with students.

41.     The University of Massachusetts at Amherst, academic regulations, can be found at:

, and clearly define what a full-time student is.

Under Section 2, **II. ENROLLMENT CATEGORIES.**

Enrollment is an official relationship between students and the University. In order to be considered officially enrolled, students must pay all financial obligations to the University and register for courses. Failure to meet either of these conditions means the student is not enrolled for the current semester.

    A. **Full-Time Students.**
        Full-time students are required to carry the minimum load of 12 credits each semester.

    B. **Part-Time Degree-Seeking Students.**
        Part-time (designated as non-classified) is an original admissions category for students who are admitted as candidates for a degree, but who cannot devote their full time to the pursuit of a degree. In addition, full-time students may become part-time. A change in status may be requested during the pre-registration or Add/Drop periods for the semester in which the change of status is sought. Full-time students in good academic standing may elect part-time status without Dean's approval. Students who are not in good academic standing are required to have the approval of their undergraduate dean to change status to part-time. In all instances, the Registrar's Office must be notified on the appropriate forms available from that office. Part-time students are subject to all academic regulations and standards. (See "Academic Status," below.)

42.    Plaintiff is unable to be officially enrolled because of the status placed on him by the Bursar's Office, of "Administrative Withdrawal" caused by the University of Health Services billing the Plaintiff for a health insurance program that is contrary to the Code of Massachusetts Regulations and the Massachusetts State Legislatures intent with the code.

43.    The Code of Massachusetts Regulations, located at: www.mass.gov/dhcfp/pages/dhcfp110.htm [handwritten] Exhibit "A"
110.htm, page 1, states:

"Effective September 1, 1989, the Massachusetts Law Chapter 15A, § 18 requires that every full-time and part-time student enrolled in an institution of higher learning in Massachusetts participate in a qualifying student health insurance program (QSHIP) or in a health benefit plan with comparable coverage. A part-time student is defined as a student participating in at least 75% of the full-time curriculum.

44.    Basic math computations have not changed over time. The Board of Higher Education cannot change basic math computations, nor can the University Board of Trustees, nor the University of Massachusetts

at Amherst Health Services Office; nor the Division of Health Care Finance and Policy, and of course, nor can this Plaintiff. 75% of the full-time curriculum (which, at the University of Massachusetts at Amherst is 12) is 9. Plaintiff attempted on numerous occasions to calculate a different answer but explicably arrived at the same answer each time. That answer is the same because basic math computations have not changed since the beginning of time

45. The class members are those part-time students that have been billed this qualifying student health insurance program from September 1, 1989 to the present; and if they had taken five (5), six (6), seven (7), and eight (8) credits, and have paid this amount to the University of Massachusetts at Amherst, have had action brought against them for non-payment of this health insurance program, have incurred litigation fees, fines, and any additional charges accorded by Massachusetts General Law Chapter 7A, Chapter 62D and 815 CMR 9.00

46. According to the Code of Massachusetts Regulations:

"Prior to the 1989-1990 academic year, there was no law requiring students to have health insurance in order to enroll in higher education, nor was there a standard set of defined minimum benefits for college and university health insurance programs. Chapter 23 of the Acts of 1988 changed that. It created a new state agency, the Department of Medical Security, to administer a range of statutory programs to increase student access to care and to set minimum health benefits standards. In 1996, those responsibilities were transferred to the Division of Health Care Finance and Policy."

47. Plaintiff, on December 22, 2003, discussed this matter with the University of Massachusetts Student Legal Services Office, with Suman Rastogi, a law clerk. Plaintiff also discussed this matter with Attorney Michelle Leaf, Senior Staff Attorney. It was at this time that Attorney Michelle Leaf, Senior Staff Attorney noted that Plaintiff may have a case against the University and the University of Massachusetts Board of Trustees, but, because the Student Legal Services Office successfully won a lawsuit against the Board of Trustees, during the 1980's, there ability to litigate on behalf of students against the University, the University Board of Trustees and other agencies, boards, institutions and any other entity was terminated. Only recently has the Student Legal Services Office been able to file, on behalf of students, in a limited sphere of law, litigation on their behalf.

