UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Scott Stern,
400 West Main Street
North Adams, MA. 01247,
and other persons similarly situated in the Commonwealth of Massachusetts; and other persons similarly situated in the United States of America; and other persons similarly situated not currently residing within the Commonwealth of Massachusetts or the United States of America,

Plaintiff,

vs.

University of Massachusetts at Amherst
University Health Services
Director of Health Services, Bernadette Melby
150 Infirmary Way
Amherst, Massachusetts. 01003,
Defendant

and,

University of Massachusetts at Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts 01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts 02108
Defendant

and,

Massachusetts Board of Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696
Defendant

Case No.: 04-30176-MAP

EMERGENCY MOTION FOR PRELIMINARY DECLARATORY AND INJUNCTIVE RELIEF ORDERING DEFENDANTS AND THEIR AGENTS, EMPLOYEES TO ENROLL PLAINTIFF AT THE UNIVERSITY OF MASSACHUSETTS AT AMHERST and MEMORANDUM OF LAW IN SUPPORT OF THIS EMERGENCY MOTION

and,

Division of Health Care Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

---

NOW COMES PLAINTIFF AND MOVES THIS COURT FOR AN EMERGENCY MOTION FOR PRELIMINARY DECLARATORY, MANDATORY INJUNCTIVE RELIEF TO ALLOW PLAINTIFF TO ENROLL AT THE UNIVERSITY OF MASSACHUSETTS AT AMHERST.

This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331(a) and Sections 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 to declare the rights of the parties and to grant all further relief found to be necessary and proper.

Venue is proper in the United States District Court for Western District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred within this judicial district and all relevant facts to this action occurred in this District.

Plaintiff, Scott Stern, on behalf of himself, an individual with a disability, a client of the Massachusetts Rehabilitation Commission, moves the court pursuant to Federal Rules of Civil Procedure 65, for a preliminary Declaratory, Mandatory Injunction requiring Defendants to reinstate Plaintiff, Scott Stern, with appropriate safeguards in place preventing Defendants from using the same criteria for withdrawing Plaintiff, on status of Administrative Withdrawal, until such time, a court of appropriate jurisdiction, rules on the merits of the Class Action Complaint, submitted to the United States District Court, Western Division, Springfield, Massachusetts, subsequently transferred to the Worcester Division because of a recusal on the part of Judge Michael Ponsor, which, unexpectedly and unknowingly by Plaintiff, was a conflict of interest, for this Honorable Judge. Such Declaratory Mandatory Injunction will allow Plaintiff to continue and pursue his education, with or without the assistance of the Massachusetts Rehabilitation Commission, at the University of Massachusetts at Amherst.

Memorandum of Law

In order for a court to entertain a petition for declaratory relief, an "actual controversy" sufficient to withstand a motion to dismiss must appear on the pleadings. (Massachusetts Association of Independent Insurance

Agents and Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 292, 367 N.e.2d. 796). While Defendants have not submitted a motion to dismiss, Plaintiff submits to this honorable court, that there does, and is, an actual controversy of the Class Action Complaint Plaintiff filed against the Defendants. Evidence of this fact of controversy is in the fact itself that a United States District Court Judge recused himself because of the issues raised in the Class Action Complaint in that a close family member is a current part-time student at the Unversity of Massachusetts at Amherst. Plaintiff seeks this court to order the Defendant's to reinstate Plaintiff and enjoin Defendant's from committing the same action during this current semester Fall of 2004. (Gainsburg v. Dodge, 193 Ark. 473, 101 S.W. 2d 178, 189).

Plaintiff seeks a Permanent, Mandatory Injunction against the Defendants. According to Black's Law Dictionary, a Mandatory Injunction is: One which (1) commands the Defendant to do some positive act or particular thing; (2) prohibit him (the University and its agents) from refusing (or persisting in a refusal) to do or permit some act to which the Plaintiff has a legal right; or (3) restrains the Defendant from permitting his previous wrongful act to continue operative, thus virtually compelling him to undo it.

