UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

|  |  |
|---|---|
|  | CASE No.:04-30176-MAP |
| SCOTT STERN ) |  |
| ) |  |
| 400 West Main Street ) | AFFIDAVIT OF SCOTT STERN |
| North Adams, Massachusetts ) |  |
| ) |  |
| 01247 ) |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| vs. ) |  |
| ) |  |
| University of Massachusetts at ) |  |
| ) |  |
| Amherst, ) |  |
| University Health Services, |  |
| Director of Health Services, |  |
| Bernadette Melby |  |
| 150 Infirmary Way |  |
| Amherst, Massachusetts 01003, |  |
| Defendant et al |  |

The undersigned states the following under oath:

1. I am a Client of the Massachusetts Rehabilitation Commission.
2. I originally attended the University of Massachusetts at Amherst between the years 1980 and 1985.
3. I attended the University of Massachusetts in the Fall, 2003 academic year.
4. I enrolled in two courses, with a total amount of credits of six (6) during the Fall of 2003.
5. During the Fall of 2003 I engaged in discussion, with the Director of Health Services, Bernadette Melby, at 150 Infirmary

Way, Amherst, Massachusetts in regard to the Qualifying Student Health Insurance Program (QSHIP) and the applicability of this plan according to the law and this students technical status according to the law which did not require him to pay such fee.

6. During this meeting, the Director did not provide and documentation or policy stating that would supercede Chapter 15A § 18 of the Massachusetts General Laws. During this meeting, in front of my person, the Director of Health Services, insisted that I should "just believe her" and take for face value the statements she was relaying. As well as that she had "some document" of which she could not locate nor provide, indicating that the University of Health Services had authorization from the legislature to supercede and override the statutory provisions of M.G.L. Ch 15A §18 and the Code of Massachusetts Regulations. In addition Bernadette Melby suggested that "if she wanted to, she could change the numerical requirement to as little as one (1) credit"

7. On or around the week of September 1, 2004 I had a conversation with Tom Mathers, Associate Controller for the University of Massachusetts, acting in the position of Interim Bursar, by telephone, having called the Bursar's Office at the University of Massachusetts at Amherst, in regard to this QSHIP program and Mr. Mathers expressed the sentiments of himself that "from a customer standpoint, you should not have to pay first in order to seek a refund".

8. On or around the week of September 1, 2004 I heard Mr. Mathers directly state, in a subsequent conversation, directly therafter of the first conversation, to my person that he had conducted a conversation with Controller of the University of Massachusetts at Amherst, Mr. Andrew Mangles, and Mr. Mathers repeated that Mr. Mangles felt "that Mr. Stern may have stumbled across something

and it may cost the University thousands of dollars". In addition, Mr. Mathers expressed that he attempted to contact Mr. Brian Burke, Associate Counsel, located in the Whitmore Administration Building, and Director of Health Services, Bernadette Melby, to seek an answer to the questions and controversy I had presented him.

9. On or around the second week of February, of 2004, I received, in writing, notes and papers relating to the questions I had given the Student Legal Services Office, and inclusive of these notes were handwritten notes from a Suman Rastogi, a Law Clerk, regarding conversations she had conducted on several occasions with a Mr. Getachew or a person of similar name at the Division of Health Care Finance and Policy. These handwritten notes were statements by Mr. Getachew that students under nine (9) credits were not mandated to enroll in the QSHIP health program and pay for the health fee and any of the related costs associated with the program.

10. During the Spring of 2004 and the Summer of 2004, I had multiple conversations with Gladys Rodriquez, Associate Dean of Students, of the Office of the Dean of Students who attempted to work this situation out and resolve the issue of the QSHIP program between this student and the Director of Health Services. During one of these most recent conversations, during the month of August, 2004, Gladys Rodriquez, informed me that the Director of Health Services "was not going to move" on the issue of the health fee and it was the Director's contention "that the University of Massachusetts was, actually, making it better for students". I requested Gladys Rodriquez to put the conversation in writing for me as is indicated by the attached letter, which is the summation of her conversation with the Director of Health Services,

Bernadette Melby. This letter reiterates the Director's position and that this student was to "pay it" then "seek a refund."

11. On Septeber 13, 2004 I engaged in a conversation with an individual, "person A", is currently a full-time employee of the University of Massachusetts at Amherst. For protection of this persons privacy, and their position, I have chosen not to submit and provide their name on this affidavit, and the fact that this person A has not consented to their name being used in this affidavit or suit, and is not a member of the class associated with this class action lawsuit. This conversation has merit and should be looked upon with a concern with regard to the actions and policies of the University of Massachusetts Health Services and their applicability of policies and procedures regarding insurance and their enforcement and denial of statutory provisions of the QSHIP program. This person A had a family member, within the last year or two attend the University of Massachusetts at Amherst, has appropriate applicable insurance, and was denied the right by the University of Health Services to use this insurance and was mandated and forced to purchase other additional insurance, above and beyond their existing policy and contrary to the statutory provisions of Code of Massachusetts Regulations CMR 114.6 3.00 regarding insurance from other carriers. Upon researching the issue more in depth, this person A was able to obtain a waiver for a subsequent semester for the member of their family that was still attending the University of Massachusetts at Amherst.

   I have stated all of the above based upon my own knowledge, information and belief; and so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this day of September 14, 2004.

*[signature: Scott Stern]*

Scott Stern

400 West Main Street

North Adams, Massachusetts 01060