UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Scott Stern,<br>400 West Main Street<br>North Adams, MA. 01247,<br>and other persons similarly situated in the<br>Commonwealth of Massachusetts; and other persons<br>similarly situated in the United States of America;<br>and other persons similarly situated not currently<br>residing within the Commonwealth of Massachusetts<br>or the United States of America,<br><br>        Plaintiff,<br>   vs. | Case No.: 04-30176-MAP |

University of Massachusetts at Amherst
University Health Services
Director of Health Services, Bernadette Melby
150 Infirmary Way
Amherst, Massachusetts.   01003,
Defendant

and,

University of Massachusetts at Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts   01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts   02108
Defendant

and,

Massachusetts Board of Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696

Defendant

1

and,

Division of Health Care Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

---

MEMORANDUM OF LAW FOR PLAINTIFF IN SUPPORT
OF PLAINTIFF's MOTION FOR A PRELIMINARY DECLARATORY MANDATORY
INJUNCTION AND IN SUPPORT OF CLASS ACTION COMPLAINT


Scott Stern
400 West Main Street
North Adams, Massachusetts 01247
Pro-Se Litigant
For the Plaintiffs

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| INTRODUCTION | 3 |
| STATEMENT OF FACTS | 4 |
| MASSACHUSETTS TAXPAYERS FOUNDATION | 8 |
| A FEDERAL QUESTION | 16 |
| ILLEGAL SUSPENSION | 17 |
| CONSPIRACY TO VIOLATE EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION AND 42 U.S.C. Sec. 1981 | 18 |
| NEGLIGENCE AND/OR GROSS NEGLIGENCE IN VIOLATION OF THE UNITED STATES CONSTITUTION | 18 |
| THE SUPREME JUDICIAL COURT'S RULING IN MCDUFFY | 20 |
| SCOPE OF ISSUE | 18 |
| MASSACHUSETTS BOARD OF EDUCATION AND UMASS BOARD OF TRUSTEES | 23 |

PLAINTIFF HAS A FEDERAL RIGHT TO A HIGHER EDUCATION..................................26

PLAINTIFF HAS A MASSACHUSETTS STATUTORY RIGHT TO AN EDUCATION................30

THE JUDICIARY AND THE BOARD OF TRUSTEES.....................................................31

THE 11TH AMENDMENT AND PLAINTIFFS' RIGHT TO SUE THE STATE........................33

THE INTERPRETATION OF STATUTES.........................................................................35

THE ARGUMENT..........................................................................................................41

THE PLAINTIFF WILL SUFFER IRREPARABLE HARM
THE COURT DOES NOT ISSUE A TEMPORARY RESTRAINING
ORDER AGAINST THE DEFENDANTS..........................................................................41

THE DENIAL OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS
UNDER THE EDUCATION CLAUSE CONSTITUTES IRREPARABLE HARM....................42

ENFORCEMENT OF DEFENDANT'S INTERPRETATION DISPARAGES
PLAINTIFF, AFFECTS HIS DIGNITY AND THREATENS HIS SELF-ESTEEM.................42

BALANCING THE HARMS SUFFERED BY THE PLAINTIFF AND THE DEFENDANT'S
FAVORS THE ISSUANCE OF A PRELIMINARY INJUNCTION........................................44

THE CLASS MEMBERS..................................................................................................45

MASSACHUSETTS CONSTITUTIONAL PROVISIONS.....................................................49

PLAINTIFFS IMMEDIATE RELIEF REQUESTED............................................................52

GENERAL PRAYER FOR RELIEF...................................................................................52

PRAYER FOR OTHER RELIEF.......................................................................................53

## INTRODUCTION

Plaintiff, Scott Stern, brings this action challenging the validity of a University of Massachusetts Policy requiring that all students enrolled in five (5) or more credits are required and mandated to enroll in a Qualifying Student Health Insurance Program, hereinafter referred to as the "program", "QSHIP" or "plan", on behalf of himself and the class members.

