In this class action suit the University of Massachusetts is a public school, chartered for use by all the citizens of the Commonwealth of Massachusetts and outside the Commonwealth of Massachusetts. The University of Massachusetts Health Services is endowed and enforces guidelines established by the Executive and Legislative branches of the government but is not in a position to interpret laws nor modify guidelines thus abdicating altogether its fiduciary responsibility when determining such an insurance plan against the student populace, this being the class members. The University of Massachusetts Health Services receives its authority from the University of Massachusetts Board of Trustees. The legislature has not granted the University of Massachusetts Board of Trustees the authority to modify statutory minimums, or to interpret statutory law.

## SCOPE OF ISSUE

Defendant's counsel argued that the University of Massachusetts at Amherst, and the University of Massachusetts Board of Trustees are authorized to interpret laws written by the State Legislature. To the contrary, the University of Massachusetts Board of Trustees receives its authority from the Massachusetts General Court, by the elected representatives and senators of the 351 Cities and Towns of the Commonwealth of Massachusetts, by enactment of Massachusetts General Laws Chapter 75 §1, Status; Governing body. The Board of Trustees shall:

"The board shall: (a) cause to be prepared and submit to the board of higher education estimates of maintenance and capital outlay budgets for the university; (b) establish all fees at said institution, subject to guidelines established by

21

the council. The board shall submit recommendations for fee guidelines to the council."

Clearly the University of Massachusetts Board of Trustees is not in the capacity to interpret laws, but rather, is "subject to guidelines established by the council". This therefore does not empower the University of Massachusetts Board of Trustees the authority to "set" fees, simply that they can "submit recommendations for fee guidelines to the council." Likewise, the University of Massachusetts Health Services, managed by the University of Massachusetts Board of Trustees, does not have the authority to interpret explicit and exacting language of the Massachusetts General Court, the Code of Massachusetts Regulations and the Division of Health Care Finance and Policy. These are the executive and legislative branches of the Commonwealth of Massachusetts. The University of Massachusetts is merely a "lay board" and derives authority to perform certain functions and only those functions. The actions by the University of Massachusetts Health Services would be in direct contradiction, action and violation of the statutory laws, Codes and Guidelines of Massachusetts and would violate their responsibility to the citizens and the class action members, which are students, of the Commonwealth of Massachusetts.

The University of Massachusetts Board of Trustees is obligated to provide the State Auditor with accountability of said fees,from Mass General Law, Chapter 75 §1A:

"Said fees established under the provisions of this section shall be retained by the board of trustees in a revolving fund or funds, and shall be expended as the board of the institution may direct; provided that the foregoing shall not

22

authorize any action in contravention of the requirements of Section 1 of Article LXIII of the Amendments to the Constitution. Said fund or funds shall be subject to annual audit by the state auditor;" The ramifications of a potential  audit from an outside, independent source, may prove distasteful and bothersome to those that are involved, in that the Massachusetts State Auditor, and others may have been cognizant, aware and knowledgeable that the University of Massachusetts at Amherst, and other institutions, were violating the Legislative Intent of Massachusetts General Law Chapter 15A, §18, the Code of Massachusetts Regulations 114.6 CMR 3.00 and the Division of Health Care Finance and Policy guidelines in the Catalog of Health Care Programs for Uninsured and Underinsured individuals, Third Edition, May 2004, page 95.

The mandated Student Insurance Plan, is not a fee.  It is a plan and the University of Massachusetts Health Services may treat this revenue in a different manner, and not be providing the State Auditor with a review mechanism for the protection of the citizens of the Commonwealth of Massachusetts.

