and Guidelines issued by the Massachusetts General Court and the Division of Health Care Finance and Policy, of the Executive Office of Health and Human Services.

### THE DENIAL OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER THE EDUCATION CLAUSE CONSTITUTES IRREPARABLE HARM.

By failing to abide by the Massachusetts General Laws, the Code of Massachusetts Regulation, the Division of Health Care Finance and Policy, the defendant's have failed to provide Plaintiff with the education to which the plaintiff is entitled under the Education Clause. The deprivation of plaintiff's constitutional rights is an irreparable harm. O'Brien v. Mass Bay Transp. Authority, NO. Civ A 951659E, 1995 WL 808707(Mass. Super., Apr. 6, 1995)(citing Wright & Miller, Federal Prac. & Procedure §2948

> "[w]hen an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary";

Whitney v. Ashburnham-Westminister Regional School District., No. Civ. A. 960365S, 1996 WL 1185116 (Mass Super., Feb. 22, 1996)

### ENFORCEMENT OF DEFENDANT's INTERPRETATION DISPARAGES PLAINTIFF, AFFECTS HIS DIGNITY AND THREATENS HIS SELF-ESTEEM

Defendants actions of denying plaintiff enrollment at the University of Massachusetts at Amherst based on an illegal and *ultra vires* policy, have disparaged the plaintiff and has had his reputation diminished and looked down upon by means of a status of "administratively withdrawn" which has effectively denied the Plaintiff to use borrowing privileges at the University of Massachusetts W.E. DuBois library to continue his pursuit of a higher education. Such status has also prevented Plaintiff from

42

accessing the system known as Spire and has denied Plaintiff the ability to register for classes.

" To adversely disparage a student's competence by such language, is stating that he or she lacks a necessary characteristic, thereby impair his or her standing within the community, harms one reputation and is defamatory." Ravnikar v. Bogojavlensky, 408 Mass 627 (Mass. 2003); see also RESTATEMENT OF TORTS (Second)(1977)§§559-573

One of the express goals of the Education Reform Act is the provision of an education in which students "engage fully in learning as an inherently meaningful and enjoyable activity without threats to their sense of security or self-esteem" Massachusetts General Law Chapter 69, §1. Contrary to this Act, under the policy of the University of Massachusetts Health Services, plaintiff is insecure about his plans for the future, including his plans for continuing his education beyond the University of Massachusetts at Amherst.

The uncertainty and insecurity of not knowing whether plaintiff will receive a Temporary Restraining Order against the defendants has left plaintiff, being "physically and emotionally drained", and "frustrated" and "emotionally upset" at the prospect of explaining to all the individuals, Professors, support services as to why plaintiff would not be enrolled at the University of Massachusetts at Amherst this semester. These threats to plaintiff's self-esteem and individual indignities constitute irreparable harm. See Cupolo v. Bay Area Rapid Transit, 5 F. Supp. 2d 1078 (N.D.Cal 1997)(injuries to individual dignity constitute irreparable harm); Chalk v. United States District Court, 840 F.2d 701, 710 (9th Cir. 1988)(finding irreparable injury can

43

occur from emotional stress, depression and reduced sense of well-being); Sullivan v. Vallejo City Unified Sch, Dist., 731 F. Supp 947, 961 (E.D. Cal 1990) (finding inconvenience to school [district] caused by preliminary injunction did not outweigh injury to the plaintiff's dignity and self-respect).

### BALANCING THE HARMS SUFFERED BY THE PLAINTIFFS AND THE DEFENDANTS FAVORS THE ISSUANCE OF A PRELIMINARY INJUNCTION.

The goal of a preliminary injunction is to minimize the risk of irreparable harm. Packaging Indus. Group Inc. v. Cheney, 380 Mass. 143 (1952). If the moving party can demonstrate that:

> "the requested relief is necessary to prevent irreparable harm to it and that *granting the injunction poses no substantial risk of such harm to the opposing party*, a possibility of success on the merits warrants issuing the injunction." Id. at 617, n. 12 (emphasis added). When a governmental authority or agent acts in an *ultra vires* manner, it cannot show that issuing an injunction prohibiting them from continuing to act *ultra vires* will constitute harm under the balancing analysis of Cheney. See One Centre Street, Inc. v. Finnegan, No. Civ.A 981259B, 1998 WL 1183949 (Mass. Super. Oct. 13, 1998)(ruling there can be no harm inflicted on either the governmental authority or the public interest because the government official acted *ultra vires*).

