UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
CLERKS OFFICE
2004 SEP 28 P 1:32
DISTRICT COURT
DIST OF MASS

| | |
|---|---|
| Scott Stern,<br>400 West Main Street<br>North Adams, MA. 01247,<br>and other persons similarly situated<br>in the Commonwealth of Massachusetts;<br>and other persons similarly situated<br>in the United States of America; and<br>other persons similarly situated not<br>currently residing within the<br>Commonwealth of Massachusetts or the<br>United States of America,<br><br>       Plaintiff,<br>vs. | Case No.: 04-30176-MAP<br><br>MOTION TO MODIFY NAMED DEFENDANTS IN<br>COMPLAINT OF SEPTEMBER 6th, 2004 |

University of Massachusetts at
Amherst
University Health Services
Director of Health Services,
Bernette Melby
150 Infirmary Way
Amherst, Massachusetts.    01003,
Defendant

and,

University of Massachusetts at
Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts    01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts    02108
Defendant

and,

Massachusetts Board of
Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696
Defendant

and,

Division of Health Care
Finance and Policy
It's EMPLOYEE "MR GETACHEW" and not
the DIVISON IN ITS ENTIRETY.
Two Boylston Street
Boston, Massachusetts 02116-4737

NOW HERE COMES PLAINTIFF AND MOVES this court to allow plaintiff to modify his submitted complaint by removing the Division of Health Care Finance and Policy as a named defendant and substituting and replacing the named defendant with the person named "Mr Getachew" or someone that is similarly named that is employed at the Division of Health Care Finance and Policy that responded to telephone calls conducted by law clerk Suman Rastogi in an investigation of the QSHIP program and policies of the Student Legal Services Office.

NOW HERE COMES PLAINTIFF AND MOVES this court to allow the original complaint, amendments to the complaint, Memorandum of Law, and affidavits which may be already submitted to this court to be modified by removing all references to "Bernadette Melby" and replacing this defendant with the name "Bernette Melby."

NOW HERE COMES PLAINTIFF AND MOVES this court to allow the Original complaint and the Memorandum of Law, to herein name and Incorporate the following companies as Co-Defendants in the above Captioned matter. The following company that first needs to be

Incorporated as a CO-DEFENDANT is: The Chickering Group, A Company, P.O. Box 15708, Boston, Massachusetts 02215, and Of this company the following Management Team: Daniel Fish President; Paul Silva, Chief Operating Officer; Frederick Chairman Emeritus; Kenneth D. Chicos, Vice-Chairman, Emer Caulfield, Chairman; Paul Cronin, Senior Vice-President, Underwriting Services; Mark C. Kelley, Senior Vice Presi Operations; Scott A. Champagne, Senior Vice President, C Gary W. Nicksa, Senior Vice President, Finance & Adminis Grenolds, Vice President, Business Development; Judith M Vice President, Human Resources; Maryellen Pease, Vice Finance; Linda M. Ragosta, Ed.D., Vice President for In Relations.

NOW HERE COMES PLAINTIFF AND MOVES this court to Complaint and memorandum of law in support of the comp the following company as a CO-DEFENDANT in the above The company plaintiff requests to name as a co-defenda INSURANCE COMPANY, 151 Farmington Avenue, Hartford, C A company with principal offices in Connecticut but w incorporation residing in Pennsylvania. Plaintiff he following Officers and Management of "Aetna Insuranc Inc /PA/"; "Aetna Inc."; "Aetna Inc /CT/; and any ot company "AETNA" may employ under subsidiaries that a true ownership of The Chickering Group of Boston, Ma Defendants of the above referenced action; "Aetna" h

[right margin, partially cut off:]
ve
4.D.
cos,
tephen
ial and

ervices;
; Dale
e, Esq.,
nt of
ional

the
and modify
ed file.
AETNA LIFE
cut, 06156

mes the
y"/"Aetna
es the
to hide the
etts as Co-
the legal

system and the rules of court to avoid being responsible for actions its other subsidiaries have committed in the past and it will, nevertheless, attempt to do the same with the actions of The Chickering Group.

The parties herein are the management of "Aetna": John Rowe, M.D. Chairman and Chief Executive Officer; Ronald Williams, President; Edward L. Shaw, Executive Vice President and General Counsel; David B. Kelso, Former Executive Vice President Strategy and Finance; Timothy A. Holt, Senior Vice President and Chief Investment Officer; Alan M. Bennett, Senior Vice President and Chief Financial Officer.

