UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT STERN, *pro se*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSITY OF MASSACHUSETTS, )<br>UNIVERSITY HEALTH SERVICES, )<br>DIRECTOR OF HEALTH SERVICES )<br>BERETTE MELBY, ASSOCIATE )<br>COUNSEL BRIAN BURKE, BOARD OF )<br>TRUSTEES, et als., )<br>)<br>Defendants. ) | CIVIL ACTION NO. 04-30176 |

**DEFENDANTS UNIVERSITY OF MASSACHUSETTS, UNIVERSITY HEALTH SERVICES, DIRECTOR OF HEALTH SERVICES BERNETTE MELBY, ASSOCIATE COUNSEL BRIAN BURKE, AND THE UNIVERSITY OF MASSACHUSETTS' BOARD OF TRUSTEES' MOTION TO DISMISS AND SUPPORTING MEMORANDUM,**

Based upon what follows, the above-listed defendants move to dismiss the complaint under Fed. R. Civ. P. 2(b)(1) and (6).

The Complaint

Mr. Stern is a former student at the University of Massachusetts. ¶ 27 (of the Complaint). In the Fall semester of 2003, Mr. Stern was enrolled in classes that amounted to 6 academic credits. ¶ 28. At that time Mr. Stern was informed by University personnel that he was required to pay a University Health Services fee, in the amount of $705, to cover his medical insurance. ¶ 6, 31. Mr. Stern was advised by University personnel that this fee was mandatory and that failure to pay would result in his withdrawal from the University. ¶ 31. Plaintiff has not paid the fee and he was withdrawn from the University. ¶ 6.

1

The University of Massachusetts is the "state university." G.L. c. 75, § 1. ¶ 9. It is statutorily authorized to be governed by its board of trustees. Id. Bernette Melby and Brian Burke are employed by the University of Massachusetts and are sued in their official capacity. ¶ 20, 21. Mr. Stern asserts that this case is properly before this court because it presents a federal question. ¶ 15.

The specific acts alleged against Ms. Melby are that she said she could reduce the number of Mr. Stern credits, that she did not provide legal documentation, that she said Mr. Stern should pay his bill, and that she did not take a specific "remedial action." ¶ 26, 32, 37. Mr. Mr. Stern alleges no specific acts taken by Mr. Burke. And he does not contend that he is a member of a protected class or what of his constitutional rights were infringed. He does assert however that the University is in violation of M.G.L. 15A, § 18, the public education qualifying student health insurance program. ¶ 1, 2.

## Argument

This action should be dismissed against the University of Massachusetts defendants because, according to the allegations made in the complaint, this court lacks jurisdiction and the complaint fails state a claim upon which relief may be granted.

Plaintiff's claims against the above-listed defendants are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Consequently, this court lacks subject matter jurisdiction over plaintiff's claims. In general, the Eleventh Amendment bars suits against the state, not only

when the state itself is named as a defendant, but also when its agencies are sued. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101 (1984) ([t]he Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest."); Northeast Federal Credit Union v. Neves, 837 F.2d 531, 534 (1st Cir. 1988). As the Supreme Court stated in Dugan v. Rank, 372 U.S. 609, 620 (1963). "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain or interfere with the public administration.'...or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" 372 U.S. at 620 (citations omitted). That the relief sought is merely an injunction and not damages is of no significance because, where a state agency is named as a defendant the Eleventh Amendment applies in its full force regardless of the nature of the relief sought." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); see Alabama v. Pugh, 438 U.S. 781 (1978), and all such claims against such defendants should be dismissed.

Both federal and state courts have concluded that UMass is an "arm of the state." Daniel, 988 F. Supp. at 180-81 (UMass Medical Center entitled to invoke Eleventh Amendment immunity in antitrust case); see Robinson v. Commonwealth, 32 Mass. App. Ct. 6, 9, 584 N.E.2d 636, 638 (1992) (UMass is an agency of the Commonwealth), rev. denied, 412 Mass. 1101, 588 N.E.2d 691 (1992). A claim against the university is a claim against the Commonwealth. Chapman v University of Massachusetts Medical Center. 423 Mass. 584, 670 N.E.2d 166 (1996): McNamara v. Honeyman, 406 Mass. 43, 46-48, 546 N.E.2d 139, 141-43 (1989) (the university is an agency of the Commonwealth of Massachusetts, not a separate entity); Cantwell v. University of Massachusetts, 551 F.2d 879, 880 (1st Cir. 1977) (UMass as a state entity dismissed from

action on ground of sovereign immunity); Hannigan v. New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc., 367 Mass. 658, 327 N.E.2d 882 (1975) (UMass trustees are the same as the Commonwealth). UMass is an arm of the state for Eleventh Amendment purposes.

