UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Scott Stern,                                  ) Case No.: 04-30176-MAP
400 West Main Street                          )
North Adams, MA. 01247,                       )
and other persons similarly situated          ) MOTION TO AMEND COMPLAINT OF
in the Commonwealth of Massachusetts;         ) SEPTEMBER 6th, 2004
and other persons similarly situated          )
in the United States of America; and          )
other persons similarly situated not          )
currently residing within the                 )
Commonwealth of Massachusetts or the          )
United States of America,                      )
                                              )
            Plaintiff,                         )
      vs.

University of Massachusetts at
Amherst
University Health Services
Director of Health Services,
Bernette Melby
150 Infirmary Way
Amherst, Massachusetts. 01003,
Defendant

and,

University of Massachusetts at
Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts 01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts 02108
Defendant

and,

1

Massachusetts Board of
Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696
Defendant

and,

Division of Health Care
Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

---

PLAINTIFF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS OPPOSITION TO DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY DECLARATORY MANDATORY INJUCTION AGAINST THE DEFENDANTS.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the
complaint of September 6, 2004 in the following manner. Plaintiff
hereby incorporates the allegations contained in the first, original
complaint, enumerated one (1) through fifty-five (55) dated September
6, 2004, the Motion to Amend the Complaint of September 6, 2004
dated September 27, 2004, enumerated one (1) through fifteen (15) as
though fully set forth herein.

### Preliminary Statement

Plaintiff alleges that the University of Massachusetts Health
Services, Bernette Melby, Director and Associate Counsel, Brian Burke,
the Massachusetts Board of Trustees et al. have discriminated against
plaintiff, based on 42 U.S.C. 1980, 1981, 1982, 1983, 1985, 1986, 1988.
Plaintiff hereby, attests and declares, that his rights have also been
violated under Section 504 of the Rehabilitation Act of 1973, 42 U.S.C.
794 (a) ("Section 504") Defendant has submitted opposition requesting

2

denial of plaintiff's motion for a Temporary Restraining Order against the defendants.

Defendants have moved for dismissal arguing that the University (Commonwealth of Massachusetts) did not give its consent to be sued in this action and that this court lacks jurisdiction over plaintiff's claims against the University.

1) Defendants motion must fail. The Eleventh Amendment does not bar Plaintiff's claims under Section 504 because defendant has waived its Sovereign immunity by accepting federal funds. As demonstrated below, Pursuant to the Spending Clause,

2) Congress validly conditioned receipt of federal financial assistance on waiver of States immunity to private suits brought to enforce Section 504. 42 U.S.C. 2000d-7. By enacting Section 2000d-7, Congress put state agencies on clear notice that acceptance of federal financial assistance was conditioned on a waiver of their Eleventh Amendment immunity to discrimination suits under Section 504. In accepting federal funds, defendant agreed to these terms. As the Eleventh Circuit recognized in Sandoval v. Hagan, 197 F. 3d 484(11th Cir. 1999) rev'd on other grounds, Alexander v Sandoval, 532 U.S. 275, Section 2000d-7 is a valid exercise of the Spending Clause, and by accepting federal funds, a State waives its sovereign immunity.

II. ARGUMENT

CONGRESS VALIDLY CONDITIONED FEDERAL FUNDING ON A WAIVER OF ELEVENTH AMENDMENT IMMUNITY FOR PRIVATE CLAIMS UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794(a),

3

prohibits discrimination against persons with disabilities under "any program or activity receiving Federal financial assistance."

3) Section 2000d-7 of Title 42 provides that a "State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [and] title VI of the Civil Rights Act of 1964.

