(CVIP) initiative, will encourage and support entrepreneurial and collaborative activity at the campus level.

It will provide seed funding to campuses or groups of campuses that will help position them to develop and compete for major new S&T initiatives in areas such as research and development, commercialization and business development, and workforce development. These might range from major new federal competitions to proposals to be funded under the new state S&T legislation, as well as creative new strategic alliances with Massachusetts industry or public agencies.

At the state level, the Commonwealth has signed the state's first-ever comprehensive science and technology program with provisions for matching federal research and development grants; regional technology development grants, workforce funding, and a new state-wide tech transfer center at UMass.

UMass campuses, meanwhile, are forging strategic alliances with industry and other research institutions to win major science and technology projects:

-UMass Amherst has joined with Raytheon, IBM and three other universities to establish a $40 million National Science Foundation engineering research center;

-Dartmouth and Tufts are collaborating on a $17 million National Institutes of Health grant to study the botulinum virus;

-UMass Medical in Worcester and the Dana Farber Cancer Institute are collaborating on a NIH-funded bioterrorism project;

-UMass Boston and the community colleges are implementing a new NSF-funded information technology education program in Boston public schools, and

-UMass Lowell, Northeastern University and the University of New Hampshire have combined resources to pursue a major NSF nanotech grant.

The announcement of this new fund comes two weeks after the University announced the creation of a high technology business leader panel that will advise Dr. Wilson on issues related to the science and technology.

In Grove City College v. Bell, 465 U.S. 555(1984) the court held that:

"Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept." Id. at 575

Defendant's Counsel argues that the state, in Alabama v. Pugh, 438 U.S. 781 (1987)(per curiam) must consent.  Defendant's Counsel overlooks the fact that under Dole, 438 U.S. at 210 the court held:

"Section 504 does not "induce States to engage in activities that would be themselves unconstitutional" Thus the claim that "a state cannot be sued directly in its own name regardless of the relief sought" is well within the scope of jurisdiction of the federal courts, this first circuit court, since it has waived its sovereign and Eleventh Amendment immunity by accepting federal assistance.

The Court further held in Massachusetts v. Mellon, 262 U.S. 447, 480 (1923):

"Neither providing meaningful access to people with disabilities nor waiving sovereign immunity violates anyone's constitutional rights. Defendant incurs these obligations only because it applies for and receives federal funds.  "[T]he powers of the State are not invaded, since the statute imposes no obligation [to accept the funds] but simply extends an option which the State is free to accept or reject."

The same principle applies to state sovereign immunity, which is similarly "under the States' control" and similarly within Congress's ability to influence "indirectly through its spending power."  Even if defendant's counsel suggested that the state sovereign immunity is an "independent constitutional bar" this could only be accepted if it were the case that the Constitution barred a State from waiving its sovereign immunity-a proposition that defendant does not expressly adopt and that has no support in the Supreme Court's Eleventh Amendment Jurisprudence.

CONCLUSION

For the foregoing reasons, the Eleventh Amendment does not bar this lawsuit against defendants Board of Trustees of the University of Massachusetts at Amherst.

Plaintiff seeks a Temporary Restraining Order in order to continue his education through a federally funded program, the Massachusetts Rehabilitation Commission. Granting such an order would not harm the State by any means. The TRO would not be issued with prejudice or without prejudice for plaintiff and the pending litigation. It would simply allow plaintiff to enroll at the University of Massachusetts and continue his education. A granting of the TRO would ensure plaintiff's federal and state constitutional right to an education.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the complaint of September 6, 2004 pursuant to Federal Rules of Civil Procedure 15 (a) Amendment and Supplemental Pleadings:

Plaintiff hereby incorporates, by reference, the allegations of one (1) through fifty-five (55) of the aforementioned complaint as though fully set forth herein.

### COMPLAINT

Plaintiff was subjected to unequal access, unequal communication, unequal treatment by the Director of Health Services, Bernette Melby, Defendant Brian Burke, and Defendant Mr. Getachew of the Division of Health Care Finance and Policy, and was denied the rights, privileges and information accorded other non-disabled individuals. Defendant Melby denied Plaintiff due process to a hearing regarding academic withdrawal status enjoyed by other non-disabled students. Defendant

Melby, through wanton, reckless, negligence and/or gross negligence:

1) had information and access through student records of the University that plaintiff is a disabled student,

2) had personal knowledge, by a meeting during the fall 2003 semester with the plaintiff, that the plaintiff is a disabled student.

3) Defendant Bernette Melby may have received additional information from the former Bursar, Dan MaGuffin regarding plaintiff's disability

4) Defendant Bernette Melby sought to gain an advantage over the plaintiff, a disabled student, by demanding, coercing, and threatening plaintiff to participate in a health program plaintiff objected to in violation of Massachusetts Statute, Code and Guidelines during a meeting between the plaintiff and defendant during the fall semester of 2003.