The Student Legal Services Office is, in affect, not fulfilling its full, complete and original mandate to students, to the citizens of the Commonwealth of Massachusetts; both full time and part time students; both Undergraduate and Graduate; and Doctoral Candidates, because the University of Massachusetts Board of Trustees has discriminated against the same citizens and students; and has failed to insure that students, and their civil rights, accorded by the Massachusetts Consitution, accorded by the United States Constitution could be advocated and litigated through the University of Massachusetts at Amherst Student Legal Services Office because the University of Massachusetts Board of Trustees lost a lawsuit litigated by the Umass Student Legal Services Office.

48. On February 9, 2004, Suman Rastogi, Law Clerk at the Student Legal Services Office, conducted an investigation and contacted the Division of Health Care Finance and Policy. At this time, Ms. Rastogi spoke with a Mr. Gatachew, or someone with a name similar to this, or close proximity to this spelling, at the Division of Health Care Finance and Policy on two separate occasions, January 29, 2004 and February 9, 2004. Ms. Rastogi recorded that Mr. Getachew, on January 29, 2004 admitted and spoke to her that students that "take less than nine (9) credits do not need to take QSHIP" and he would send letter indicating as such. Having not received the letter by February 9, 2004, Ms. Rastogi telephone Mr. Getachew again at the Division of Health Care Finance and Policy and spoke with Mr. Getachew. On this separate occasion Mr. Getachew informed Ms. Rastogi that his legal counsel had advised him "not to give anything in writing" and that "the law is clear about part-time students." and that "students have to resolve this problem with Umass officials"

49. Massachusetts constitution's first article, guaranteeing "inalienable rights" to all citizens. The University of Massachusetts Board of Trustees has denied Plaintiff "inalienable rights" by denying him access to legal help, while mandating that Plaintiff must pay for the Student Legal Services through a Student Activities Fee. The Constitution of the Commonwealth of Massachusetts, Pt. 1, Art. 1, which provides that government is instituted for the common good, for the protection, safety, prosperity, and happiness of the people, and not for the profit, honor, or private interest of any one man, family, or class of men." The University of Massachusetts Board of Trustees have held themselves out to be a different "class of men" and have discriminated and wrongfully denied the Plaintiff the ability to seek legal recourse, with the assistance of the University of Massachusetts Student Legal

Services Office, against the named Defendants, by Plaintiff and the class members.

50. Under the Massachusetts Constitution, Article IV. The people of this commonwealth have the sole and exclusive right of governing themselves, as a free, sovereign, and independent state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, which is not, or may not hereafter, be by them expressly delegated to the United States of America in Congress assembled. Plaintiff, seeks the right to have choice of his legal representation for the class members, the University of Massachusetts Student Legal Services Office, with Attorney Chuck J. Dimare and Michelle Leaf as Counsel for Plaintiff and counsel for the class members.

51. Under the Massachusettes Constitution, Article V. All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them. The University of Massachusetts at Amherst Board of Trustees is accountable to the Plaintiff and the class members. The Board of Higher Education is accountable to the Plaintiff and the class members. The Division of Health Care Finance and Policy is accountable to the Plaintiff and the class members. The University of Massachusetts at Amherst Health Services is accountable to the Plaintiff and the class members.

52. Under the Massachusetts Constitution, Article VI. No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural. The University of Massachusetts Board of Trustees has voted to place themselves out of harms way by preventing any lawsuits to be filed by the University of Massachusetts Student Legal Service Office by entitling themselves to "particular and exclusive privileges" that other citizens, distinct from those of the community, in the Commonwealth of Massachusetts are not accorded.