Plaintiff, Scott Stern, became a client of the Massachusetts Rehabilitation Commission in the Spring 2003. Through the efforts, assistance and support of James Borowski, M.Ed, CRC, Unit Supervisor and his staff, at the Massachusetts Rehabilitation Commission, Plaintiff was able to enroll and pursue his education he did not complete twenty-three years ago at the University of Massachusetts at Amherst.

Plaintiff submitted necessary paperwork through the Committee of Admissions and Records, reapplying to be readmitted to the University. This process took several months to complete. Application is submitted in June of the preceding semester, for Fall 2003 admittance it was the summer of 2003. Because Plaintiff is not a matriculating student, this process had to be repeated once again in the Summer of 2004. This process has been properly submitted to the University.

During the Fall 2003 semester, Plaintiff was notified of action of possibility of Administrative Withdrawal from the University of Massachusetts at Amherst for non-payment of the QSHIP health program fee ($705). With assistance from the Bursar, Dan McGuffin, Plaintiff was able to remove this fee and complete the necessary coursework for the two courses he was undertaking. The effect of the stress of the potential of being withdrawn at

the end of the semester, just a week before finals was an incredible distraction and a great deal of anxiety for the Plaintiff. Plaintiff attempted to resolve this issue through the appropriate channels including the Director of Health Services and the Dean of Students. While Plaintiff believes that he made his case and provided the argument for non-issuance of the QSHIP fee, the Director of Health Services, Bernadette Melby, was adamant and insistent that the Fee be paid first, then Plaintiff could seek a refund.

Plaintiff is seeking a Declaratory Mandatory Injunction to ensure that he will not lose the opportunity to be enrolled at the University of Massachusetts at Amherst. One of these guidelines is the appropriate add/drop period, which is September 21, 2004. Students enrolled in courses at the University of Massachusetts at Amherst may not add or drop courses after this time period. Should this court not act on this Motion for Declaratory Mandatory Injunctive Relief, then Plaintiff will not be able to adhere to this guideline for the add/drop period. In addition, Plaintiff would then be required to petition the Committee for Admissions and Records (CAR) and there is no guarantee that the committee will allow Plaintiff to enroll at a later time, past the 21st of September. Should the Motion for Declaratory Mandatory Injunctive Relief not be issued by this court, it will cause irreparable harm to the Plaintiff, who has struggled with an illness and has made great strides in overcoming obstacles to achieve his goal of completing his education at the University of Massachusetts at Amherst. Plaintiff's unsuccessful attempt to rectify this situation with the University of Massachusetts at Amherst Health Services, and the University of Massachusetts at Amherst Associate Counsel office is, and has been, causing undue stress, anxiety and apprehension to the Plaintiff in regard to Plaintiff's ability to continue the program and denial of this motion will cause irreparable harm to the Plaintiff.

Defendants have sought to enjoin Plaintiff by demanding, under color of law, that the QSHIP program was legal and following statutory guidelines of the Massachusetts General Court, M.G.L Ch 15A. Defendant will repeat that which they did in the Fall of 2003 again during this semester, the Fall of 2004, but the fee will has increased, to $798. Defendant, Brian Burke, Associate Counsel, attempted to explain to Plaintiff, through an email, that Plaintiff's enrollment at the University of Massachusetts at Amherst was acceptance of the University of Massachusetts at Amherst Health Services Policy that all part-time students taking five (5) credits or more are

required to pay this health fee. Plaintiff has learned, on September 14th, 2004, that the University of Massachusetts Health Services, may have also conspired to deprive state employee(s), employee(s) of the University of Massachusetts at Amherst, employee(s) having shown proof of appropriate and adequate insurance for their family members, and demand or bill said state employee(s) to pay for an insurance program, contrary to the Massachusetts Statutes regarding substitute insurance. While these person or persons may not be part of the class members named in the original Class Action Complaint against the Defendants, it bespeaks the scope, diversity and substance of the actions and policies of the University of Massachusetts Health Services. Defendants actions brings to a greater light, and a greater degree of scrutiny, the actions and policies of the University of Massachusetts Health Services, and its associates with regard to the exemptions, classifications and requirements for maintaining insurance on the University of Massachusetts at Amherst Campus. The question of whether an actual controversy exists is closely related to the issue of standing. (South Shore National Bank v. Board of Bank Incorporation, 351 Mass. 363, 366-67, 220 N.E.2d 899 (1966))