3

The University of Massachusetts at Amherst Health Services has violated Massachusetts General Law Chapter 15A §18, the Code of Massachusetts Regulations 114.6 CMR 3.00 and the Guidelines established by the Division of Health Care Finance and Policy in their guide "<u>Access to Health Care in Massachusetts: A Catalog of Health Care Programs for Uninsured and Underinsured Individuals, Third Edition, May 2004</u>."

The Plaintiff, Scott Stern, researched and discovered that the University of Massachusetts at Amherst may not be alone in their violation of this policy against the class members. From his initial inquiry, it seems apparent, on the surface, that the University of Massachusetts at Lowell may have also violated class members thus requiring a mandatory plan for students that are enrolled in less than 75% or more of the full-time curriculum for the respective institution.

The Plaintiff, Scott Stern, seeks a Preliminary Declaratory Mandatory Injunction allowing the Plaintiff to be enrolled and matriculated in the University of Massachusetts at Amherst. Pursuant to Federal Rules of Civil Procedure 65(b) Plaintiff seeks a Temporary Restraining Order against the Defendants to allow Plaintiff to attend classes, continue and pursue his goal of obtaining his higher education, and continue being enrolled after this Fall 2004 semester; to bar the Defendants from defying said order and preventing Plaintiff from being administratively withdrawn for the same health plan, which is automatically generated against the class members, including the Plaintiff, which is contrary to Massachusetts General Law Chapter 15A §18, Code of Massachusetts Regulations 114.6 CMR 3.00 and the Division of Health Care Finance and Policy, Executive Office of Health and Human Services guide "Access to Health Care in Massachusetts, May 2004".

## STATEMENT OF FACTS

Plaintiff enrolled in the University of Massachusetts at Amherst for the fall semester of 2003 through the Massachusetts Rehabilitation Commission. Plaintiff enrolled in two (2) courses in order to continue fulfilling his General Education requirements as stipulated by the Massachusetts Board of Higher Education and the University of Massachusetts at Amherst Faculty Senate and general guidelines for obtaining a double-major Bachelor of Arts degree from the University of Massachusetts at Amherst. The University of Massachusetts Health Services automatically bills each student that is enrolled in five (5) or more credits, a mandatory health plan. Plaintiff enrolled in two courses at the University of Massachusetts at Amherst that totaled six(6)credits. The University of Massachusetts Health Services automatically billed Plaintiff this plan, which constituted an amount of seven hundred five dollars ($705). The University of Massachusetts Director of Health Services refused to waive, release, and otherwise remove this plan, permanently, from plaintiff's bill after completion of the two courses during the fall semester of 2003. Plaintiff was allowed to continue his pursuit of a higher education in spite of the fact that there was this billed, unpaid plan. Plaintiff was objecting to and was wrongfully charged, ultra vires, this plan. Plaintiff, because he did not pay, refused to pay, and was unable to be granted a remedy to the situation, was sent letter demanding payment of said plan. Plaintiff sought remedial action through the University of Massachusetts at Amherst Health Services Director, Bernadette Melby; the Interim Bursar Tom Mathers; the Associate Counsel, Brian Burke, and the Associate Dean of Students, Gladys Rodriguez. The University of Massachusetts does not offer students a means by which to object to a

fee or a plan without losing their individual status of "enrolled". (See Daily Collegian September 9, 2004 - Exhibit 1)

It should be noted to the court, that Tom Mathers, Interim Bursar, and Gladys Rodriquez were quite helpful and understanding of the situation but were unable to resolve this situation because of their unique position at the University of Massachusetts at Amherst. The outstanding amount has caused Plaintiff to be "administratively withdrawn" from the University of Massachusetts at Amherst. This status, which is illegal, and *ultra vires*, as stated from the aforementioned laws, codes, and guide is preventing the Plaintiff from obtaining a Tuition Bill from the University of Massachusetts at Amherst. Plaintiff is required, by guidelines of the Massachusetts Rehabilitation Commission, to provide a tuition bill to the Massachusetts Rehabilitation Commission, in order to obtain funding for the fall 2004 semester. Plaintiff brought this suit, on behalf of himself, to request a TEMPORARY RESTRAINING ORDER, against the Defendants allowing his status to be changed to "enrolled" and remove the status of "administratively withdrawn" from his academic, or any other record at the University of Massachusetts at Amherst.