## MASSACHUSETTS BOARD OF EDUCATION AND UMASS BOARD OF TRUSTEES

The University of Massachusetts Board of Trustees is subject to the Massachusetts Board of Higher Education, a "lay board", and has only a limited authority, under Massachusetts General Law Chapter 75, §1A:

" The trustees shall maintain high educational standards at the university and shall, subject only to the general authority in the board of higher education, have complete authority to

establish, locate, support, consolidate or abolish classes,
courses, curricula, departments, divisions, schools or colleges
of the university wherever and whenever required in meeting the
needs of the commonwealth in the field of public higher
education"

The University of Massachusetts Board of Trustees are not
authorized to interpret Massachusetts Statutory Law.

The Massachusetts Board of Education receives its authority
from the Massachusetts General Court, and is a "lay board",
Chapter 15A §1 Policy and goals:

> "Section 1. It is hereby declared to be the policy of
> the commonwealth to provide, foster and support
> institutions of public higher education that are of the
> highest quality, responsive to the academic, technical and
> economic needs of the commonwealth and its citizens, and
> accountable to its citizens through lay boards, in the form
> of the board of higher education and the boards of trustees
> of each of the system's institutions"

The Massachusetts Board of Higher Education and the
University of Massachusetts Board of Trustees is accountable to the
citizens of the Commonwealth of Massachusetts.

The Massachusetts General Laws specifically designates what the
"lay boards" are, that is, what their purpose and function is.  It does
not stipulate that either of these two specific boards are designated
to interpret statutory law and indiscriminately apply policies against
a particular class of students.

Massachusetts General Laws, Chapter 15, §1:

> "It is hereby further declared that in pursuit of its
> stated goals, the system of public higher education will

24

strive for excellence in its programming and strengthen the
access of every individual in the commonwealth to
educational opportunities.

It is hereby further declared that by maintaining a high
quality system of public colleges and universities, the
commonwealth moves toward achieving the following goals:--

(a) to provide its citizens with the opportunity to
participate in academic and programs for their personal
betterment and growth, as well as that of the entire
citizenry;

(b) to contribute to the existing base of research and
knowledge in areas of general and special interest, for the
benefit of our communities, our commonwealth and beyond;
and

(c) to understand the importance of higher education to the
future of the economic growth and development of the
commonwealth, and, by so doing, prepare its citizens to
constitute a capable and innovative workforce to meet the
economic needs of the commonwealth at all levels.

The board of higher education, in this chapter called the
board or the council, shall be responsible for defining the
mission of and coordinating the state's system of higher
education in accordance with the provisions of this
chapter. The council shall work with boards of trustees to
identify and define institutional missions, taking into
account regional needs, as well as to define each
institution's role within the greater system. Said
institutional missions shall also relate to the mission the
council shall identify for each category of institution
within the system, including the university, the state
college, and community college segments. The council shall
be responsible for publishing such mission statements,
which shall be used for purposes of accountability,
efficiency, and focus.

The board shall work in conjunction with boards of trustees
to hold the system accountable for achieving its goals and
establishing a comprehensive system to measure quality by
defining educational achievement and success with the use
of standards and measurements. The council shall encourage
an economical and effective use of the resources of the
commonwealth with particular emphasis upon the development
of regional and local consortia and related co-operative
arrangements by and between public and independent
institutions of higher education.

The board shall, work to coordinate its activities within a
framework of an integrated public education system
extending from early childhood programs through the
university level, to promote coordination and greater
benefits to students. The council shall also encourage

collaboration between educational institutions and business and industry in order to promote employment opportunities and educational improvements.

In achieving these ends the council shall foster decision-making close to the actual learning environment. The council shall encourage participation in that process by students, faculty, and the general public in an effort to create and maintain a system of higher education which provides the cultural, economic and personal growth opportunities to enrich and empower the lives of the people of this commonwealth.