The defendants have acted in an ultra vires fashion by enacting a policy and guideline that is repugnant to Massachusetts General Law. The defendants thus are precluded from asserting that a preliminary injunction would cause harm to them or the public interest. Consequently, balancing the harms warrants the issuance of a preliminary injunction against the defendants. Even if the defendants

44

were not barred from demonstrating any alleged harm, they still could not establish that the balancing of harms tips in their favor.

### The CLASS MEMBERS

The plaintiff is an aggrieved person under federal civil rights law as a result of the actions, policies and practices of defendants.

The named individual plaintiff seeks immediate Preliminary Declaratory Mandatory Injunctive Relief in the form of a Temporary Restraining Order on behalf of himself to prevent defendants from denying plaintiff access to enroll at the University of Massachusetts at Amherst during the Fall of 2004 by removing the status of "Administrative Withdrawal" from his record(s) and allow plaintiff to register, enroll and continue his pursuit of a higher education.

All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of defendants. Plaintiff seeks, on behalf of all class members, an order from this court, that shall prevent the defendants from requiring students, the class members, here in named in this class action suit, presently and in the future, from mandating their participation in a student health insurance program.

All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of defendants. Plaintiff seeks, on behalf of all class members, the University of Massachusetts Health Services to reimburse, credit or otherwise refund any and all monies charged against the class, or any other individual, in violation of the Laws, Codes and Guidelines of the Commonwealth of Massachusetts.

The members to this suit, for whatever period of time the defendants have been incorrectly, wrongfully charging students a

mandatory health plan, during regular academic session, during non-academic session, whenever such plan was billed and received as monies from the class members, irregardless of the term the class members were attending the University of Massachusetts at Amherst.

This matter is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) in that the class members are so numerous as to make the joinder of all them impracticable. Based on information and belief, there have been thousands of students enrolled at the University of Massachusetts at Amherst campus on a part-time basis. These students have been enrolled in courses to further their personal and education goals. The class members may or may not still be attending the University of Massachusetts at Amherst; may or may not reside in the Commonwealth of Massachusetts; may or may not reside in the United States of America. The class members affected may be matriculating or non-matriculating students. The class members may be both older and younger students and did not realize that they were being required to participate in a plan that was not mandatory or required.

The failure of the University of Massachusetts at Amherst Health Services to distinguish between the two classifications of part-time students has led to a discriminatory act against the class members.

The failure of the University of Massachusetts at Amherst to monitor the compliance of their Health Services Office with regard to the QSHIP program under Massachusetts General Laws has led to a discriminatory act against the class members.

The failure of the University of Massachusetts Board of Trustees to ensure that students were properly classified according to the Massachusetts General Laws and the Code of Massachusetts Regulations

and the Guidelines issued from the Division of Health Care Finance and Policy has led to a discriminatory act against the class members.

The failure of the Director of Health Services, Bernadette Melby to take remedial action to overcome the effects of past policies and practices has led to this class action lawsuit on behalf of the class members.

There are questions of law and fact common to the class members.

These common Questions of law and fact predominate over questions affecting individual class members. Among the questions of law and fact common to the class is whether the practices and policies of the University of Massachusetts at Amherst Health Services; the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; and the Massachusetts Board of Higher Education; the Division of Health Care Finance and Policy has violated the class members rights to seek a higher education by exploiting their status as part-time students by mandating a health insurance program in violation of the Code of Massachusetts Regulations CMR 114.6 3.00 Qualifying Student Health Insurance Program (QSHIP).

Whether the University of Massachusetts Board of Trustees, and the Massachusetts Board of higher Education, two "lay boards", have conspired, individually and collectively, to deny the class members the ability to sue, by the Student Legal Services Office, by mandating a fee to operate this office, and deny the class members the ability to use their services equally according to the United States Constitution.

Whether the University of Massachusetts Board of Trustees, and the Massachusetts Board of Higher Education, two "lay boards" have willingly, recklessly, negligently and/or gross negligently denied

the class members full and uninhibited use and services from the Student Legal Services Office at the University of Massachusetts at Amherst. The Student Legal Services Office is funded through revenue billed and collected from students, for their individual and collective use, both Full-time and Part-time students at the University of Massachusetts at Amherst.