Plaintiff may need to modify this list of defendants, by deleting, adding or including other individuals that may have conspired to defraud the class members and the citizens of the Commonwealth of Massachusetts by means of forcibly charging for health insurance premiums under a student health insurance program, issued by one of their subsidiaries, "CHICKERING" that were in direct violation of the Massachusetts General Laws, Code of Massachusetts Regulations and the Guidelines established by the Division of Health Care Finance and Policy.

AETNA INSURANCE COMPANY HAS CLASS ACTION LAWSUITS PENDING IN OTHER STATES AT THIS TIME AND THIS COMES FROM THEIR 2004 FILING WITH the Securities and Exchange Commission and this 2004 quarterly report ending the quarter dated March 31, 2004 can be found at the below weblink.

Just copy and paste into one's address bar:

http://sec.freeedgar.com/displayHTML.asp?ID=2927002

Item 1. Legal Proceedings

*Managed Care Class Action Litigation*

Since 1999, the Company has been involved in purported class action lawsuits that are part of a wave of similar actions targeting the health care payor industry and, in particular, the conduct of business by managed care companies (the "Managed Care Class Action Litigation").

The Judicial Panel on Multi-district Litigation transferred all of the federal actions, including several actions originally filed in state courts, to the United States District Court for the Southern District of Florida (the "Florida Federal Court") for consolidated pretrial proceedings. The Florida Federal Court created a separate tra... for all cases brought on behalf of health care providers (the "Provider Cases").

Thirteen Provider Cases were presided over by the Florida Federal Court, and a similar action is pending in Louisiana state court, on behalf of purported classes of physicians. These Provider Cases alleged generally that the Company and each of other defendant managed care organizations employed coercive economic power force physicians to enter into economically unfavorable contracts, imposed unnecessary administrative burdens on providers and improperly denied claims in whole or in part, and that the defendants did not pay claims timely or did not pay claims at proper rates. These Provider Cases further charged that the Company the other defendant managed care organizations conspired and aided and abette one another in the alleged wrongdoing. These actions alleged violations of the Racketeer Influenced and Corrupt Organizations Act, the Employee Retirement Income Security Act of 1974, state unfair trade statutes, state consumer fraud statutes, state laws regarding the timely payment of claims, and various commo law doctrines and sought various forms of relief, including unspecified damages treble damages, punitive damages and injunctive relief.

Effective May 21, 2003, the Company and representatives of over 900,000 physicians, state and other medical societies entered into an agreement (the "Physician Settlement Agreement") settling the lead physician Provider Case pe in the Florida Federal Court. The Physician Settlement Agreement was approve the Florida Federal Court on November 6, 2003. The order of approval has bec appealed to the United States Court of Appeals for the Eleventh Circuit, and the appeal is scheduled to be argued on August 12, 2004. The Company anticipate if the approval order is not overturned on appeal, the Physician Settlement Agreement will resolve all pending Provider Cases filed on behalf of physicians did not opt out of the settlement, including the Louisiana state court action. D the second quarter of 2003, the Company recorded an after-tax charge of $75 million ($115 million pretax) (included in other operating expenses) in connection with the Physician Settlement Agreement, net of an estimated insu recoverable of $72 million pretax.

A Provider Case brought on behalf of the American Dental Association makes similar allegations on behalf of a purported class of dentists. Effective August 22, 2003 the Company and representatives of approximately 150,000 dentists entered into an agreement (the "Dentist Settlement Agreement") settling the dentist action. The Dentist Settlement Agreement was preliminarily approved by the Florida Federal Court on April 21, 2004. If finally approved by the Florida Federal Court, the Company anticipates that the Dentist Settlement Agreement would result in the conclusion of all pending Provider Cases filed on behalf of dentists that do not opt out of the settlement. The final approval hearing currently is scheduled for July 20, 2004. The cost of this settlement was not material to the Company.

Three Provider Cases filed in May and June, 2003 on behalf of purported classes of chiropractors and/or all non-physician health care providers also make factual and legal allegations similar to those contained in the other Provider Cases. These Provider Cases have been transferred to the Florida Federal Court for consolidated pretrial proceedings. The Company intends to defend each of these new Provider Cases vigorously.

*Securities Class Action Litigation*

Laborers Tri-County Pension Fund, Goldplate Investment Partners Ltd. and Sheila Shafran filed a consolidated and amended purported class action complaint (the "Securities Complaint") on June 7, 2002 in the United States District Court for the Southern District of New York (the "New York Federal Court"). The Securities Complaint supplanted several complaints, filed beginning November 6, 2001, which have been voluntarily dismissed or consolidated. Plaintiffs contend that the Company and two of its current or former officers and directors, William H. Donaldson and John W. Rowe, M.D., violated federal securities laws. Plaintiffs allege misrepresentations and omissions regarding, among other things, the Company's ability to manage and control medical costs and the appropriate reserve for medical costs as of December 31, 2000, for which they seek unspecified damages, among other remedies. On October 15, 2002, the New York Federal Court heard argument on defendants' motion to dismiss the Securities Complaint. Defendants intend to continue vigorously defending this action, which is in its preliminary stages.