Where a subordinate entity is sued in federal court and claims that it operates as an arm of the state for Eleventh Amendment purposes, courts take a number of factors into account in determining whether the entity may appropriately claim the benefit of the state's Eleventh Amendment immunity. In University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1205 (1st Cir. 1993), the First Circuit wrote, "[w]e have propounded an illustrative list of criteria – by no means exhaustive – often germane to the Eleventh Amendment 'arm' or 'alter ego' determination, including whether the entity (1) performs an 'essential' or 'traditional' governmental function, as opposed to a nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate 'public corporation'; (5) may sue and be sued in its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property; or (8) has been expressly debarred from incurring debts in the State's name or behalf.".

It appears that the essential focus is whether any underlying financial liability of the entity is that of the state, not whether appropriated funds are in fact used to satisfy such a liability. Regents of the University of California v. Doe, 519 U.S. 425 (1997); Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 51 (1994). Application of these factors demonstrates that UMass is an arm of the state for purposes of the Eleventh Amendment. Daniel v. American Board of Emergency Medicine, 988 F. Supp. 127, 181 (W.D.N.Y. 1997) (holding that UMass

was entitled to claim the immunity from suit accorded by the Eleventh Amendment).

UMass is a state university created by statute. Mass. G.L. c. 75, § 1. Its function is to provide a quality program of higher education throughout the Commonwealth, a quintessential governmental function. Mass. G.L. c. 75, § 2; see Chesterton, 2 F.3d at 1206. UMass is governed by a board of 19 voting trustees 17 of whom are appointed by the governor of the Commonwealth to serve five-year terms.[1] Mass. G.L. c. 75, § 1A. The trustees are responsible for establishing the policies necessary for the administrative management of personnel, staff services, and the general business of the university. Mass. G. L. c. 75, § 1A. They also have the duty to manage and administer, on the Commonwealth's behalf, the university and all real and personal property belonging to the Commonwealth and used or occupied by the university. Mass. G.L. c. 75, § 12. The trustees are permitted to delegate certain authority or responsibility to the president of the university, or other officers of the university, Mass. G.L. c. 75, §§ 1A, 3A, and were given the authority to establish schools or colleges of the university to meet the needs of the Commonwealth in the field of public higher education. Mass. G.L. c. 75, § 2.

Each campus has a council appointed by the trustees, which advises the campus president and the trustees. Mass. G.L. c. 75, § 14B; Daniel, 988 F. Supp. at 178. The trustees are empowered to adopt, amend, or repeal rules and regulations for the government of the university, but are required to comply with certain provisions of the state Administrative Procedure Act. Mass. G.L. c. 75, § 3. The Commonwealth is required to "indemnify a member of the board [of trustees] against loss by reason of the liability to pay damages to a party for any claim arising out

---

[1] The other two members of the board are students with one-year terms. Mass. G.L. c. 75, § 1A.

of any official judgment, decision, or conduct of said member; provided, however, that said member has acted in good faith and without malice; and provided, further, that the defense or settlement of such claim shall have been made by the attorney general or his designee." Mass. G.L. c. 75, § 1A. The trustees must submit recommendations for tuition rates to the Board of Higher Education for approval. Mass. G.L. c. 75, § IA.

All officers and employees of the university, professional and non-professional, are employees of the Commonwealth, irrespective of the source from which their salaries or wages are paid. Mass. G.L. c. 75, § 14. These employees retain the same retirement benefits, group insurance, industrial accident coverage, and other coverage as all other Commonwealth employees retain. Mass. G.L. c. 75, § 14. The trustees appoint the senior management positions. Mass. G.L. c. 75, § 14.

UMass was established pursuant to Mass. G.L. c 75, § 1 (St. 1863, c. 220, § 1). It is a state institution in that it is operated and administered by the Commonwealth through the trustees. Mass. G.L. c. 75, §§ 1, 1A; Daniel, 988 F. Supp. at 179. All university accounts, under the direction and control of the trustees, are audited annually by the state auditor. Mass G.L. c. 75, § 6; see Daniel supra. The trustees are required to prepare and submit a detailed budget tor the university, including the medical school, to the Governor. Mass. G.L. c. 75, § 7; see Daniel supra. Section 8 of chapter 75 provides that "the general court shall annually appropriate such sums as it deems necessary for the maintenance, operation and support of the university; and such appropriations shall be made available by the appropriate state officials for expenditure through allotment, transfer within and among subsidiary accounts, advances from the state treasury in accordance with the provisions of sections [24, 25, and 26] of chapter [29], or for

disbursement on certification to the state comptroller in accordance with the provisions of section [18] of said chapter [29], as may from time to time be directed by the trustees or an officer of the university designated by the trustees."