Section 2000d-7 may be upheld as a valid exercise of Congress's power under the Spending Clause, Art. I, §8, Cl. 1, to prescribe conditions for state agencies that voluntarily accept federal financial assistance.  States are free to waive their Eleventh Amendment immunity. See College Sav. Bank v. Florida Prepaid Postsec. Educ. Expense Bd., 527 U.S. 666, 674 (1999). And "Congress may, in the exercise of its spending power, condition its grant of funds to the states upon their taking certain actions that Congress could not require them to take, and ***acceptance of the funds entails an agreement to the actions." Id. at 686.  Thus, Congress, may, and has, conditioned the receipt of federal funds on defendant's waiver of Eleventh Amendment immunity to Section 504 claims.

In Rosie D., by her parents, v. Jane Swift, Acting Governor 01-1604, 1st Circuit (2001) the court, Judge Michael Ponsor, held that:

"On appeal to the 1st circuit, the court held that the 11th Amendment does not preclude the maintenance of this action. Specifically, the First Circuit stated that "while recent Supreme Court decisions have made some inroads on the venerable doctrine of Ex Parte Young, it has not eviscerated that doctrine, and only very narrow exceptions infringe on the well established right to ask for prospective injunctive relief against state officials in a federal forum."

4

Judge Ponsor also stated:

"We note, too, that our holding today aligns us with a broad coalition of other courts, which, subsequent to Seminole Tribe, have rejected similar arguments aimed at barring suits for prospective injunctive relief commenced by Medicaid beneficiaries against state actors" See e.g. Frazier v. Gilbert, 300 F. 2d. 530, 550-1 & n.109 (5th Circuit 2002)

This holding is consistent with the Court's holding in Ex parte Young which Judge Ponsor stated as such:

"We need go no further. To recapitulate, we conclude that in determining whether a statute's remedial provisions preclude prospective injunctive relief under the doctrine of Ex parte Young, the proper test involves an inquiry into Congress' intent. Here, that inquiry centers on whether the remedial scheme is sufficiently comprehensive to indicate that Congress intended to foreclose such relief"

Judge Ponsor further concluded that:

"We conclude therefore, that the buckler of Eleventh Amendment immunity does not protect state officials from federal court suits for prospective injunctive relief [under the Medicaid act]"

## Section 2000d-7 IS A CLEAR STATEMENT THAT ACCEPTING FEDERAL FINANCIAL ASSISTANCE WOULD CONSTITUTE A WAIVER TO PRIVATE SUITS BROUGHT UNDER SECTION 504

It is settled in the Eleventh Circuit that Section 2000d-7 is a clear statement that in accepting federal funds, the State of Alabama is subject to suits in Federal Courts brought under Section 504. Sandoval, 197 F.3d 484, at 493-94

5

4) The Eleventh Circuit explained in Sandoval that "[t]he provision's plain language manifests an unmistakeable intent to condition federal funds on a state's waiver of sovereign immunity." Sandoval, 197 F.3d at 493. A history of Section 2000d-7 lends context to the Court's decision.

In Garrett v. Board of Trustees of the University of Alabama in Birmingham, 97-AR-0092-S, the court disagreed with the 2nd Circuit's interpretation in Garcia v. Suny Health Sciences Center, 280 F.3d 98, 113(2d Cir.2001) The court held in Garrett:

"It is wrong because it ignores what every state agency did know from the plain text of Section 2000d-7 since it was enacted in 1986, that acceptance of federal funds constituted a waiver of immunity to suit for violations of Section 504. Section 504 was not amended or altered by the enactment of Title I of the ADA in 1990, and it was clear that plaintiff could sue under either statute" See 42 U.S.C. 12201(b) of the Americans with Disabilities Act (preserving existing causes of action)"

The court further stated:

"It is thus untenable to suggest that abrogation for suits under one statute is relevant to whether an entity waived its immunity to suits brought to enforce a distinct, albeit substantively similar, statute"

## CONGRESS HAS AUTHORITY TO CONDITION THE RECEIPT OF FEDERAL ASSISTANCE ON THE STATE WAIVING ITS ELEVENTH AMENDMENT IMMUNITY

Congress may condition its spending on a waiver of Eleventh Amendment immunity. Indeed in Alden v. Maine, 527 U.S.706, 755 (1999), the Court cited South Dakota v. Dole, 483 U.S. 203 (1987), a case involving Congress's Spending Clause authority, when it noted that "the