5) Defendant Bernette Melby, through defendant's counsel, said program was paid for by the University of Massachusetts and, information relative to this program had been paid by the University, was billable to Plaintiff, against Plaintiff's rights and privileges accorded other non-disabled students at the University of Massachusetts at Amherst.

6) Defendants did deny plaintiff rights and privileges accorded other non-disabled students with regard to communications, intent, and status of plaintiff in regard to said student health insurance plan and violated plaintiff's personal freedom to choose to enroll or not enroll in said program, a civil right.

7) Defendants did deny plaintiff his ability to freely choose whom he becomes indebted to, by denying plaintiff his right of choice and obligation, a right accorded non-disabled students, a right granted non-disabled students with the free exercise of choice, obligation and indebtedness.

8) Defendants did deny plaintiff the rights enjoyed by other non-disabled students by coercing and forcing plaintiff to purchase and participate in a student health insurance program without his consent and permission, and denying Plaintiff access to said health facilities by not informing plaintiff that said student health insurance plan was paid for by the university.

9) Defendants did deny plaintiff information regarding the U university of Massachusetts Board of Trustees document(s), the Code of Massachusetts Regulations, and the Guidelines established by the Division of Health Care Finance and Policy during a meeting at the University of Health Services in the fall semester 2003.

10) Defendant Bernette Melby, did inform Plaintiff's caseworker, of the Massachusetts Rehabilitation Commission, on or around

September 15th, 2004, that said plan was not paid, and said plan needed to be paid prior to Plaintiff being enrolled at the University on September 21st, 2004

11) Defendant Bernette Melby did inform Plaintiff's caseworker that said plan must be paid by September 21st, 2004 and would not be admitted to the University, thus acting in a coercive and intimidating manner, under color of law, by stipulating that said health plan, in the amount of $705, was a requirement.

12) Defendant Bernadette Melby denied Plaintiff, and Plaintiff's caseworker, on or around September 15th, 2004, the information relative to Plaintiff's ability to be readmitted to the University after the September 21st, 2004 add/drop period thus denying Plaintiff equal access to the University, equal access to the procedures of re-admittance afforded other non-disabled students, by means a process to become enrolled after this add/drop period, in a manner consistent with intimidation, coercion and extortion, to exact a student health insurance plan against the plaintiff, and to manipulate plaintiff's caseworker by stating that this was the last and final date to be admitted to the University of Massachusetts at Amherst and that "other students don't file injunctions" in regard to the mandated health insurance plan.

13) Defendant Brian Burke denied plaintiff knowledge that said health plan was paid, on or around September 7th, 2004, in email notification with the Plaintiff, and thus denied plaintiff equal access to information, rights, and privileges afforded other non-disabled students at the University of Massachusetts.

14) Defendant Bernette Melby, through defendants counsel, submitted information to the United States District Court, that said student health insurance plan was paid for by the University, and thus denied plaintiff the use of said facilities, the ability to seek medical treatment, the ability to seek professional treatment of resources and facilities offered to other non-disabled students.

15) Defendant Mr Getachew, of the Division of Health Care Finance and Policy did deny plaintiff equal access to information and due process of law to information regarding guidelines established by the Division of Health Care Finance and Policy and did thereby treat plaintiff with unequal terms accorded other non-disabled students.

WHEREFORE plaintiff prays that this court will allow this motion to amend the original complaint of September 6th, 2004 for the facts and reasons herein stipulated by the plaintiff.

Respectfully submitted, by facsimile transmission, by permission of the court, at oral argument of September 23, 2004, on this 27th day of September, 2004.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the complaint of September 6, 2004 in the following manner. The term "fee" used in the class action Complaint, to be struck and replaced with the word "plan" in the following numerical sections: four (4), six (6), twenty-five(25), thirty-one(31), thirty-three (33), fifty-five (55). Plaintiff prays the court will allow word "fee" to be replaced by the word "plan" in the aforementioned sections.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the complaint of September 6th, 2004 in the following manner. The word "program" is to be struck and replaced with the word "plan" in the following numerical sections: thirty-two (32), thirty-four (34), thirty-five (35), thirty-six (36), forty-two (42), forty-three (43), forty-five(45). Plaintiff prays the court will allow the word "program" to be replaced by the word "plan" in the aforementioned sections.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the

complaint of September 6th, 2004 in the following manner.  The
prepositional phrase, "by means of registered letter" , in numbered
section thirty-six (36), placed after the word "notification" but
before the word "on" shall be struck and disregarded.  Plaintiff
apologizes to this court for using the phrase twice and thus being
redundant.

NOW HERE COMES PLAINTIFF AND MOVES this court to AMEND the
complaint of September 6th, 2004 in the following manner.  The word
"Student" in numbered section fifty-five (55) shall be inserted after
the word "Qualifying" and before the word "Health".  The correct title
to the sentence would therefore read, "Qualifying Student Health
Insurance Program."

PLAINTIFF PRAYS AND MOVES THIS COURT TO ALLOW THIS MOTION TO
AMEND in order to clarify the words, phrases and sections of the Class
Action Complaint of September 6th, 2004.