53. Under the Massachusetts Consitution, Article VII. Government is instituted for the common good; for the protection, safety, prosperity and happiness of the people; and not for the profit, honor, or private interest of

any one man, family, or class of men: Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it. Plaintiff, and the class members, seek to enforce Massachusetts General Law Chapter 15A in respect to their rights as a class of students that have had their prosperity and happiness affected by the discriminatory actions on the part of the Defendants.

54. Under the Massachusetts Constitution, Article XI. Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws. The University of Massachusetts Board of Trustees require that a Student Activities Fee be paid by full-time and part-time students in Order to maintain services such as the University of Massachusetts Student Legal Services Office. The fact that the University of Massachusetts Board of Trustees demands that students make payments for services but denies a student access to obtain services is contrary to the Massachusetts Constitution. The fact that a Mr. Getachew admitted that students are not required to obtain health insurance if they are enrolled under nine (9) credits and then, sought counsel to obtain advice; and counsel instructed Mr. Getachew "to not give anything in writing", and denied Ms Rastogi, on behalf of this Plaintiff, a certain remedy, by having recourse to the laws, does invoke Plaintiffs Federal and State rights "for all injuries and wrongs which he may receive in his person, property, or character."

55. Under the Massachusetts Constitution, Article XXIII. No subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature. The Commonwealth of Massachusetts Legislature writes the laws of this great commonwealth. The Qualifying Health Insurance Program, as administered by the University of Massachusetts Health Services; the University Board of Trustees; the Board of Higher Education; the Division of Health Care Finance and Policy have imposed, fixed and levied a fee, under the pretext that such fee was allowable by laws enacted by the commonwealth.

WHEREFORE Plaintiff, and the proposed class members, respectfully pray that the Court grant the declaratory and injunctive relief, as well as nominal damages and other relief, set forth hereinafter in the prayer for relief.

## GENERAL PRAYER FOR RELIEF

WHERFORE, Plaintiffs pray for judgment as follows:

a. That this Court permanently enjoin the conduct of Defendants, their officers, agents, servants, and employees and direct Defendants to remove the status of "administratively withdrawn" from the Plaintiff's record, and allow the Plaintiff to enroll, at the University of Massachusetts at Amherst;

b. That this Court permanently enjoin Defendants, their officers, agents, servants, and employees from denying Plaintiff, equal rights to use the University of Massachusetts Student Legal Services Office to act as counsel for Plaintiff and the class members.

c. That this Court render a Declaratory Judgment declaring the Defendants' conduct denying equal rights to Plaintiff, , and the class members to be invalid and unconstitutional in all respects under the Massachusetts General Laws, Massachusetts Consitution, the United States Constitution and the Code of Federal Regulations Title 34.

d. That this Court render a Declaratory Judgment declaring that defendants' refusal to allow Plaintiff, and the proposed class members, to have equal access to services paid for through University Student Activities Fees, but not permitted to utilize such services as paid for as unconstitutional and constitutes impermissible discriminatory denial of civil rights of the Plaintiff, and the proposed class of members, accorded by the Massachusetts Constitution.

e. That this Court retain jurisdiction of this matter for the purposes of enforcing the Court's order;

g. That this Court exercise discretion pursuant to Rule 65 of the Federal Rules of Civil Procedure to accelerate the trial on the merits;

h. That this Court order a trial by jury to assess actual and compensatory damages suffered by Plaintiffs due to Defendants' flagrant violation of Plaintiff's constitutional rights;

i. That this Court issue the requested injunctive relief without condition of bond or surety or other security being required of Plaintiffs.

## PRAYER FOR OTHER RELIEF

j. Grant to Plaintiffs an award of nominal damages;

k. Grant to Plaintiffs an award of the costs of litigation, including reasonable attorneys' fees and expenses;

n. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 6th day of September 2004.

*Scott Stern*

Scott Stern

Pro-Se Plaintiff

400 West Main Street

North Adams, Massachusetts 01247