Plaintiff, an individual with a disability, argues that the United States Congress has endeavored to guarantee the equal participation of the disabled in all aspects of American life through the passage of three statutes, the Rehabilitation Act of 1973, the American with Disabilities Act (ADA) and the Individuals with Disabilities in Education Act (IDEA) . Chief Justice Marshall's admonition that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury" (Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803) . Plaintiff has, and is, in the process of receiving an injury of irreparable harm if this court does not issue an order against Defendants for Declaratory Mandatory Injunctive Relief allowing Plaintiff to be reinstate at the University of Massachusetts at Amherst.

Plaintiff has already begun the participation of classes required to fulfill his requirements for graduation from the University of Massachusetts at Amherst. Plaintiff seeks injunction in order that he can devote his energy, time and concentration at the studies at hand, and not be distracted by the possibility of filing motion after motion during the academic year. A Civil Action Complaint is not one that can be determined in a short period of time. The Complaint must be served and responded to. Discovery of the issues must be allowed. Litigation of this magnitude can take months, if not years, and, in the conservative estimate of time, a hearing on this motion

is scheduled past September 21st, 2004 it may preclude Plaintiff's ability and right to pursue his education under Title 42 of the United Stated Code, thus, once again, causing irreparable harm to Plaintiff.

The University of Massachusetts at Amherst, academic regulations, can be found at: http://www.umass.edu/dean_students/rights/acad_reg.htm, and clearly define what a full-time student is.

Under Section 2, **II. ENROLLMENT CATEGORIES.**

Enrollment is an official relationship between students and the University. In order to be considered officially enrolled, students must pay all financial obligations to the University and register for courses. Failure to meet either of these conditions means the student is not enrolled for the current semester.

A. **Full-Time Students.**
Full-time students are required to carry the minimum load of 12 credits each semester.

B. **Part-Time Degree-Seeking Students.**
Part-time (designated as non-classified) is an original admissions category for students who are admitted as candidates for a degree, but who cannot devote their full time to the pursuit of a degree. In addition, full-time students may become part-time. A change in status may be requested during the pre-registration or Add/Drop periods for the semester in which the change of status is sought. Full-time students in good academic standing may elect part-time status without Dean's approval. Students who are not in good academic standing are required to have the approval of their undergraduate dean to change status to part-time. In all instances, the Registrar's Office must be notified on the appropriate forms available from that office. Part-time students are subject to all academic regulations and standards. (See "Academic Status," below.)

Plaintiff is unable to be officially enroll because of the status placed on him by the Bursar's Office, of "Administrative Withdrawal" caused by the University of Health Services billing the Plaintiff for a health insurance program that is contrary to the Code of Massachusetts Regulations and the Massachusetts State Legislatures intent with the code.

The Code of Massachusetts Regulations, located at: http://www.mass.gov/dhcfp/pages/dhcfp 110.htm, page 1, states:

"Effective September 1, 1989, the Massachusetts Law Chapter 15A, § 18 requires that every full-time and part-time student enrolled in an institution of higher learning in Massachusetts participate in a

qualifying student health insurance program (QSHIP) or in a health benefit plan with comparable coverage. A part-time student is defined as a student participating in at least 75% of the full-time curriculum.