Plaintiff brought this class action suit, on behalf of the class members, and himself, to mandate that the University of Massachusetts at Amherst be ordered to reimburse and refund the affected class members in this suit, whether or not they are attending the University of Massachusetts at Amherst; whether or not they are living or residing in the Commonwealth of Massachusetts; whether or not they are living or residing outside the Commonwealth of Massachusetts but within the continental United States, and whether or not they are living or residing within the continental United States; whether or not they are undergraduate or graduate, matriculating or non-matriculating,

6

Doctoral, part-time or full-time degree seeking candidates at this time.

Plaintiff, after much anguish, stress, depression and anxiety, requests this court to order the Commonwealth of Massachusetts to compensate Plaintiff for his time and effort to resolve this case, putative damages and emotional damages which would be deemed fair and proper.

Plaintiff requests this court to further order the University of Massachusetts to release all records, to some independent investigatory agency, all records, data and facts relative to information regarding the class members and their payment of said plan for the last fifteen (15) years.

Plaintiff, through statutory law, regulations and guidelines will show this court that the University of Massachusetts at Amherst Policy is in direct conflict with Massachusetts General Laws, the Code of Massachusetts Regulations and the Division of Health Care Finance and Policy Guidelines. Such actions on their behalf, and their employees may be a larger violation of student rights within the Commonwealth of Massachusetts and demands an investigation by the United States District Attorney's Office on the role, practice, policies that each of the Defendants may have been complicit and conspiring to defraud the citizens, its students in particular, the class members, of the Commonwealth of Massachusetts. This violation occurred through mandated insurance programs or plans, under color of law, at the University of Massachusetts at Amherst and other institutions across this great Commonwealth. Through careful and analytical research, the class members may be in need of reclassifying should any of the Colleges or Universities have used a lower threshold than five (5) credits at their respective institutions.

Plaintiff has brought this suit to order to seek a public apology from the Board of Higher Education, the Division of Health Care Finance and Policy, particularly an individual named, or similarly named, "Mr. Getachew"; the University of Massachusetts Board of Trustees, in general; the University of Massachusetts at Amherst Associate Counsel, particularly Brian Burke and Geoffrey McCullough; and the University of Massachusetts Health Services Director, Bernadette Melby.

## MASSACHUSETTS TAXPAYER FOUNDATION

According to the Massachusetts Taxpayer's Foundation, a nationally recognized, non-profit research organization working to promote the most effective use of tax dollars, improve the operations of state and local governments, and foster positive economic policies. Their credibility is based on independent, objective, and accurate analysis of state and local spending, taxes and the econonmy. Founded in 1932, the Massachusetts Taxpayers Foundation ranks among the largest and effective organizations in the country. In June 2004, the Massachusetts Taxpayers Foundation, published a report The University of Massachusetts: Removing Barriers to Educational Excellence at the State's Public Research University. In this report, on page 13:

"Umass has a very confusing system for tuition and fees. In contrast to most other colleges and universities, total *fee* revenue at UMASS-$205 Million-dwarfs *tuition(unlike fees which are set by the University), and have not kept up with costs."*

The University of Massachusetts five campuses: Amherst, Lowell, Worcester, Dartmouth and Boston are institutions that derive monies from fees and Tuitions. Tuitions are returned to the State Treasury. Fees, are withheld by the University for their own discretion in

8

appropriating. The Health fee Plaintiff is objecting to is one of these many fees that are being mandated on the student population. In this past year alone, Graduate students rallied to remove a fee that was directed at International Students specifically. The fee was for sixty five(65) dollars. This fee was rescinded by the University of Massachusetts, and/or the University of Massachusetts Board of Trustees as it was blatantly discriminatory against the foreign graduate students.