## PLAINTIFF HAS A FEDERAL RIGHT TO A HIGHER EDUCATION

Defendant's Counsel argued the point that this Plaintiff did not have a Federal Constitutional Right to Education.  Plaintiff is an active client with the Massachusetts Rehabilitation Commission.  Under the Federal Code of Regulations, Title 34 Code of Federal Regulations:

### § 361.1 Purpose.

Under the State Vocational Rehabilitation Services Program (Program), the Secretary provides grants to assist States in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs, each of which is—

(a) An integral part of a statewide workforce investment system; and

(b) Designed to assess, plan, develop, and provide vocational rehabilitation

services for individuals with disabilities, consistent with their

strengths, resources, priorities, concerns, abilities,

capabilities, interests, and informed choice, so that they may

prepare for and engage in gainful employment.

(Authority: Section 100(a)(2) of the Act; 29 U.S.C. 720(a)(2))

Plaintiff has sought the assistance of the Massachusetts

26

Rehabilitation Commission, a duly authorized agency of the Commonwealth of Massachusetts which is empowered to service individuals with a disability.  Plaintiff is an individual with a documented disability.

When the University of Massachusetts Health Services, and the Associate Counsel for the University refused to acknowledge that the Plaintiff was correct in his determination of the mandatory fee, they failed to provide plaintiff with access to vocational rehabilitation and inured to insure that a *ultra vires* plan was improperly being billed and exacted from this plaintiff before he could attend the University of Massachusetts at Amherst thus invoking his Federal Right to a Higher Education under Title 34 CFR §361.1, Office of Special Education and Rehabilitation Services.

Under the Federal Code of Regulations plaintiff is classified as A student that is receiving vocational rehabilitation services.  This information can be found through Code of Federal Regulations Title 34, Volume 2, Parts 300 to 399 Revised as of July 1, 1999 From the U.S. Government CITE: 34CFR361.22 , Page 279-280, TITLE 34 EDUCATION PART 361 THE STATE VOCATIONAL REHABILITATION SERVICES PROGRAM Subpart B--State Plan for Vocational Rehabilitation Services:

"(b) Students with disabilities who are not receiving special education services. The State plan must contain plans, policies, and procedures, including cooperation with appropriate agencies, designed to ensure that students with disabilities who are not receiving special education services have access to and can receive vocational rehabilitation services, if appropriate, and to ensure outreach to and identification of those students. (Approved by the Office of Management and Budget under control number 1820-0500) (Authority: Secs. 101(a)(11)(C), 101(a)(24) and

27

statewide workforce investment system, to assess, plan, develop,
and provide vocational rehabilitation (VR) services for
individuals with disabilities so that those individuals may
prepare for and engage in gainful employment consistent
with their strengths, priorities, concerns, abilities,
capabilities, interests, and informed choice."

Plaintiff is an eligible applicant according to the Code of
Federal Regulations in a Federally recognized, supported and reviewed
agency such as the Massachusetts Rehabilitation Commission:

" (15) Eligible individual means an applicant for
vocational rehabilitation services who meets the eligibility
requirements of Sec. 361.42(a)" (Authority: Sections 7(20)(A)
and 102(a)(1) of the Act; 29 U.S.C. 705(20)(A) and 722(a)(1))
Plaintiff is an active client in a Federally recognized,
supported and reviewed agency such as the Massachusetts
Rehabilitation Commission.

"14) Designated State unit or State unit means either—
(i) The State vocational rehabilitation bureau, division, or
other organizational unit that is primarily concerned with
vocational rehabilitation or vocational and other
rehabilitation of individuals with disabilities and that is
responsible for the administration of the vocational
rehabilitation program of the State agency, as required
under Sec. 361.13(b); or

(ii)The State agency that is primarily concerned with
vocational rehabilitation or vocational and other
rehabilitation of individuals with disabilities. (Authority:

101(a)(30) of the Act; 29 U.S.C. 721 (a)(11), (a)(24), and (a)(30)) Note: The following excerpt from page 33 of Senate Report No. 102-357 further clarifies the provision of transition services by the State vocational rehabilitation agency: The overall purpose of this provision is to ensure that all students who require vocational rehabilitation services receive those services in a timely manner. There should be no gap in services between the education system and the vocational rehabilitation system * * *. The committee intends that students with disabilities who are eligible for, and who need, vocational rehabilitation services will receive those services as soon as possible, consistent with federal and state law. These provisions are not intended in any way to shift the responsibility of service delivery from education to rehabilitation during the transition years. School officials will continue to be responsible for providing a free and appropriate public education as defined by the IEP. The role of the rehabilitation system is primarily one of planning for the student's years after leaving school. (S. Rep. No. 357, 102d Cong., 2d. Sess. 33 (1992))