Whether the University of Massachusetts Board of Trustees, a "lay board", can prevent the University of Massachusetts Student Legal Services Office from seeking injunctive and declaratory relief on behalf of a class of students, as named in this proposed class action suit under the United States Constitution, the Code of Federal Regulations, the Federal Rules of Civil Procedure, the Massachusetts Constitution, the Code of Massachusetts Regulations, and the Massachusetts Rules of Civil Procedure.

The claims of the individual plaintiff are typical of the claims of the proposed class members. The plaintiff, as the other class members, are students that wish to continue their education on a part-time basis, and desire to further their education without being mandated to participate in a health insurance program at the university of Massachusetts at Amherst through the University of Massachusetts at Amherst Health Services Office. The Plaintiff, as the other class members, may have already enrolled in courses at the University of Massachusetts at Amherst and may have been subjected to this mandatory plan of the health insurance program.

The named individual Plaintiff will fairly and adequately protect the interests of the class members.

Defendants have acted on grounds generally applicable to the class, thereby making final preliminary declaratory mandatory injunctive relief with respect to the plaintiff as a whole appropriate.

48

**MASSACHUSETTS CONSTITUTIONAL PROVISIONS**

Under the Massachusettes Constitution, <u>Article V.</u>:

"All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are accountable to them."

The University of Massachusetts at Amherst Board of Trustees is accountable to the Plaintiff and the class members. The Board of Higher Education is accountable to the plaintiff and the class members. The Division of Health Care Finance and Policy is accountable to the plaintiff and the class members. The University of Massachusetts at Amherst Health Services is accountable to the plaintiff and the class members.

Under the Massachusetts Constitution, <u>Article VI</u>.

"No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

The University of Massachusetts Board of Trustees has voted to place themselves out of harms way by preventing any lawsuits to be filed by the University of Massachusetts Student Legal Service Office by entitling themselves to "particular and exclusive privileges" that other citizens, distinct from those of the community, in the Commonwealth of Massachusetts are not accorded. The Massachusetts Board of Trustees is a "lay board" and is not legislatively authorized to deprive students of their legal right to be fully represented under the laws of the Commonwealth of Massachusetts or the United States Federal Constitution.

Under the Massachusetts Consitution, Article VII.

"Government is instituted for the common good; for the protection, safety, prosperity and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men: Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it."

Plaintiff, and the class members, seek to enforce Massachusetts General Law Chapter 15A in respect to their rights as a class of students, members, that have had their prosperity and happiness affected by the discriminatory actions on the part of the Defendants.

Under the Massachusetts Constitution, Article XI.

"Every subject of the commonwealth ought to find a certain

50

remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

The University of Massachusetts Board of Trustees require that fees are to be paid to the University, of which the University is authorized to retain, such as the Student Activities Fee be paid by, full-time and part-time students, in order to maintain services such as the University of Massachusetts Student Legal Services Office which advise and counsel students on various legal matters. The fact that the University of Massachusetts Board of Trustees demands that students make payments for services but denies a student equal access to obtain services is contrary to the United States Constitution and the Massachusetts Constitution.

The fact that a Mr. Getachew, of the Division of Health Care Finance and Policy admitted that students are not required to obtain health insurance if they are enrolled under nine (9) credits and then, sought counsel to obtain advice, to refuse this Plaintiff access to information that is easily accessible in the public domain; and that advice that is public record, public information, and the right of every citizen to obtain said advice and information, by "right and justice freely", and "without any denial" and counsel had instructed Mr. Getachew "to not give anything in writing" and denied Ms Rastogi, on behalf of this plaintiff, a certain remedy, by having recourse to the laws, does invoke plaintiffs Massachusetts Constitutional rights "for all injuries and wrongs which he may receive in his person, property, or character.""

Under the Massachusetts Constitution, Article XXIII.

"No subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature."

The Commonwealth of Massachusetts Legislature writes the laws of this great commonwealth. The Qualifying Health Insurance Program was written by the legislature of the Commonwealth. The QSHIP program is administered by Division of Health Care Finance and Policy. The University of Massachusetts Health Services manages and is in a position to insure that the Qualifying Students have access to this program ; the University Board of Trustees; the Board of Higher Education;the Division of Health Care Finance and Policy have knowingly imposed, fixed, levied and collected a plan, under the pretext that such plan was allowable, against their own guidelines.