The Company is unable to predict at this time the ultimate outcome of the Managed Care Class Action Litigation or Securities Class Action Litigation. It is reasonably possible that their outcome, including any negotiated resolution, could be material to the Company. However, as noted above, if the Florida Federal Court's approval of the Physician Settlement is ultimately affirmed, the Company anticipates that the Physician Settlement Agreement would result in the conclusion of substantially all pending Provider Cases filed on behalf of physicians.

*Other Litigation and Regulatory Proceedings*

The Company is involved in numerous other lawsuits arising, for the most part, in the ordinary course of its business operations, including employment litigation and claims of bad faith, medical malpractice, non-compliance with state regulatory regimes, marketing misconduct, failure to timely pay medical claims, investing activities, intellectual property and other litigation in its Health Care and Group Insurance businesses. Some of these other lawsuits are or are purported to be class actions.

In addition, the Company's current and past business practices are subject to review by various state insurance and health care regulatory authorities and other state and federal authorities. There continues to be heightened review by these authorities of the managed health care industry's business practices, including utilization management, delegated arrangements and claim payment practices. As a leading national managed care organization, the Company regularly is the subject of such reviews. These reviews may result in changes to or clarifications of the Company's business practices, and may result in fines, penalties or other sanctions.

While the ultimate outcome of this other litigation and these regulatory proceedings cannot be determined at this time, after consideration of the defenses available to the Company, applicable insurance coverage and any related reserves established, they are not expected to result in liability for amounts material to the financial condition of the Company, although they may adversely affect results of operations in future periods.

These two companies are in the business of marketing products and services relative to students and the student health insurance market. The first company "The Chickering Group" has had agreements with the second company "Aetna" for five years. Aetna recently purchased the Chickering group and is sole owner of this company. "Currently, only two (2) million of the nation's 14.5 million college students get their coverage from school-sponsored student health plans. We believe this represents an excellent growth opportunity for Aetna in the future." This quote is from John W. Rowe Chief Executive Officer and can be found at www.insurance-portal.com/121803.htm. Certainly they have a right to offer, solicit and sell their products to the student market. What they don't have a right to do, is to convince institutions such as the University of Massachusetts at Amherst Health Services to violate the rights of students and their choice of decisions by forcing the purchase and sale of products and services upon a student population. What the Defendants herein listed have done, is conspire to defraud

students with respect to mandating health insurance in the Commonwealth of Massachusetts through the University of Massachusetts Health Services at Amherst and other institutions when the law clearly set minimums and guidelines.

The conduct of these defendants has been, and continues to be morally repugnant against the citizens of the Commonwealth of Massachusetts, the class members, and are in violation of the RICO and ERISA acts. What plaintiff brings to the forefront in this lawsuit is only a tip of the iceberg, this court has a responsibility to act in a manner consistent with Federal and State laws and the citizens, the class members, deserve the opportunity to be heard, and the matter investigated. It is consistent with this thought that this court issue a Temporary Restraining Order against the Defendant University of Massachusetts at Amherst Health Servies and their employees.

This question plaintiff brings to light is a question only a United States District Court can have jurisdiction over considering the Defendants are within, and outside of the Commonwealth of Massachusetts.

The actions of the newly named defendants in conspiring to defraud the students and the citizens of the Commonwealth of Massachusetts demands an investigation by the United States District Attorney's Office.

Wherefore, in consideration of this newly discovered information, plaintiff prays this court will allow this motion to amend the named defendants of the complaint of September 6, 2004.

Respectfully submitted this 27th day of September, 2004 by facsimile transmission, per permission of the court, Judge Saylor presiding, at oral argument of September 23th, 2004.

*Scott Stern*
Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

Acknowledgement Certificate

On this 27th day of September 2004, before me, the undersigned Notary Public, personally appeared Scott L. Stern proved to me through satisfactory evidence of identification, which were drivers license issued by the Commonwealth of Massachusetts, to be the person whose name is signed on the preceding document and acknowledge to me that he signed it voluntarily for its stated purpose.

*Sarah E. Delanty*
Signature of Notary Public

My Commission Expires Oct. 2, 2009