Further, monthly statements of the receipts and expenditures must be made to the state comptroller and a complete financial report covering all receipts and expenditures is given annually to the Governor and the legislature. Mass. G.L. c. 75, § 10. See Chesterton, 2 F.3d at 1211 (submission of annual report with detailed statements of receipts and expenditures indicates an arm of the state) citing University of Tennessee v. United States Fidelity and Guaranty Co., 670 F. Supp. 1379 (E.D. Tenn. 1987). Umass cannot issue bonds to raise revenue as it cannot sue or be sued in its own name, and it is financially accountable to the Commonwealth. See Daniel, 988 F. Supp. at 180; McNamara v Honeyman, 406 Mass. 43, 46-48, 546 N.E.2d 139, 141-43 (1989) (university is an agency of the Commonwealth and not a separate entity). Under the guidance of the analysis proposed by Chesterton, it still appears that the University of Massachusetts and the Commonwealth of Massachusetts are one and the same and that the University should share the Commonwealth's Eleventh Amendment immunity. The claims against the University of Massachusetts should dismissed under 12(b)(1).

Indeed, the claims against Ms. Melby and Mr. Burke should also be dismissed. "[N]either a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). Eleventh Amendment immunity extends to state employees to the extent that the employees were

sued in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 (1985).[2]

But even if the court were to look past the Eleventh Amendment, there is no apparent federal question before the court. He claims the University violated his constitutional rights by having prohibited him from enrollment by his failure to pay past due bills. Though Mr. Stern's interest to continue his education is important, it is not entitled to constitutional protection. Rodriguez v. San Antonio School District, 411 U.S. 1, 30-35 (1973) (public education is of 'grave significance' but not a fundamental right). There is no federal question before this court. And the acts alleged to have been taken by Ms. Melby could hardly rise to the level of a federal question or a deprivation of any constitutional right. And as for Mr. Burke, Mr. Stern lists no specific acts. The complaint should be dismissed against all University defendants.

Mr. Stern's complaint should also be dismissed for failure to state a claim upon which relief can be granted. His claim rests on the assertion that a state statute prohibits the University from its requirement students who carry a 5 credit course load or more have medical insurance.

The Massachusetts requirement for student participation in a health insurance plan is set forth in Section 18 of chapter 15A of the Massachusetts General Laws.[3] Section 18 requires institutions of higher education to ensure that every full time and part time student is enrolled in a qualifying student health insurance program. The statute also allows institutions of higher education to permit students to waive out of the program on evidence of participation in a comparable private health insurance plan. The statute does not require the waiver, nor does it

---

[2] Plaintiff should not succeed to assert Ex Parte Young as a way around the Eleventh Amendment bar to federal jurisdiction when he has alleged no violation of any specific violation of federal law. See Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997).

[3] G.L. 15A, § 18; 117 CMR 3.03.

prohibit institutions from requiring students maintaining less than a 75% credit load to participate in the program. Section 18 indicates that the requirements set forth on institutions are minimum requirements rather than constraints on institutions which may wish to enact requirements more protective of students.

WHEREFORE, for the foregoing reasons, the defendants request that the complaint be dismissed with prejudice against the University of Massachusetts defendants.

                                     Respectfully submitted,

                                     UNIVERSITY OF MASSACHUSETTS,
                                     UNIVERSITY HEALTH SERVICES,
                                     DIRECTOR OF HEALTH SERVICES
                                     BERNETTE MELBY, ASSOCIATE
                                     COUNSEL BRIAN BURKE, AND THE
                                     UNIVERSITY OF MASSACHUSETTS'
                                     BOARD OF TRUSTEES'

By:     /s/ Geoffrey B. McCullough
          Geoffrey B. McCullough
          Associate Counsel, BBO#558207
          University of Massachusetts
          One Beacon Street, 26th Floor
          Boston, Massachusetts 02108
          (617) 287-7030

CERTIFICATE OF SERVICE

I CERTIFY that, on October 13, 2004, a true and correct copy of the foregoing document was mailed to the plaintiff, Scott Stern, 400 West Main Street, North Adams, MA 01247 and Salvatore M. Giorlandio, Esq. The Commonwealth of Massachusetts, Office of the Attorney General, Central Massachusetts Division, One Exchange Place, Worcester, MA 01608.

Geoffrey B. McCullough