Federal Government [does not] lack the authority or means to seek the States' voluntary consent to private suits" Similarly, in Florida Prepaid the Court reaffirmed the holding of Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275 (1959), where the Court held that Congress could condition the exercise of one of its Article I powers (there, the approval of interstate compacts) on the States' agreement to waive Eleventh Amendment immunity from suit.  Florida Prepaid, 527 U.S. at 686.  At the same time, the Court suggested that Congress had the authority under the Spending Clause to condition the receipt of federal funds on the waiver of immunity.

Defendant asserts the suit against the university is considered "one in the same" as if it were brought against the Commonwealth of Massachusetts, citing Hannigan v. New Gamma-Delta-Chapter of Kappa Sigma Fraternity, Inc. 367 Mass. 658 (1975). Thus claiming that the action plaintiff seeks is also against the Commonwealth of Massachusetts.

The Commonwealth of Massachusetts receives various forms of monetary assistance from the federal government.  The University of Massachusetts receives monetary assistance from the federal government. In so doing, each, individually or collectively, have received federal funds, and have waived their right to claim Eleventh Amendment immunity and sovereign immunity.  Defendants Opposition to the Temporary Order must fail and this suit must proceed accordingly.

UMass announces new $1 million fund to develop strategic technology alliances 02/04/2004

NEW BEDFORD — University of Massachusetts Interim President Jack M. Wilson today announced the creation of a $1 million Science and Technology Initiatives Fund designed to assist the University's five campuses in developing strategic alliances to pursue major new external funding opportunities.

''This new investment will strengthen the University's position as it competes to bring federal and other external research funds to every region of the Commonwealth,'' Dr. Wilson said today at the University of Massachusetts Board of Trustees meeting at the UMass Dartmouth College of Visual and Performing Arts in New Bedford. ''There are important new initiatives in life sciences,

nanotechnology and homeland security and we must be bold in our pursuit of these opportunities for the good of the University and the Commonwealth.''

The new initiative, supported from the President's Office share of the University's Commercial Ventures and Intellectual Property (CVIP) initiative, will encourage and support entrepreneurial and collaborative activity at the campus level.

It will provide seed funding to campuses or groups of campuses that will help position them to develop and compete for major new S&T initiatives in areas such as research and development, commercialization and business development, and workforce development. These might range from major new federal competitions to proposals to be funded under the new state S&T legislation, as well as creative new strategic alliances with Massachusetts industry or public agencies.

At the state level, the Commonwealth has signed the state's first-ever comprehensive science and technology program with provisions for matching federal research and development grants; regional technology development grants, workforce funding, and a new state-wide tech transfer center at UMass.

UMass campuses, meanwhile, are forging strategic alliances with industry and other research institutions to win major science and technology projects:

-UMass Amherst has joined with Raytheon, IBM and three other universities to establish a $40 million National Science Foundation engineering research center;

-Dartmouth and Tufts are collaborating on a $17 million National Institutes of Health grant to study the botulinum virus;

-UMass Medical in Worcester and the Dana Farber Cancer Institute are collaborating on a NIH-funded bioterrorism project;

-UMass Boston and the community colleges are implementing a new NSF-funded information technology education program in Boston public schools, and

-UMass Lowell, Northeastern University and the University of New Hampshire have combined resources to pursue a major NSF nanotech grant.

The announcement of this new fund comes two weeks after the University announced the creation of a high technology business leader panel that will advise Dr. Wilson on issues related to the science and technology.