COMPLAINT-CLASS ACTION

I.    Preliminary Statement

1.    This is a class action lawsuit charging the University of
      Massachusetts at Amherst, Health

Services with systemic discrimination against part-time students
enrolling in less than 75% of the

University of Massachusetts at Amherst guidelines for enrollment
requirements for full-time Students.

2.    The University of Massachusetts Health Services demands and
      requires that all Part-Time

students enrolled in more than five (5) credits are required to enroll
in the Qualifying Student Health

Insurance Plan, hereinafter referred to as "QSHIP" according to Massachusetts General Law Chapter

15A, §18.

3.    The Plaintiff named above, was a part-time student in the Fall of 2003, enrolled at the University

of Massachusetts at Amherst with two courses which the University of Massachusetts at Amherst has

defined and credited as being six (6) credits.

4.    The Plaintiff named above, maintains that the University of Massachusetts Health Services

has violated statutory rights by over-charging students, that are legally defined as "part-time" by the

Massachusetts Legislature; the Code of Massachusetts Regulations and the University of Massachusetts at

Amherst, with a health fee in the amount of $705 and other amounts over a period of over ten (10) or more

Years.  Said period of time can be since September 1, 1989 when the Legislature enacted M.G.L. 15A.

5.    The Plaintiff named above, maintains that he has attempted to discuss and resolve this matter with

the University of Massachusetts at Amherst Director of Health Services, Bernadette Melby, 150 Infirmary

Way, Amherst, Massachusetts; Gladys Rodriguez,  Associate Dean of Students, University of

Massachusetts at Amherst,  227 Whitmore Administration Building, Amherst, Massachusetts; Brian Burke,

Associate Counsel, Office of the General Counsel, University of Massachusetts at Amherst, 300 Whitmore

Administration Building, Amherst, Massachusetts;  Tom Mathers, Interim Director of the Bursars Office,

University of Massachusetts, 215 Whitmore Administration Building, Amherst, Massachusetts.

6.    The Plaintiff named above, is unable to be enrolled at the

University of Massachusetts at Amherst

for the Fall 2004 semester because the University of Massachusetts at Amherst has withdrawn the Plaintiff

for Administrative Reasons, the non-payment of this University of Health Services mandated  fee of $705.

7.    The Plaintiff named above, maintains that the University of Massachusetts at Amherst Student

Legal Services Office was unable to proceed with a  lawsuit against the University of Massachusetts at

Amherst against the Massachusetts Board of Trustees because of Administrative Bulletin # and vote by the

University of Massachusetts Board of Trustees that removed the ability of the University of Massachusetts

at Amherst Student Legal Services office to sue on behalf of the Plaintiff, and other students similarly

situated, named above in this matter.

8.    The Massachusetts Board of Trustees receives its authority from the Massachusetts General Court,

the Massachusetts State Legislature under Massachusetts General Law Chapter 75 §1, Status; Governing

Body.

9.    The University of Massachusetts at Amherst receives its management policy, guidelines and

Regulations from the Massachusetts Board of Trustees under Massachusetts General Law Chapter 75, § 1,

Status; Governing Body.

10.    The University of Massachusetts at Amherst Health Services receives its management, policy and

regulations from the Massachusetts Board of Trustees under Massachusetts General Law Chapter 75, § 1,

Status; Governing Body.

11.    The Massachusetts Board of Education receives its authority from

the Massachusetts General

Court, the Massachusetts State Legislature under Massachusetts General
Law Chapter 15A, § 1

12.    The Plaintiff named above, is a client of the Massachusetts
Rehabilitation Commission and is an

individual with a disability and receives his funding to attend the
University of Massachusetts at Amherst

through the Massachusetts Rehabilitation Commission.

13.    The Massachusetts Rehabilitation Commission receives its
authority from the Massachusetts

General Court, the Massachusetts State Legislature under Massachusetts General Law
Chapter 6, §75,

of which the Massachusetts General Court derives its regulatory authority from the United
States

Code 706 and 722, as amended by the Rehabilitation Act Amendments of 1992, P.L. 102-
569, regulations regarding

referral and application, eligibility and order of selection can be found at 107 CMR
4.00:M.G.L. c. 6, s. 75

14.    The Massachusetts Rehabilitation Commission is authorized under
the Federal Government

Code of Federal Regulations, Title 34, Chapter III, part 361, which Under the
State Vocational Rehabilitation

Services Program (Program), the Secretary(U.S. Education) provides grants to assist States in operating statewide

comprehensive, coordinated, effective, efficient, and accountable programs, each of which is—

(a)An integral part of a statewide workforce investment system; and (b)Designed to assess, plan, develop, and

provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths,

resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that they may prepare

for and engage in gainful employment. (Authority: Section 100(a)(2) of the Act; 29 U.S.C. 720(a)(2))

II.  Jurisdiction and Venue

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331(a) and Sections