Plaintiff exercises his right under Title 42 U.S.C. §1981, 1983 Equal rights under the law: Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other" Plaintiff submits to this court that Defendants knew that they were violating Plaintiff and the class members, hence, had they not been, they would have provided documentary evidence to Plaintiff, at his person, during a meeting with the Director of Health Services at the University of Massachusetts at Amherst. Defendants removed the QSHIP health fee from the tuition statement for Plaintiff, indicating that they were in agreement with Plaintiff and that the matter was potentially and quite possibly, resolved. Defendant's action of issuing a new bill, violated Plaintiff's civil rights to continue his education without fear of expulsion because of non-payment of this health fee prior to the close of the Fall of 2003 semester. The "complaint for Preliminary Mandatory Injunctive Relief should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief " (Nader v. Citron, 372 Mass. 96, 98, 360 N.E2d 870 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S.Ct. 99 (1957) . See also Charbonnier v. Amico, 367 Mass. 146, 152, 324 N.E.2d 895 (1975); Whitinsville Plaza, Inc. v Kotseas, 378 Mass. 85, 89, 390 N.E. 2d 243, (1979). A complaint is not subject to dismissal if it would support relief on any theory of law. See Whitinsville Plaza, supra at 89

Plaintiff has shown that to prevail on his request for a Preliminary Mandatory Injunction he has Demonstrated, by several reasons, that the risk of irreparable harm and a likelihood of success on the merits. (See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980) Plaintiff, on December 22, 2003, discussed this matter with the University of Massachusetts Student Legal Services Office, with Suman Rastogi, a law clerk. Plaintiff also discussed this matter with Attorney

Michelle Leaf, Senior Staff Attorney. It was at this time that Attorney Michelle Leaf, Senior Staff Attorney noted that Plaintiff may have a case against the University and the University of Massachusetts Board of Trustees, but, because the Student Legal Services Office successfully won a lawsuit against the Board of Trustees, during the 1980's, there ability to litigate on behalf of students against the University, the University Board of Trustees and other agencies, boards, institutions and any other entity was terminated. Only recently has the Student Legal Services Office been able to file, on behalf of students, in a limited sphere of law, litigation on their behalf. The Student Legal Services Office is, in affect, not fulfilling its full, complete and original mandate to students, to the citizens of the Commonwealth of Massachusetts; both full time and part time students; both Undergraduate and Graduate; and Doctoral Candidates, because the University of Massachusetts Board of Trustees has discriminated against the same citizens and students; and has failed to insure that students, and their civil rights, accorded by the Massachusetts Consitution, accorded by the United States Constitution could be advocated and litigated through the University of Massachusetts at Amherst Student Legal Services Office because the University of Massachusetts Board of Trustees lost a lawsuit litigated by the Umass Student Legal Services Office.

On February 9, 2004, Suman Rastogi, Law Clerk at the Student Legal Services Office, conducted an investigation and contacted the Division of Health Care Finance and Policy. At this time, Ms. Rastogi spoke with a Mr. Gatachew, or someone with a name similar to this, or close proximity to this spelling, at the Division of Health Care Finance and Policy on two separate occasions, January 29, 2004 and February 9, 2004. Ms. Rastogi recorded that Mr. Getachew, on January 29, 2004 admitted and spoke to her that students that "take less than nine (9) credits do not need to take QSHIP" and he would send letter indicating as such. Having not received the letter by February 9, 2004, Ms. Rastogi telephone Mr. Getachew again at the Division of Health Care Finance and Policy and spoke with Mr. Getachew. On this separate occasion Mr. Getachew informed Ms. Rastogi that his legal counsel had advised him "not to give anything in writing" and that "the law is clear about part-time students." and that "students have to resolve this problem with Umass officials" (See (A) Copy of handwritten note provided by Suman Rastogi)