The University of Massachusetts Administration, with or without the consent of the University of Massachusetts Board of Trustees, is implementing new fees, for different applications. Such fees are directly generated because tuition is maintained in moderate levels, to give the consumer, the public, the feeling and statistic that tuition is not being dramatically increased, but rather a fee for a particular department is being instituted instead to offset the Commonwealths legislature lack of, and decline of appropriations to the University. This situation is, as the Massachusetts Taxpayers Foundation reported, on page 8:

> "The practice of sending tuition dollars to the state treasury has another negative affect. Under current practice, there is little incentive for the university to recruit additional students (particularly non-residents) to generate new revenues that can be leveraged for research and partnerships. While the fees paid by astudent are available for the university's use, the additional tuition paid by the student goes to the state. Since the state appropriation is not adjusted for the higher enrollment, the university incurs all of the additional cost of educating that extra student while receiving only a portion of the added revenue"

The Massachusetts Taxpayers Foundation is, in this report, recommending that tuitions paid into the University of Massachusetts should be retained by the Board of Trustees in order to offset and replace the budgetary shortfall the University of Massachusetts experiences each year on each of the five campuses. In a way, the mandated health plan is an attempt to recover costs that the legislature itself has declined to provide by and through, its own statutes regarding education. The health plan for a student enrolled at the University of Massachusetts is exceptionally higher than the health plan for a student enrolled at a community college. Considering the law of numbers, and the power of purchasing in bulk, this disproportionate determination levied against the University of Massachusetts students should be lower, not higher. The fact that University of Massachusetts Students are required to purchase a health plan several hundred dollars more than their community college brethren, bespeaks and cries out that there is foul play occurring at the University level. Wal-Mart, the largest corporation, by revenue and size, has grown, and continues to grow, because of its ability to purchase products and services, at a much reduced initial cost, because of its "buying power". This same argument should hold true for the University of Massachusetts at Amherst and the five college campuses. The sad fact is, that this is not the situation.

In addition, it is apparent that the University of Massachusetts is being continually forced to exact fees, in this case a health plan, from students in order to remain a viable and operating entity within the Commonwealth of Massachusetts and uses the implementation of fees to generate revenue, maintain its status quo, and increase its investments all without authorization from the University of

Massachusetts Board of Trustees and the State Legislature. It is worth noting that the Commonwealth of Massachusetts is one of two states in the United States that does not allow its University's to retain the tuition they receive from their students. In the other 48 States, tuition retention is the standard practice.

The University of Massachusetts Board of Trustees however, is mandated to follow statutory provisions. The Qualifying Student Health Insurance Program is designed to *require* (emphasis added) that part-time students taking 75% or more credits on the University of Massachusetts at Amherst campus are *required to participate*. This, program, is not a fee. This program is an enactment by the legislature and sets minimum standards as described in the Code of Massachusetts Regulations 114.6 CMR 3.00

The University of Massachusetts is *requiring* that all students below the minimum threshold of 75%, or in this case, nine (9) credits, but above five (5) credits, are *required* to enroll in the University of Massachusetts Health Program. In the reverse argument, the University of Massachusetts is discriminating against students that enroll at the University of Massachusetts at Amherst but take less than five (5) credits but more than one (1) credit. If the University of Massachusetts can interpret the law to allow them to reduce the legislative threshold of 75% to 42%, what basis was there to set this new lower threshold at 42%? In other words, what was the purpose of setting this threshold at all, if it was the interpretation by the University of Massachusetts Board of Trustees that the legislature allows them to change the minimum standards as required by the statute, than why did they stop at 42%? Most classes at the University of Massachusetts at Amherst are three (3) credit courses. A part-time student is defined by the University of Massachusetts as a student that

11

is taking less than the minimum of the full-time student. The full-time student is defined as a student that takes twelve (12) or more credits. Using the percentage stipulated in the Massachusetts General Laws, the Code of Massachusetts Regulations and the Guidelines as issued by the Division of Health Care Finance and Policy, of which is 75% time or more of the full-time student curriculum, that number would be nine (9). This figure was derived by tabulating the number of credits an individual would have if enrolled in three (3) courses.

The essence of this is that the bill levied against the Plaintiff was not a fee, it is a plan. This plan has certain guidelines and stipulations to it. This plan is based on statutory provisions. While the University of Massachusetts has found itself in a precarious situation, and has taken upon itself to levy fees against students, it is in no capacity to modify Massachusetts General Laws, the Codes of Massachusetts Regulations, or the Guidelines implemented by the Division of Health Care Finance and Policy of the Executive Office of Health and Human Services. There is something terribly amiss here and, beyond an investigation, requires serious scrutiny by the Massachusetts Legislature as to what has occurred to lead to these unauthorized fees being levied against the students, and the plan minimums to be so willfully, recklessly and negligently mismanaged.