Plaintiff's enrollment with the Massachusetts Rehabilitation Commission falls under the purview and review of the Federal Government because the Federal Government funds the programs of the Massachusetts Rehabilitation Commission.

"The State Vocational Rehabilitation Services Program (VR program) is authorized by Title I of the Rehabilitation Act of 1973, as amended (Act) (29 U.S.C. 701-744). The VR program provides support to each State to assist it in operating a statewide comprehensive, coordinated, effective, efficient, and accountable State program, as an integral part of a

28

Sections 7(8d)(B) and 101(a)(2)(B) of the Act; 29 U.S.C.
705(8)(B) and 721(a)(2)(B))

Plaintiff is an individual with a Federally recognized illness:

41) Physical or mental impairment means--

(i)    Any physiological disorder or condition, cosmetic
disfigurement, or anatomical loss affecting one or more
of the following body systems: neurological, musculo-
skeletal, special sense organs, respiratory (including
speech organs), cardiovascular, reproductive, digestive,
genitourinary, hemic and lymphatic, skin, and endocrine;
or

(ii) Any mental or psychological disorder such as mental
retardation, organic brain syndrome, emotional or mental
illness, and specific learning disabilities.

(Authority: Sections 7(20)(A) and 12(c) of the Act; 29
U.S.C. 705(20)(A)and 709(c))

## PLAINTIFF HAS A MASSACHUSETTS STATUTORY RIGHT TO AN EDUCATION

Defendant's Counsel, by telephone hearing, argued that plaintiff
did not have a "general right to a higher education".  The
Massachusetts General Laws, Chapter 15A §1 **Policy and goals states
otherwise:**

"Section 1. It is hereby declared to be the policy of the
commonwealth to provide, foster and support institutions of
public higher education that are of the highest quality,
responsive to the academic, technical and economic needs of the

30

commonwealth and its citizens, and accountable to its citizens through lay boards, in the form of the board of higher education and the boards of trustees of each of the system's institutions.

It is hereby further declared that in pursuit of its stated goals, the system of public higher education will strive for excellence in its programming and strengthen the access of every individual in the commonwealth to educational opportunities.

It is hereby further declared that by maintaining a high quality system of public colleges and universities, the commonwealth moves toward achieving the following goals:--

   (a) to provide its citizens with the opportunity to participate  in academic and educational programs for their personal betterment and growth, as well as that of the entire citizenry;

Plaintiff is a citizen of the Commonwealth of Massachusetts and has resided in the Commonwealth of Massachusetts for over thirty-five years.

### THE JUDICIARY AND THE BOARD OF TRUSTEES

Massachusetts Appeals Court held, in O'Coins, Inc. v. Treasurer of Worcester County, 362 Mass 507, 511 (1972) that:

"it was never intended that any one department(plaintiff inserted: e.g. Board of Trustees), through the exercise of its acknowledged powers, should be able to prevent another department(plaintiff inserted: e.g. United States District Court) from fulfilling its responsibilities to the people under the Constitution"

The O'Coin court cited the Massachusetts Constitution Article 29 which provides:

"It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and the administration of justice". The Court further explained citing Article 11 which provides that:

"Every subject of the commonwealth...ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." As the Court explained:

"From these provisions it necessarily follows that courts of general jurisdiction have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his liberty, property or character is at stake. Simply stated, implicit in the constitutional grant of judicial power is authority necessary to the exercise of that power. Such authority is not limited to adjudication, but includes certain ancillary functions, such as rulemaking and judicial administration which are essential if the courts are to carry out their constitutional mandate."