### PLAINTIFF IMMEDIATE RELIEF REQUESTED

WHEREFORE Plaintiff respectfully pray that this Court grant the Preliminary declaratory Mandatory injunctive relief sought, as well as nominal damages and other relief, set forth hereinafter in the general prayer for relief.

### GENERAL PRAYER FOR RELIEF

WHERFORE, Plaintiffs pray for judgment as follows:

    a. That this Court permanently enjoin the conduct of defendants, their officers, agents, servants, and employees and direct defendants to remove the status of "administratively withdrawn" from the Plaintiff's record, and allow the plaintiff to enroll, at the University of Massachusetts at Amherst;

    b. That this court permanently restrain and enjoin defendants, their officers,agents, servants, and

      employees from denying plaintiff, equal rights to use the University of Massachusetts Student Legal Services Office to act as counsel for Plaintiff and the Class members; or appoint an attorney to act on behalf of the plaintiff and the class members; or to appoint the United States District Attorney to investigate the allegations herein contained in this class action lawsuit

c. That this court render an immediate Preliminary Declaratory Mandatory Injunction declaring the defendants' conduct denying equal rights to plaintiff, and the class members, to be invalid andunconstitutional in all respects under the Massachusetts General Laws, Massachusetts Consitution, the United States Constitution and the Code of Federal Regulations Title 34 and Title 42.

d. That this Court render a Declaratory Judgment declaring that defendants' refusal to allow plaintiff, and the proposed class members, to have equal access to services paid for through University Student Activities Fees, but not permitted to utilize such services as paid for as unconstitutional and constitutes impermissible discriminatory denial of civil rights of the plaintiff, and the proposed class of members, accorded by the United States Constitution and the Massachusetts Constitution.

e. That this court retain jurisdiction of this matter for the purposes of enforcing the court's order;

f. That this court exercise discretion pursuant to Rule 65 of the Federal Rules of Civil Procedure to accelerate the trial on the merits;

g. That this court order a trial by jury to assess actual and compensatory damages suffered by Plaintiff due to defendant's flagrant violation of plaintiff's constitutional rights;

h. That this court issue the requested injunctive relief without condition of bond or surety or other security being required of plaintiffs.

### PRAYER FOR OTHER RELIEF

i. Grant to plaintiff an award of nominal damages;

j. Grant to plaintiffs an award of the costs of litigation, including reasonable attorneys' fees and expenses;

k. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 21st day of September 2004.

_[signature: Scott Stern]_

Scott Stern

Pro-Se Plaintiff

400 West Main Street

North Adams, Massachusetts 01247

### ACKKNOWLEDGEMENT CERTIFICATE

On this __22__ day of __September__, 2004, before me, the undersigned Notary Public, personally appeared __Scott Stern__ proved to me through satisfactory evidence of identification, which were Drivers license from the Commonwealth of Massachusetts, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its state purpose.

_[signature: Dean R. Manuel]_

Signature of Notary Public

My Commission Expires __9/1/06.__



DEAN R. MANUEL
Notary Public
Commonwealth of Massachusetts
My Commission Expires Sep 1, 2006

"C"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| SCOTT STERN<br>400 West Main Street<br>North Adams, Massachusetts<br>01247<br>  Plaintiff,<br>vs.<br>University of Massachusetts at<br>Amherst,<br>University Health Services,<br>Director of Health Services,<br>Bernadette Melby<br>150 Infirmary Way<br>Amherst, Massachusetts 01003,<br>Defendant et al | CASE No.:04-30176-MAP<br><br>AFFIDAVIT OF SCOTT STERN |

The undersigned states the following under oath:

1. I am a Client of the Massachusetts Rehabilitation Commission.
2. I originally attended the University of Massachusetts at Amherst between the years 1980 and 1985.
3. I attended the University of Massachusetts in the Fall, 2003 academic year.
4. I enrolled in two courses, with a total amount of credits of six (6) during the Fall of 2003.
5. During the Fall of 2003 I engaged in discussion, with the Director of Health Services, Bernadette Melby, at 150 Infirmary

Way, Amherst, Massachusetts in regard to the Qualifying Student Health Insurance Program (QSHIP) and the applicability of this plan according to the law and this students technical status according to the law which did not require him to pay such fee.