In Grove City College v. Bell, 465 U.S. 555(1984) the court held that:

8

"Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept." Id. at 575

In Garret the Court noted that:

"These cases stand for the proposition that Congress has a legitimate interest in preventing the use of any of its funds to "encourage[], entrench[], subsidize[], or result[]in," Lau, 414 U.S. at 569 (internal quotation marks omitted), discrimination against persons otherwise qualified on the basis of criteria Congress has determined are irrelevant to the receipt of public services, such as race, gender, and disability." In United States v. Louisiana, 692 F. Supp. 642, 652 (E.D. La 1988)(three-judge court) ("[T]he condition imposed by Congress on defendants [in Title VI], that they may not discriminate on the basis of race in any part of the State's system of public higher education, is directly related to one of the main purposes for which public education funds are expended; equal education opportunities to all citizens" Because this interest extends to all federal funds, Congress drafted Title VI, Title IX, and Section 504 to apply across the board to all federal financial assistance. The purposes articulated by Congress in enacting Title VI, purposes equally attributable to Title IX and Section 504, were to avoid the need to attach nondiscrimination provisions each time a federal assistance program was before Congress, and to avoid "piecemeal" application of the nondiscrimination requirement if Congress failed to place the provision in each grant statute. See 110 Congressional Record 6544 (1964)(Senator Humphrey); id. at 7061-7062(Senator Pastore); id. at 2468(Representative Celler; id. at 2465 (Representative Powell)

9

ELEVENTH AMENDMENT IS NOT A CONSTITUTIONAL BAR

Defendant's Counsel argues that the state, in Alabama v. Pugh, 438 U.S. 781 (1987)(per curiam) must consent.  Defendant's Counsel overlooks the fact that under Dole, 438 U.S. at 210 the court held:

"Section 504 does not "induce States to engage in activities that would be themselves unconstitutional" Thus the claim that "a state cannot be sued directly in its own name regardless of the relief sought" is well within the scope of jurisdiction of the federal courts, this first circuit court, since it has waived its sovereign and Eleventh Amendment immunity by accepting federal assistance.

The Court further held in Massachusetts v. Mellon, 262 U.S. 447, 480 (1923):

"Neither providing meaningful access to people with disabilities nor waiving sovereign immunity violates anyone's constitutional rights. Defendant incurs these obligations only because it applies for and receives federal funds.  "[T]he powers of the State are not invaded, since the statute imposes no obligation [to accept the funds] but simply extends an option which the State is free to accept or reject."

The same principle applies to state sovereign immunity, which is similarly "under the States' control" and similarly within Congress's ability to influence "indirectly through its spending power."  Even if defendant's counsel suggested that the state sovereign immunity is an "independent constitutional bar" this could only be accepted if it were the case that the Constitution barred a State from waiving its sovereign immunity—a proposition that defendant does not expressly adopt and that has no support in the Supreme Court's Eleventh Amendment Jurisprudence.

CONCLUSION


10

For the foregoing reasons, the Eleventh Amendment does not bar this lawsuit against defendants Board of Trustees of the University of Massachusetts at Amherst.

Plaintiff seeks a Temporary Restraining Order in order to continue his education through a federally funded program, the Massachusetts Rehabilitation Commission. Granting such an order would not harm the State by any means. The TRO would not be issued with prejudice or without prejudice for plaintiff and the pending litigation. It would simply allow plaintiff to enroll at the University of Massachusetts and continue his education. A granting of the TRO would ensure plaintiff's federal and state constitutional right to an education.

Respectfully submitted, by facsimile transmission, on this 29th day of September, 2004.

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SCOTT STERN                              CASE No.:04-30176-MAP

400 West Main Street                     )

North Adams, Massachusetts               )  AFFIDAVIT OF SCOTT STERN

01247                                    )

       Plaintiff,                        )

   vs.                                   )

University of Massachusetts at           )

Amherst,                                 )

University Health Services,              )

Director of Health Services,

Bernette Melby

150 Infirmary Way

Amherst, Massachusetts 01003,

Defendant et al

The undersigned states the following under oath:

1. I am a Scott Stern, and reside at 400 West Main Street, North Adams, Massachusetts 01247

2. I, Scott Stern, am an active client of the Massachusetts Rehabilitation Commission(MRC).

3. I, Scott Stern, originally attended the University of Massachusetts at Amherst between the years 1980 and 1985.

4. I, Scott Stern, attended the University of Massachusetts in the fall, 2003 academic year for six (6) credits.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SCOTT STERN                              CASE No.:04-30176-MAP

400 West Main Street                     )
                                         )
North Adams, Massachusetts               )   AFFIDAVIT OF SCOTT STERN
                                         )
01247                                    )
                                         )
          Plaintiff,                     )
                                         )
     vs.                                 )
                                         )
University of Massachusetts at           )
                                         )
Amherst,                                 )
                                         )
University Health Services,

Director of Health Services,

Bernette Melby

150 Infirmary Way

Amherst, Massachusetts 01003,

Defendant et al

_____

          The undersigned states the following under oath:

1.  I am Scott Stern, and I reside at 400 West Main Street, North Adams,
    Massachusetts 01247.

2.  I, Scott Stern, am an active client of the Massachusetts Rehabilitation
    Commission.

3.  I originally attended the University of Massachusetts at Amherst
    between the years 1980 and 1985.

4.  I attended the University of Massachusetts in the fall, 2003 academic
    year.

5. I, Scott Stern, to be enrolled at the University of Massachusetts at Amherst was required to submit an application with the University of Massachusetts Amherst Committee on Admissions and Records (CAR) prior to readmission.

6. I, Scott Stern, submitted application with the University of Massachusetts Committee on Admissions and Records on or before the deadline date of June 30, 2003 for the fall 2003 semester.

7. I, Scott Stern, telephoned the University of Massachusetts Registrar's Office, on September 28, 2004 and spoke with an individual, who I shall remain unnamed for their protection of employment and privacy, in regard to my enrollment status, for the fall 2003 semester.

8. I, Scott Stern, was informed by this individual that the person to speak with, regarding my technical admittance date, with the University, in the fall of 2003, is located in the records department. This person, in the Registrar's office, transferred the call into that department because the number for this person is not authorized to be released to the general public. I, Scott Stern, shall not name either of these individuals for their personal protection, privacy and continued employment status at the University of Massachusetts at Amherst.

9. I, Scott Stern, having learned and become knowledgeable, by this individual in the records department, that the term associated with my re-admittance was called a "CAR" date.

10. I, Scott Stern, having learned and become knowledgeable, that the date of my admittance to the University of Massachusetts at Amherst was on September 8, 2003 and my enrollment status was changed to "active" full-time. The effective date was September 2, 2003.

11. I, Scott Stern, being an active client of the Massachusetts Rehabilitation Commission, received the costs and fees associated with enrollment at the University of Massachusetts at Amherst through the bursar's office, prior to my official enrollment.

12. I, Scott Stern, being an active client of the Massachusetts Rehabilitation Commission(MRC), having learned and become knowledgeable that the MRC had a limit for funding for this client.

13. I, Scott Stern, was informed, by my caseworker, on or around the first week of September 2003, that the limit to the funding was $2600 per academic year.

14. I, Scott Stern, having learned and become knowledgeable, that the University of Massachusetts at Amherst costs including tuition and fees, associated with enrollment, at the University, exceeded the funding scholarship provided by the MRC.

15. I, Scott Stern, having learned and become knowledgeable, that in order to generate the appropriate bill from the Bursar's office for the MRC to work with, I had to change my enrollment status at the Registrar's Office and subsequently changed my status from "full-time" to "part-time".

16. I, Scott Stern, having learned and become knowledgeable of the procedures at the Registrar's Office, entered and completed the necessary information on a "Approved Academic load change" form with the Registrar's Office.

17. I, Scott Stern, changed my enrollment status of "full-time" to "part-time" at the University of Massachusetts at Amherst's Registrar's Office on October 14, 2003.

I have stated all of the above based upon my own knowledge, information and belief; and so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this day of September 28, 2004.