Plaintiff contacted the Interim Bursar, Tom Mathers, at the University of Massachusetts at Amherst, 215 Whitmore Administration Building, Amherst, Massachusetts on Friday, September 3, 2004 and explained the situation to him in an effort to maintain an "active" status on the University campus. Tom Mathers

attempted to contact Brian Burke, Associate Counsel for the University of Massachusetts at Amherst at 300 Whitmore Administration Building, Amherst, Massachusetts. Tom Mathers also called Bernadette Melby in regard to this situation and was told, by Ms. Melby, that Plaintiff should "just pay it" and then "seek a refund." (See (B) letter from University of Massachusetts Dean of Students Gladys Rodriquez) Tom Mathers, Interim Bursar, agreed that "from a customer standpoint, Plaintiff should not have to pay for an item that is incorrect" while waiting for disposition to be properly heard and adjudicated. Tom Mathers also contacted his supervisor, the Controller for the University of Massachusetts at Amherst, Andrew Mangles, who felt that the situation was "unique" and "that Mr. Stern may have stumbled across something which could cost the University thousands of dollars" (see (C) affidavit of Scott Stern). With these two statements by different Defendants, Plaintiff hereby attests and affirms that such statements are believed to be true, were communicated to Plaintiff, and have a high degree of reliability and, in so doing, their corroboration and veracity may be proven in a court of law, that such statements show a high degree of success on the merits and that Plaintiff has satisfied the requirements of Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980) A reading and interpretation of Massachusetts General Law Chapter 15A §18 and the Code of Massachusetts Regulations clearly define what type of student is a part-time student and, additionally, what type of part-time student is required to enroll in the QSHIP plan at the respective University. In this case, the University of Massachusetts at Amherst.

WHEREFORE, IN CONSIDERATION AND OF THE AFOREMENTIONED FACTS AND STIPULATIONS, PLAINTIFF HEREBY MOVES THIS COURT TO ORDER A PRELIMINARY MANDATORY INJUNCTION AGAINST THE DEFENDANTS. The Defendants, under color of law, is, and shall deny Plaintiff the equal opportunity to pursue a higher education. Defendants is, are and have been, violating Massachusetts Law Chapter 15A §18 and the Code of Massachusetts Regulations CMR 114.6 CMR 3.00 Defendants violations have, and will cause Plaintiff irreparable harm, and Plaintiff is likely to succeed on the merits, on behalf of himself, and the class members. Defendants have "administratively withdrawn" Plaintiff from the University of Massachusetts at Amherst and are preventing Plaintiff from enrolling in classes during the Fall of 2004. Plaintiff's request for injunctive relief is inclusive of that time period until he completes his undergraduate requirements for obtaining his degree and/or until this court adjudicates the merits and issues in the

Class Action Complaint filed against the Defendants.

Respectfully Submitted, this 15th day of September

[signature]

Scott Stern

Pro-Se Plaintiff and on behalf of the class members

400 West Main Street

North Adams, Massachusetts 01247

A

My Conversation with Mr. Getachew of Div. of Health care, Fina

Getachew from Div. of Healthcare
- Students Taking less than 9 credits do not need to take Q-Ship.
- But UMass can legally ask them to enroll in Q-Ship, it is discretionary.
- He is sending letter.

Ph. 617 988 3131
Mr. Getachew

02/09/04

2:10 pm

Mr. Getachew informed me that his legal counsel advised him "not to give any thing in writing".
- He says, law is clear about part-time - Students.
- Students have to resolve this problem with UMASS officials.

talked on 1/29/04. at 1.00 pm.

~~Case Dean of Students office~~




UNIVERSITY OF MASSACHUSETTS
AMHERST

227 Whitmore Administration Building
181 Presidents Drive
Amherst, MA 01003-9313

Office of the Dean of Students

voice: 413.545.2684
fax: 413.545.9704

August 29, 2004

Scott Stern
400 West Main Street
North Adams, MA01247

Dear Mr. Stern:

As I told you in our most recent telephone conversation, I did as you had requested me to do. I spoke to Ms. Bernie Melby, Director of University Health Services. You were requesting that he "registration hold" on your record be lifted while you are appealing the fact that you were billed for basic health coverage in the Fall 2003 semester.

Ms. Melby informed me that she would not remove the hold. She suggested that you pay the outstanding amount of $705 and that if your appeal was approved they would gladly reimburse your funds.

Sincerely,

Gladys Rodriguez
Associate Dean of Students

Cc: Bernie Melby

The University of Massachusetts is an Affirmative Action/Equal Opportunity Institution

Printed on Recycled Paper