So what was the reason for arbitrarily setting the plan to a lower threshold than is stipulated by the Massachusetts General Laws, the Code of Massachusetts Regulations, and the Guidelines of the Division? In short, it is, and for, the aspect of collecting revenue. Consider this, the Massachusetts Taxpayer Foundation has suggested that the University of Massachusetts could collect an additional five (5) million dollars if it:

"The Amherst Budget Office calculates that the margin by

which extra revenue exceeds extra cost for an additional out-of-state student is about $5000. Adding an additional 1,000 students could give the campus $5 million a year to invest in research seed money and other areas."

This number is for tuition, and not for fees. At the University of Massachusetts Amherst campus, the University has been allowed to retain twenty-five (25) million dollars from out-of-state students for the fiscal years 2004 and 2005.

The numerical value is staggering. One must truly understand what is at stake here. The University of Massachusetts at Amherst Health Services, and other Universities may be complicit in deriving revenue, *ultra vires*, from students in order to sustain itself. The University of Massachusetts Board of Trustees has done this because the legislature has failed to provide for the citizens of the commonwealth and "all its citizenry" the opportunity to an education. This action of billing, collecting and appropriating funds derived from *fees*, over the last fifteen years, has been a negative and not a positive to students.

The Massachusetts Taxpayer Foundation stated:

"While control of tuition rates currently rests with the Board of Higher Education, the university trustees actually determine the ultimate cost for a student to attend UMass—the result of a critically important semantic distinction that renders the board's control more nominal than real. The Board of Higher Education sets what is called *tuition,* which is currently retained by the state. The university trustees have the right to set *fees,* which are retained by the University. As a result, at the Amherst campus, to name one example, actual tuition represents only 21 percent of undergraduate in- state student

13

charges (excluding room and (board) and 57 percent of non-resident charges.

The transfer of tuition-setting authority to the trustees will allow the university to restate tuition and fee rates (with no net change in total costs) to reflect the reality of the existing situation. This re-labeling will help hundreds of students who receive reimbursement for tuition costs from their employers. Typically, employers reimburse their employees only for what is labeled "tuition" and not for "fees." As we have seen for the Amherst campus, this could mean that students receive only 21 percent of actual tuition from their employers (see Figure 1). For every 100 students (full-time equivalent) for whom this applies, some $650,000 in potential employer reimbursements are left uncollected. Similar arguments apply for foreign students who receive scholarship support from their governments. Across the university system as a whole, students may lose millions of dollars. Worse, there may be hundreds or thousands of students who could afford the university with full tuition reimbursement, but choose not to go because they must bear 80 percent of the cost."


This has led the University of Massachusetts to create new, arbitrary and *ultra vires* fees, to offset the legislatures declining appropriations to the five (5) University Campuses. It has led to the University utilizing fees to raise revenues, in a clandestine and pretentious manner, in lieu of raising tuition, through the creation, and mandate of various "fees". At the University of Massachusetts at Amherst, the Board of Trustees has now instituted, for example, a fee

14

for graduating seniors, called the "graduation fee". Recently, the Graduate Students of the University of Massachusetts withheld a fee designating foreign students had to pay $65 for the International Programs Office. The University of Massachusetts was overruled, by an outside arbitrator, that the fee was discriminatory because it singled out Foreign Graduate Students as opposed to Domestic Graduate Students. The University has decided not to appeal this decision and decided to withdraw the mandatory fee against the Foreign Graduate Students.

The University of Massachusetts, in 2003, received in fees, two hundred and five (205) million dollars, from the students, which was a larger number than the Tuition being billed to the same students. It is Plaintiffs argument that the plan instituted, by the University of Massachusetts Health Services, while seeking to fulfill the wording of the Massachusetts General Law Chapter 15A §18, failed to employ the entire statute and thereby forced upon part-time students, this plan, to increase revenue on the Amherst Campus. This fact may not be only being exacted against the University of Massachusetts at Amherst campus; there may be other students, on other colleges and universities, within the Commonwealth, since 1989, that have been a victim of improper, *ultra vires*, plans relative to this Qualifying Student Health Program.