The doctrine of inherent judicial authority in Massachusetts is intimately connected to the doctrine of separation of powers set forth in Article 30 of the Massachusetts constitution. "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them; the judicial shall never

32

exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

Plaintiff requests that if his legal counsel cannot be the Student Legal Services Office, because of a threat of removal of their litigation authority by the University of Massachusetts Board of Trustees, and the denial of the University of Massachusetts Board of Trustees to allow the Student Legal Services Office to litigate against the Trustees, that, this court, appoint an attorney that will serve the interests of this Plaintiff and the class members similarly situated. Should the court not appoint an attorney for plaintiff, but does issue a Temporary Restraining Order against the defendants, plaintiff requests that the United States District Attorney be appointed to investigate and adjudicate this matter on behalf of the class members, and the citizens of the Commonwealth of Massachusetts.

The University of Massachusetts Board of Trustees, lacks the authority to overrule the judicial authority of this court. This court has proper jurisdiction and this venue is proper to ascertain and determine the merits of the case plaintiff brings on behalf of the members of the class action suit.

### THE 11th AMENDMENT AND PLAINTIFFS RIGHT TO SUE THE STATE

Defendant's Counsel, by telephone hearing, attempted to argue that this action was not an actionable cause and that Plaintiff was not in a capacity to sue the state and that the 11th Amendment of the Constitution prevented the same and the Commonwealth of Massachusetts had Sovereign Immunity. In Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738 (1824) the Court, through Chief Justice Marshall, held that the Bank of the United States could sue the Treasurer of Ohio, over Eleventh

33

Amendment Objections, because the plaintiff sought relief against a state officer rather than against the state itself. Defendant's counsel submitted answer to the complaint served against the defendants by providing not one, but two appearances for the defendants he represents. defendant's Counsel represents three of the five defendants and is not in a capacity to represent the other two, no matter what his good intentions are. The three that counsel represent are two individuals and one "lay board".

The United States Supreme Court has held:

"a suit is not against a State unless the State is a named party of record" 9 Wheat. At 850-858

Plaintiff has not named the Commonwealth of Massachusetts as a defendant, but named individuals in their official capacity and two "lay boards" in their capacity. Plaintiff has named the Division of Health Care Finance and Policy which is not the entire state, but an executive branch of the Commonwealth of Massachusetts and therefore is not the entire Commonwealth.

The Court further adopted the rule of United States v. Lee, 167 U.S. 204 (1897) in Tindal v. Westley, 106 U.S. 196 (1883) a tort suit against federal officials, to permit a tort action against state officials to recover real property held by them and claimed by the State and to obtain damages for the period of withholding. The immunity of a State and from suit has long been held not to extend to actions against state officials for damages arising out of willful and negligent disregard of state laws. (See Johnson v. Lankford, 245 U.S. 541 (1918); Martin v. Lankford, 245 U.S. 547 (1918).

34

The defendants have willfully, negligently and/or gross negligently disregarded state laws.

The reach of the rule is evident in Scheur v. Rhodes, 416 U.S. 233 (1974) in which the Court held that plaintiffs were not barred from suing the governor and other officials of a State alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials. There was no "executive immunity" from suit, the Court held; rather, the immunity of state officials is qualified and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken. Such suits, like suits against local officials and municipal corporations, are typically brought under 42 U.S.C. §1983 and typically  involve all the decisions respecting liability and immunities thereunder.