6. During this meeting, the Director did not provide and documentation or policy stating that would supercede Chapter 15A § 18 of the Massachusetts General Laws. During this meeting, in front of my person, the Director of Health Services, insisted that I should "just believe her" and take for face value the statements she was relaying. As well as that she had "some document" of which she could not locate nor provide, indicating that the University of Health Services had authorization from the legislature to supercede and override the statutory provisions of M.G.L. Ch 15A §18 and the Code of Massachusetts Regulations. In addition Bernadette Melby suggested that "if she wanted to, she could change the numerical requirement to as little as one (1) credit"

7. On or around the week of September 1, 2004 I had a conversation with Tom Mathers, Associate Controller for the University of Massachusetts, acting in the position of Interim Bursar, by telephone, having called the Bursar's Office at the University of Massachusetts at Amherst, in regard to this QSHIP program and Mr. Mathers expressed the sentiments of himself that "from a customer standpoint, you should not have to pay first in order to seek a refund".

8. On or around the week of September 1, 2004 I heard Mr. Mathers directly state, in a subsequent conversation, directly therafter of the first conversation, to my person that he had conducted a conversation with Controller of the University of Massachusetts at Amherst, Mr. Andrew Mangles, and Mr. Mathers repeated that Mr. Mangles felt "that Mr. Stern may have stumbled across something

and it may cost the University thousands of dollars". In addition, Mr. Mathers expressed that he attempted to contact Mr. Brian Burke, Associate Counsel, located in the Whitmore Administration Building, and Director of Health Services, Bernadette Melby, to seek an answer to the questions and controvery I had presented him.

9. On or around the second week of February, of 2004, I received, in writing, notes and papers relating to the questions I had given the Student Legal Services Office, and inclusive of these notes were handwritten notes from a Suman Rastogi, a Law Clerk, regarding conversations she had conducted on several occasions with a Mr. Getachew or a person of similar name at the Division of Health Care Finance and Policy. These handwritten notes were statements by Mr. Getachew that students under nine (9) credits were not mandated to enroll in the QSHIP health program and pay for the health fee and any of the related costs associated with the program.

10. During the Spring of 2004 and the Summer of 2004, I had multiple conversations with Gladys Rodriquez, Associate Dean of Students, of the Office of the Dean of Students who attempted to work this situation out and resolve the issue of the QSHIP program between this student and the Director of Health Services. During one of these most recent conversations, during the month of August, 2004, Gladys Rodriquez, informed me that the Director of Health Services "was not going to move" on the issue of the health fee and it was the Director's contention "that the University of Massachusetts was, actually, making it better for students". I requested Gladys Rodriquez to put the conversation in writing for me as is indicated by the attached letter, which is the summation of her conversation with the Director of Health Services,

Bernadette Melby. This letter reiterates the Director's position and that this student was to "pay it" then "seek a refund."

11. On Septeber 13, 2004 I engaged in a conversation with an individual, "person A", is currently a full-time employee of the University of Massachusetts at Amherst. For protection of this persons privacy, and their position, I have chosen not to submit and provide their name on this affidavit, and the fact that this person A has not consented to their name being used in this affidavit or suit, and is not a member of the class associated with this class action lawsuit. This conversation has merit and should be looked upon with a concern with regard to the actions and policies of the University of Massachusetts Health Services and their applicability of policies and procedures regarding insurance and their enforcement and denial of statutory provisions of the QSHIP program. This person A had a family member, within the last year or two attend the University of Massachusetts at Amherst, has appropriate applicable insurance, and was denied the right by the University of Health Services to use this insurance and was mandated and forced to purchase other additional insurance, above and beyond their existing policy and contrary to the statutory provisions of Code of Massachusetts Regulations CMR 114.6 3.00 regarding insurance from other carriers. Upon researching the issue more in depth, this person A was able to obtain a waiver for a subsequent semester for the member of their family that was still attending the University of Massachusetts at Amherst.

I have stated all of the above based upon my own knowledge, information and belief; and so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this day of September 14, 2004.

_____

Scott Stern

400 West Main Street

North Adams, Massachusetts 01060