_Scott Stern_

Scott Stern

400 West Main Street

North Adams, Massachusetts 01060

## ACKKNOWLEDGEMENT CERTIFICATE

On this __28__ day of __September__, 2004, before me, the undersigned Notary Public, personally appeared __Scott Stern__ proved to me through satisfactory evidence of identification, which were __Personal Knowledge__, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its state purpose.

_Dean R. Manuel_
Signature of Notary Public

My Commission Expires __9/1/06.__



DEAN R. MANUEL
Notary Public
Commonwealth of Massachusetts
My Commission Expires Sep 1, 2006

5. I enrolled in two courses, with a total amount of credits of six (6) during the fall of 2003.

6. During oral argument on September 23, 2004 before Honorable Judge Dennis Saylor, this plaintiff was informed, for the first time, that he had been enrolled in a health care plan, without his consent and permission, through the University of Massachusetts at Amherst.

7. During oral argument on September 23, 2004 before Honorable Judge Dennis Saylor, this plaintiff discovered that the University of Massachusetts at Amherst Health Services paid a premium to the company that administers this health plan and the University of Massachusetts was seeking reimbursement from this plaintiff in the amount of $705.00.

8. On September 28, 2004 I, Scott Stern, telephoned the University of Massachusetts at Amherst Health Services to become knowledgeable of the number to contact the company that administers the health plan. The person that answered the phone, a receptionist, provided this plaintiff with the proper telephone number to contact this company. That number is 1-877-480-4167 and the policy number is 100106 and the name of the company is The Chickering Group.

9. I, Scott Stern, placed a telephone call, at approximately 11:36 a.m., on September 28, 2004, to The Chickering Group.

10. I, Scott Stern, spoke with an individual named "Peggy" who answered questions I had with regard to this policy #100106 at the University of Massachusetts at Amherst.

11. I, Scott Stern, asked this person named Peggy, "If there was a policy for this plaintiff during the fall of 2003.?"

12. I, Scott Stern, received the response to the question in number 11 as "yes" from this individual named Peggy at the Chickering Group.

13. I, Scott Stern, asked this person named Peggy, "When did my enrollment begin?"

14. I, Scott Stern, received the response to the question in number 13 as "from August 1, 2003 through Janurary 31, 2003"?"

15. I, Scott Stern, was asked, during this conversation, by this individual named Peggy, "Were you in School for the full year?"

16. I, Scott Stern, answered this person named Peggy's question in number 15 as "no, just fall semester".

17. I, Scott Stern, was asked by this person named Peggy, during this conversation, "Whether this person, Scott Stern, was enrolled for five or more credits at the University of Massachusetts at Amherst?".

18. I, Scott Stern, answered this person named Peggy's question that this person, Scott Stern, stated "I was enrolled in five or more credits at the University of Massachusetts at Amherst and that the law states that I was considered part-time and should not have been billed for this health plan"

19. At this time, during this conversation, this person named Peggy, responded to statement of this plaintiff in number 18 as such by stating "Yes, that's the law but we go by what Umass sends us."

20. I, Scott Stern, asked, this person named Peggy, "What the premium amount was for the insurance during the fall 2003?"

21. At this time, during this conversation, this person named Peggy, responded to question of this plaintiff in number 20 as such by stating: "The premium amount for the fall 2003 semester was $523 dollars"

I have stated all of the above based upon my own knowledge, information and belief; and so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this day of September 28, 2004.

_Scott Stern_

Scott Stern

400 West Main Street

North Adams, Massachusetts 01060

## ACKKNOWLEDGEMENT CERTIFICATE

On this ___7ƒ___ day of ___September___, 2004, before me, the undersigned Notary Public, personally appeared ___Scott Stein___ proved to me through satisfactory evidence of idontification, which were ___personel knowledge___, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its state purpose.

_Dean R. Manuel_

Signature of Notary Public

My Commission Expires ___9/1/06___



DEAN R. MANUEL
Notary Public
Commonwealth of Massachusetts
My Commission Expires Sep 1, 2006

1