The significance is that the plan, is a Massachusetts Enacted Law, and the fees, are not approved by the Legislature. The plan was modified against the Statutory provisions while the fees were levied without the legislatures approval.

In essence, the Massachusetts Taxpayer Association is suggesting that all the fees that have been levied against the students, should be merged into the tuition for the students in order that a certain class of students. Students who are on scholarship; students that have

15

employer reimbursements; foreign students that receive their government money to attend higher education, will be able to receive reimbursement. Thus benefiting a class of students in the relabeling of the fees as tuition, but not necessarily helping students by increasing the expense of a college education.

This would allow the University of Massachusetts at Amherst to start the program all over again, just with other fees. It is most certainly a great possibility that the University of Massachusetts has a long-term plan associated with the generation of fees, their implementation, and their potential application. This health plan, however, is not a fee. It is a mandated insurance program that the University of Massachusetts at Amherst, or other institutions, did not have any authority in lowering the minimum threshold for mandating student participation. It is clear and unequivocably written in the law, the statute and the guidelines. Their actions have been *ULTRA VIRES*.

## A FEDERAL QUESTION

Defendant's counsel, during a telephone hearing with United States District Court, Honorable Judge Saylor, and Plaintiff, argued that the action plaintiff is seeking would not fall under a Federal Jurisdiction. Plaintiff, in seeking restitution on behalf of the class members, would beg to differ and point out to this court and the defendant counsel that this Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331(a) and Sections 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 to declare the rights of the parties and to grant all further relief found to be necessary and proper.

Venue is proper in the United States District Court for Western District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claim occurred within this judicial district and all relevant facts to this action occurred in this District. With the newly discovered information that the University of Massachusetts at Lowell may also be violating the rights of class members this venue is even more prevalent and required.

Some of these class members may have had fees, fines, and attorney's costs, from litigation, defending such and *ultra vires* plan. Such action may have already caused irreparable harm to these class members. The consequence of the United States District Court not enjoining the University of Massachusetts at Amherst will be harsh, cruel and permanent to the plaintiff. Plaintiff will further suffer from depression, anxiety and fear, and constantly worry about the ability to attend the University of Massachusetts at Amherst because of not enjoining the defendants and their actions against the Plaintiff. Plaintiff will also lose funding by the Massachusetts Rehabilitation Commission for the current semester.

### ILLEGAL SUSPENSION

As a direct and proximate result of the intentional, reckless, and/or malicious acts of the Defendants, Bernadette Melby, Brian Burke, and an individual named "Mr. Getachew", separately and in concert and in conspiracy with each other and acting under color of law, the Plaintiff was, intentionally and unlawfully, administratively withdrawn as a student at the University of Massachusetts at Amherst. This intentional, reckless and malicious acts was without consent or other

legal justification, and without any notice or an opportunity to be heard, and his rights created by the Regulations and Policies of the University of Massachusetts at Amherst were violated, and he was deprived of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The plaintiff is thereby entitle to damages and equitable relief under 42 U.S.C. sec. 1982, 1983, 1985, 1986 and 1988.

### CONSPIRACY TO VIOLATE EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. sec 1981

As a direct and proximate result of the intentional, reckless and/or malicious acts of all the defendants who were employees of the University of Massachusetts, separately and in concert and in conspiracy with each other, and acting under color of law, the defendants by their willful abuse of the lawful authority vested in them as public officials have deprived the plaintiff of his right to the full and equal benefit and protection of law and proceedings for the security of persons and property, and the right not to be subject to unequal unequal punishment, pains and penalties by reason in part of impermissible disability considerations, and deprived him of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution. The plaintiff is thereby entitled to damages and equitable relief under 42 U.S.C. sec 1981, 1982, 1983, 1985, 1986 and 1988.

### NEGLIGENCE AND/OR GROSS NEGLIGENCE IN VIOLATION OF THE UNITED STATES CONSTITUTION

On occasions prior to the actions alleged herein, the defendants knew, or should have known, that administrators of the University of Massachusetts at Amherst violated the constitutional rights of citizens

by illegally academically withdrawing students, thus suspending students, thus engaging in conspiracies to violate their constitutional rights.