In Quern v. Jordan, 440 U.S. 332 (1979) (reaffirming Edelman v Jordan, 425 U.S. 651 (1974), the court held:

"that state officials could be ordered to notify members of the class that had been denied retroactive relief in that case that they might seek back benefits by invoking state administrative procedures; the order did not direct the payment but left it to state discretion to award retroactive relief"

### THE INTERPRETATION OF STATUTES

Defendant's Counsel argued, by telephone hearing, that the University of Massachusetts Board of Trustees had the authority to interpret Massachusetts General Law Chapter 15A §18.  Counsel argued

that this interpretation, allowed the defendants to arbitrarily
determine a percentage below the Massachusetts General Laws, the Code
of Massachusetts Regulations and the Guidelines from the Division of
Health Care Finance and Policy.  Massachusetts courts have held that
that a statute cannot be interpreted

     "so as to render it or any portion of it meaningless" Adamowicz
v. Ipswich, 395 Mass. 757, 760 (1985).

     Defendant's counsel argued that the legislators intent was to
reduce the "Free Care" pool, and the Defendants were fulfilling their
duty to the Commonwealth by reading this passage of the statute without
consideration of the numerical value (75%) and the words preceding this
numerical value "at least".  Such interpretation argued by defendant's
counsel is analogous to the University of Massachusetts Board of
Trustees adapting the drinking age from twenty one to twenty four, or
eighteen, based on whatever words they wish to employ in determining
either of these outcomes.  Plaintiff has shown that the University of
Massachusetts Board of Trustees is a "lay" organization and is not
entitled to interpreting statute whether said statute would help or
hinder the citizens of the Commonwealth of Massachusetts.  In this
example, plaintiff argues that the reduction of the drinking age would
both be advantageous and disadvantageous for the citizens of the
Massachusetts;  likewise raising the drinking age would foster the same
reaction, both advantageous and disadvantageous.  The same can be held
true for the minimum threshold for the student health insurance plan.
While it can lower the uncompensated "free care" pool, it can also
preclude students from entering the University because it raises the
cost of their education and places an undue burden on them to raise the
necessary funds to attend the University, to pay for this, ultra vires

plan.  In either case, the University of Massachusetts Health Services

or the University of Massachusetts Board of Trustees is not authorized

to change the drinking age, or the minimum stipulated in the student

health insurance plan and this authority is vested in the elected

representatives and senators of the 351 cities and towns of which they

serve, the Massachusetts General Court.

In ROPT Ltd. P'Ship v. Katin, 431 Mass. 601, 603 (2000) the Court

held that the:

"court must not ignore statutory language or produce an

illogical result".

The language of interpreting statutory language can be difficult

if only certain statements are held out and above the entire statute.

This is an incorrect argument that defendant's counsel argues.  The

court held in Acting Superintendent of Bournewood Hospital v. Baker,

431 Mass 101, 104 (2000) that a:

"statute must be read as a whole to produce an internal

consistency".

In Metropolitan Youth Services, Inc. v Massachusetts State

Lottery Commission, Docket Number 00-4532, Middlesex Court, the court

noted and stated:

"In recent years, a great deal of attention has been given

in both case law and academic writing to the use of dictionaries

as an aid in statutory interpretation.  See e.g., A.R. Randolph,

"Dictionaries, Plain Meaning, and Context in Statutory

Interpretation," 17 Harvard Journal Law & Public Policy 71

(1994); Note, "Looking it Up: Dictionaries & Statutory

Interpretation," 107 Harvard Law Review 1437 (1994).  Resort to

dictionaries or to what is often termed the "plain meaning" of statutory language has emerged as a reaction what was regarded as judicial overreaching in terms of unwarranted reliance on legislative history, among other things."

The sentence that is in question from the Massachusetts General Laws and the Code of Massachusetts Regulations has no punctuation.  Even if it did, the court has found, in <u>Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 432 (1983)</u> that:

"in the interpretation of statutes, it has been repeatedly observed that "matters of punctuation are not necessarily determinative.""

Defendant's counsel argued, in essence, that their interpretation of the statute was void of the words "at least" preceding the numerical value (75%).  The Oxford American Dictionary and Thesaurus, Oxford University Press, 2003, pg 852 defines the word, "least", in its first meaning, as "smallest; slightest; most insignificant."  The third meaning from this same Dictionary and Thesaurus refers to "least" with this definition "in the least degree".  The dictionary continues to refer to "least" also as "at the least" which would be meant to be "not less than".