With the knowledge of and under the direction of the defendant Bernadett Melby, the University of Massachusetts and its administrators, acting under color of law, have engaged in the pattern of conduct alleged in this memorandum of law in support of the Plaintiff's complaint for a preliminary declaratory mandatory injunction and in support of the class action complaint. The defendant Melby and the defendants have failed to adequately classify students and their required participation in a mandatory health plan, train, instruct, supervise, control, investigate, discipline, and terminate the defendant Melby and Burke, each of whom, separately and in concert, has denied the plaintiff of rights guaranteed to him by the Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution.

The official policy, custom or usage of the defendant University of Massachusetts, aforesaid, is unconstitutional, insofar as it dictates, encourages and permits employees and administrators of the University to violate the rights of citizens.

As a direct and proximate result of the negligent and/or grossly negligent acts of the defendants Melby and the University of Massachusetts to classify part-time students according to the Massachusetts General Laws, the Code of Massachusetts Regulations and the Guidelines established by the Division of Health Care Finance and Policy, and to instruct, control, supervise, investigate, and discipline the defendants for their egregious and wrongful acts, the plaintiff has been deprived of his constitutional rights. The

plaintiff is therefore entitled to damages and equitable relief under 42 U.S.C. sec 1982, 1983, 1985, 1986, and 1988.

### The Supreme Judicial Court's Ruling in McDuffy

On June 15, 1993, the Supreme Judicial Court issued its decision in McDuffy, in which it ruled that the Education Clause of the Massachusetts Constitution imposes a "duty [on the Commonwealth] to provide an education for all its children, rich and poor, in every city and town of the Commonwealth at the public school level..." (McDuffy v. Secretary of the Executive Office of Education, 415 Mass 545 (1993) at 606. The Court further held that "this duty is designed not only to serve the interests of the children, but more fundamentally, to prepare them to participate as free citizens of a free State to meet the needs and interest of a republican government, namely the Commonwealth of Massachusetts" Id. The duty to properly educate all children in the Commonwealth, the Court ruled, lies squarely on the executive and legislative branches of the Commonwealth. Additionally, the Court held that "[w]hile the Commonwealth may delegate some of the implementation of the duty to local governments, such power does not include the right to abdicate the obligation on magistrates and Legislatures placed on them by the Constitution." Id.

Plaintiff admits, he is no longer a child, but believes that this case citing can be applicable to all individuals attending schools and higher education institutions. Plaintiff is a client with the Massachusetts Rehabilitation Commission and is seeking to complete a degree he started two decades ago, at the University of Massachusetts at Amherst.

plaintiff is therefore entitled to damages and equitable relief under 42 U.S.C. sec 1982, 1983, 1985, 1986, and 1988.

### The Supreme Judicial Court's Ruling in McDuffy

On June 15, 1993, the Supreme Judicial Court issued its decision in McDuffy, in which it ruled that the Education Clause of the Massachusetts Constitution imposes a "duty [on the Commonwealth] to provide an education for all its children, rich and poor, in every city and town of the Commonwealth at the public school level..." (McDuffy v. Secretary of the Executive Office of Education, 415 Mass 545 (1993) at 606. The Court further held that "this duty is designed not only to serve the interests of the children, but more fundamentally, to prepare them to participate as free citizens of a free State to meet the needs and interest of a republican government, namely the Commonwealth of Massachusetts" Id. The duty to properly educate all children in the Commonwealth, the Court ruled, lies squarely on the executive and legislative branches of the Commonwealth. Additionally, the Court held that "[w]hile the Commonwealth may delegate some of the implementation of the duty to local governments, such power does not include the right to abdicate the obligation on magistrates and Legislatures placed on them by the Constitution." Id.

Plaintiff admits, he is no longer a child, but believes that this case citing can be applicable to all individuals attending schools and higher education institutions. Plaintiff is a client with the Massachusetts Rehabilitation Commission and is seeking to complete a degree he started two decades ago, at the University of Massachusetts at Amherst.