On the World Wide Web, at http://dictionary.oed.com the Online dictionary under its fifth definition, describes it as follows:

"5. Governed by a preposition, forming an adverbial phrase. A. at least, at the least (also (ME.) Middle English atta leste,

38

Ormin att allre.  A qualifying phrase, attached to a quantitative designation to indicate that the amount is the smallest admissible."

The New Oxford American Dictionary, Oxford University Press, 2001 page 970 defines the word "least" under Phrases, in its first definition referring to its use with the word "at", as in "at least" defining the two to mean "not less than".

Defendant's counsel's argument simply does not hold weight, at least, from this Plaintiff's viewpoint, and as taken in the context of generally accepted use and language of the English language.

The proper interpretation of the sentence within the Code of Massachusetts Regulations and the Massachusetts General Laws would imply that the percentage of seventy-five would be a minimum, which is clearly the intent of the Legislature in considering that the Division of Health Care Finance and Policy has published it in their Access to Health Care in Massachusetts, A Catalog of Health Care Programs for Uninsured and Underinsured Individuals. Third Edition, May 2004.

This document requires the reader to install Adobe Acrobat and can be downloaded and reviewed from this website: www.mass.gov/dhcfp/pages/pdf/access.pdf   In this Executive document, student health insurance is clearly explained and the sentence employed and utilized in both the Massachusetts General Laws and the Code of Massachusetts Regulations can be found within the first paragraph.

"A part-time student is defined as a student participating in at least 75% of the full-time curriculum."

The Division of Health Care Finance and Policy clearly define the Eligibility requirements for Students. Under eligibility:

"Full-time and Part-time students (75% time *or more*)(emphasis added) enrolled in Massachusetts institutions of higher learning are *required*(emphasis added) to participate. Other students *may*(emphasis added) purchase plans, and family plans are also available."

The complete reading of the statute delineates in the second paragraph, first sentence, of the Code of Massachusetts Regulations:

"Prior to the 1989-1990 academic year, no law required (emphasis) students to have health insurance in order to enroll in higher education, nor was there a standard set of *defined minimum benefits* (emphasis added) for college and university health insurance programs."

Thus, if reading this section of the Code of Massachusetts Regulations, the term "minimum" is referring to the percentage clearly described in the preceding paragraph. There are no other numerical references in this statute other than the date the law came into effect and the Chapter and section of the Acts of the Commonwealth. There is no other possible use of this word within the statute and its application. The percentage "75" was intended to be a minimum. Massachusetts General Law and the Code of Massachusetts Regulations are clear and unequivocal on this.

40

The percentage is a minimum, and it is a statutory law according to be enforced by the University of Massachusetts at Amherst and the University of Massachusetts Board of Trustees.

### THE ARGUMENT

The argument Plaintiff argues is precise, clear, unequivocal, undeniable and factual. The University of Massachusetts Health Services and the University of Massachusetts Board of Trustees have been discriminating against a class of students enrolling in less than nine (9) but more than five (5) credits for potentially fifteen years.

The further extended argument is, through careful research and analysis, other Massachusetts colleges and universities that did not follow the letter of the law accordingly, may have also violated part-time students rights, possibly at the same or different credit levels. Such actions of mandating and forcibly enrolling these part-time students in health insurance programs, would again be in violation of the Massachusetts General Laws, the Code of Massachusetts Regulations and the Division of Health Care Finance and Policy Guidelines.

### THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT ISSUE A TEMPORARY RESTRAINING ORDER AGAINST THE DEFENDANTS.

By failing to allow plaintiff the opportunity to register, enroll and participate at the University of Massachusetts at Amherst the defendant's will cause irreparable harm to the plaintiff. The defendant's are in violation of Massachusetts General Laws Chapter 15A §18 and are forcing this part-time student to enroll in a program that is contrary to the Law, Code

41