1343(a)(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 to declare the rights of the parties and to grant all further relief found to be necessary and proper.

16.. Venue is proper in the United States District Court for Western District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred within this judicial district and all relevant facts to this action occurred in this District.

### III. Parties

17. Scott Stern is a resident of North Adams, Massachusetts

18. University of Massachusetts Board of Trustees is the Management of the University of Massachusetts at Amherst within the Commonwealth of Massachusetts and oversee five campuses including the University of Massachusetts at Amherst.

19. University of Massachusetts at Amherst Health Services is the Health Services Office, medical facility at the University of Massachusetts at Amherst Campus.

20. Bernette Melby, is Director of the University of Massachusetts Health Services, responsible for enforcement of the Code of Massachusetts Regulations regarding health insurance for full-time and part-time students, and is being sued under her official capacity only.

21. Brian Burke, is Associate Counsel for the University of Massachusetts at Amherst Campus. and is being sued under his official capacity only.

### IV Class Action Allegations

22. The individual Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on behalf of himself and on behalf of a class consisting of all past, present and future University of Massachusetts at Amherst part-time students, that, because of fraudulent and discriminatory activities on the part of Director of Health Services Bernadette Melby, has sought to over-charge students that classify as part-time according to the Code of Massachusetts Regulations. Students that are enrolled in five (5), six(6), seven (7) or eight (8) credits at the University of Massachusetts Amherst Campus.

23. The Plaintiff is an aggrieved person under federal civil rights law as a result of the actions, policies and practices of Defendants. The named individual Plaintiff seek immediate declaratory and injunctive relief on behalf of himself to prevent Defendants from denying Plaintiff access to enroll at the University of

Massachusetts at Amherst during the Fall of 2004 by removing the status of "Administrative Withdrawal" from his record(s) and allow Plaintiff to sign up and continue his pursuit of a higher education.

24. All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of Defendants. Plaintiff seeks, on behalf of all class members, an order from this court, that shall prevent the Defendants from over-charging students, and the class members, here in named in this class action suit, presently and in the future.

25. All class members are aggrieved persons under federal civil rights law as a result of the actions, policies and practices of Defendants. Plaintiff seeks, on behalf of all class members, the University of Massachusetts Health Services to reimburse, credit or otherwise refund any and all monies charged against the class members to this suit, for whatever period of time the Defendants have been incorrectly, wrongfully charging students a mandatory health fee, during regular academic session, during non-regular academic session, whenever such fee was billed and received as monies from the class members, irregardless of the term the class members were attending the University of Massachusetts at Amherst.

26. This matter is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) in that:

(a) The class members are so numerous as to make the joinder of all them impracticable. Based on information and belief, there have been thousands of students enrolled at the University of Massachusetts at Amherst Campus on a part-time basis. These students have been enrolled in courses to further their personal and education goals. The class members may or may not still be attending the University of Massachusetts at Amherst; may or may not reside in the Commonwealth of Massachusetts; may or may not reside in the United States of America. The class members affected may be matriculating or non-matriculating students. The class members may be both older and younger students and did not realize that they were being charged a fee that was not mandatory. The failure of the University of Massachusetts at Amherst Health Services to distinguish between the two classifications of part-time students has led to a discriminatory act against the class members. The failure of the University of Massachusetts at Amherst to monitor the compliance of their Health Services Office with regard to the

QSHIP program under Massachusetts General Laws has led to a discriminatory act against the class members. The failure of the University of Massachusetts Board of Trustees to ensure that students were properly classified according to the Massachusetts General Laws and the Code of Massachusetts Regulations has led to a discriminatory act against the class members. The failure of the Director of Health Services, Bernadette Melby to take remedial action to overcome the effects of past policies and practices has led to this class action lawsuit on behalf of the class members.

(b) There are questions of law and fact common to the class members. These common Questions of law and fact predominate over questions affecting individual class members. Among the questions of law and fact common to the class is whether the practices and policies of the University of Massachusetts at Amherst Health Services; the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; and the Massachusetts Board of Higher Education; the Division of Health Care Finance and Policy has violated the class members rights to seek a higher education without exploiting their status as part-time students by mandating a health insurance program in violation of the Code of Massachusetts Regulations CMR 114.6 3.00 Qualifying Student Health Insurance Program (QSHIP). Whether the University of Massachusetts Board of Trustees has denied these class members the ability to sue, on their behalf, against the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; the Board of Higher Education, and the Division of Health Care Finance and Policy by the University of Massachusetts Student Legal Services Office which is funded by both Full-time and Part-time students at the University of Massachusetts at Amherst. Whether the University of Massachusetts Board of Trustees can prevent the University of Massachusetts Student Legal Services Office from seeking injunctive and declaratory relief on behalf of a class of students such as name in this proposed class action suit.

(c) The claims of the individual Plaintiff are typical of the claims of the proposed class members. The Plaintiff, as the other class members, are students that wish to continue their education on a part-time basis, and desire to further their education without being mandated to participate in a health insurance program at the University of Massachusetts at Amherst through the University of Massachusetts at Amherst Health Services Office. The Plaintiff, as the other class members, may have already enrolled in courses at the University of Massachusetts at Amherst and may have been subjected to this mandatory fee of the health insurance program.

(d) The named individual Plaintiff will fairly and adequately protect the interests of the

class members.

(e) Defendants have acted on grounds generally applicable to the class, thereby making final declaratory and injunctive relief with respect to the class as a whole appropriate.

## V.   Facts

27. During the Fall of 2003, the Plaintiff, a double-major in Legal Studies and Political Science attended the University of Massachusetts at Amherst Campus and enrolled in two (2) courses.

28. Plaintiff's two (2) courses at the University of Massachusetts amounted to six (6) credits.

29. Plaintiff, according to the University of Massachusetts guidelines regarding part-time and full-time status, is classified as a part-time student.

30. Plaintiff, during the fall of 2003, received funding to return to the University of Massachusetts at Amherst through the Massachusetts Rehabilitation Commission.

31. Plaintiff was informed, during the fall of 2003 semester, that this fee was mandatory and it must be paid otherwise Plaintiff would be withdrawn from the University of Massachusetts at Amherst.

32. Plaintiff met with the Director of Health Services, Bernadette Melby and disagreed with the billing of this mandatory program. The Director of Health Services, Bernadette Melby, during this meeting, suggested that "she could reduce the minimum number of credits to one (1) as opposed to five (5) if she so desired." and, in addition, having known and been properly informed of the issue, in advance, failed to provide any documentation to back up this variation with the Code of Massachusetts Regulations. Plaintiff attempted to reason with the Director by arguing that the Board of Trustees cannot change the drinking age on the University of Massachusetts at Amherst Campus by lowering the age for students to purchase alcoholic beverages, on the Amherst or any other Campus, to

18, contrary to Massachusetts General Laws which allow alcoholic beverages to be purchased if one is over the age

of 21.

    33.    Plaintiff met with Daniel Maguffin, during the fall of 2003 and was able to convince Mr. Maguffin

that said fee was inappropriate and should not have been billed. The result of this meeting between Plaintiff and

the Bursar, Dan Maguffin, allowed Plaintiff to remain active and enrolled at the University of Massachusetts at

Amherst during the fall of 2003 and the subsequent amount was credited on Plaintiff's tuition statement.

    34.    Plaintiff received notification, by means of a tuition statement, that said health program was

credited and removed from Plaintiff's bill.

    35.    Plaintiff received notification, by means of a tuition statement, that said health program was being

rebilled for the health insurance program.

    36.    Plaintiff received notification, by means of a registered letter, on August 23, 2004, by means of

a registered letter, which indicated that there was an outstanding balance on Plaintiff's account, of which, $705 was

for this health insurance program. This letter was written by Elizabeth Reardon, Collections Officer from the

University of Massachusetts at Amherst, 406B Goodell Building, 140 Hicks Way, Amherst, Massachusetts 01003

This bill, fortunately, informed Plaintiff that he was entitled to respond to the matter and explain the situation.

This letter noted that "actions may include assignment of the outstanding balance to an outside agency, or an

attorney for litigation. Both of these actions will result in additional costs assessed against the balance due. In

additional, under Massachusetts General Law Ch. 7A, Ch. 62D and 815 CMR 9.00, any unpaid balances may be

subject to late charges and processing fees, and intercept of State payment or Tax refunds" Plaintiff telephoned

the individual named Elizabeth Reardon, and explained the situation that he

was having with regard to the out-

standing amount. Ms. Reardon is currently, for the time being, allowing the account to be placed on a "hold" status

to avoid further penalties and further collection efforts until this matter becomes resolved.

    37.    Plaintiff contacted the Interim Bursar, Tom Mathers, at the University of Massachusetts at

Amherst, 215 Whitmore Administration Building, Amherst, Massachusetts on Friday, September 3, 2004 and

explained the situation to him in an effort to maintain an "active" status on the University campus. Tom Mathers

attempted to contact Brian Burke, Associate Counsel for the University of Massachusetts at Amherst at 300

Whitmore Administration Building, Amherst, Massachusetts. Tom Mathers also called Bernadette Melby in regard

to this situation and was told, by Ms. Melby, that Plaintiff should "just pay it" and then "seek a refund." Tom

Mathers, Interim Bursar, agreed that from a customer standpoint, Plaintiff should not have to pay for an item that is

incorrect while waiting for disposition to be properly heard and adjudicated. Tom Mathers also contacted his

supervisor, the Controller for the University of Massachusetts at Amherst, Andrew Mangles, who felt that the

situation was "unique" and "that Mr. Stern may have stumbled across something which could cost the University

thousands of dollars"

    38.    Under the Code of Massachusetts Regulations 114.6 CMR 3.00 Student Health Insurance

Program, where one can obtain this regulation at the website: www.mass.gov/dhcfp/pages/dhcfp110.htm, the CMR

defines, on page 15 of this report, under CMR 3.02, the classification of students as follows:

    Full-time-A student who meets the minimum academic requirements for full-time students as

Defined by the institution of higher education in which the student is enrolled.

    Part-time- A student who participates in at least 75% of the

academic requirements for full-time

Students.

    39.    The Code of Massachusetts Regulations CMR 114.6 CMR 3.00 is promulgated in accordance with

the authority granted to the Division of Health Care Finance and Policy by Massachusetts General Law Ch. 15A, §

18 and St. 1996, c. 151, §597

    40.    The University of Massachusetts Board of Trustees allows the individual five University

campuses to set their own guidelines in regard to what constitutes a full-time status with students.

    41.    The University of Massachusetts at Amherst, academic regulations, can be found at:

http://www.umass.edu/dean_students/rights/acad_reg.htm, and clearly define what a full-time student is.

### Under Section 2, II. ENROLLMENT CATEGORIES.

Enrollment is an official relationship between students and the University. In order to be considered officially enrolled, students must pay all financial obligations to the University and register for courses. Failure to meet either of these conditions means the student is not enrolled for the current semester.

    A. **Full-Time Students.**
       Full-time students are required to carry the minimum load of 12 credits each semester.

    B. **Part-Time Degree-Seeking Students.**
       Part-time (designated as non-classified) is an original admissions category for students who are admitted as candidates for a degree, but who cannot devote their full time to the pursuit of a degree. In addition, full-time students may become part-time. A change in status may be requested during the pre-registration or Add/Drop periods for the semester in which the change of status is sought. Full-time students in good academic standing may elect part-time status without Dean's approval. Students who are not in good academic standing are required to have the approval of their undergraduate dean to change status

to part-time. In all instances, the Registrar's Office must be notified on the appropriate forms available from that office. Part-time students are subject to all academic regulations and standards. (See "Academic Status," below.)

42. Plaintiff is unable to be officially enrolled because of the status placed on him by the Bursar's

Office, of "Administrative Withdrawal" caused by the University of Health Services billing the Plaintiff for a health

insurance program that is contrary to the Code of Massachusetts Regulations and the Massachusetts State

Legislatures intent with the code.

43. The Code of Massachusetts Regulations, located at: http://www.mass.gov/dhcfp/pages/dhcfp

110.htm, page 1, states:

"Effective September 1, 1989, the Massachusetts Law Chapter 15A, § 18 requires that

every full-time and part-time student enrolled in an institution of higher learning in Massachusetts participate in a

qualifying student health insurance program (QSHIP) or in a health benefit plan with comparable coverage. A

part-time student is defined as a student participating in at least 75% of the full-time curriculum.

44. Basic math computations have not changed over time. The Board of Higher Education cannot

change basic math computations, nor can the University Board of Trustees, nor the University of Massachusetts

at Amherst Health Services Office; nor the Division of Health Care Finance and Policy, and of course, nor can this

Plaintiff. 75% of the full-time curriculum (which, at the University of Massachusetts at Amherst is 12) is 9.

Plaintiff attempted on numerous occasions to calculate a different answer but explicably arrived at the same answer

each time. That answer is the same because basic math computations have not

changed since the beginning of time

    45.    The class members are those part-time students that have been billed this qualifying student health

insurance program from September 1, 1989 to the present; and if they had taken five (5), six (6), seven (7), and eight

(8) credits, and have paid this amount to the University of Massachusetts at Amherst, have had action brought

against them for non-payment of this health insurance program, have incurred litigation fees, fines, and any

additional charges accorded by Massachusetts General Law Chapter 7A, Chapter 62D and 815 CMR 9.00

    46.    According to the Code of Massachusetts Regulations:

"Prior to the 1989-1990 academic year, there was no law requiring students to have

health insurance in order to enroll in higher education, nor was there a standard set of defined

minimum benefits for college and university health insurance programs. Chapter 23 of the Acts

of 1988 changed that. It created a new state agency, the Department of Medical Security, to ad-

minister a range of statutory programs to increase student access to care and to set minimum

health benefits standards. In 1996, those responsibilities were transferred to the Division of Health

Care Finance and Policy."

    47.    Plaintiff, on December 22, 2003, discussed this matter with the University of Massachusetts

Student Legal Services Office, with Suman Rastogi, a law clerk. Plaintiff also discussed this matter with Attorney

Michelle Leaf, Senior Staff Attorney. It was at this time that Attorney Michelle Leaf, Senior Staff Attorney noted

that Plaintiff may have a case against the University and the University of Massachusetts Board of Trustees, but,

because the Student Legal Services Office successfully won a lawsuit against

the Board of Trustees, during the

1980's, there ability to litigate on behalf of students against the University, the University Board of Trustees and

other agencies, boards, institutions and any other entity was terminated. Only recently has the Student Legal

Services Office been able to file, on behalf of students, in a limited sphere of law, litigation on their behalf.

The Student Legal Services Office is, in affect, not fulfilling its full, complete and original mandate to students, to

the citizens of the Commonwealth of Massachusetts; both full time and part time students; both Undergraduate and

Graduate; and Doctoral Candidates, because the University of Massachusetts Board of Trustees has discriminated

against the same citizens and students; and has failed to insure that students, and their civil rights, accorded by the

Massachusetts Consitution, accorded by the United States Constitution could be advocated and litigated through the

University of Massachusetts at Amherst Student Legal Services Office because the University of Massachusetts

Board of Trustees lost a lawsuit litigated by the Umass Student Legal Services Office.

  48. On February 9, 2004, Suman Rastogi, Law Clerk at the Student Legal Services Office, conducted

an investigation and contacted the Division of Health Care Finance and Policy. At this time, Ms. Rastogi spoke with

a Mr. Gatachew, or someone with a name similar to this, or close proximity to this spelling, at the Division of Health

Care Finance and Policy on two separate occasions, January 29, 2004 and February 9, 2004. Ms. Rastogi recorded

that Mr. Getachew, on January 29, 2004 admitted and spoke to her that students that "take less than nine (9) credits

do not need to take QSHIP" and he would send letter indicating as such. Having not received the letter by February

9, 2004, Ms. Rastogi telephone Mr. Getachew again at the Division of Health

Care Finance and Policy and spoke

with Mr. Getachew. On this separate occasion Mr. Getachew informed Ms. Rastogi that his legal counsel had

advised him "not to give anything in writing" and that "the law is clear about part-time students." and that "students

have to resolve this problem with Umass officials"

49. Massachusetts constitution's first article, guaranteeing "inalienable rights" to all citizens. The

University of Massachusetts Board of Trustees has denied Plaintiff "inalienable rights" by denying him access

to legal help, while mandating that Plaintiff must pay for the Student Legal Services through a Student Activities

Fee. The Constitution of the Commonwealth of Massachusetts, Pt. 1, Art. 1, which provides that government is

instituted for the common good, for the protection, safety, prosperity, and happiness of the people, and not for the

profit, honor, or private interest of any one man, family, or class of men." The University of Massachusetts Board of

Trustees have held themselves out to be a different "class of men" and have discriminated and wrongfully denied the

Plaintiff the ability to seek legal recourse, with the assistance of the University of Massachusetts Student Legal

Services Office, against the named Defendants, by Plaintiff and the class members.

50. Under the Massachusetts Constitution, Article IV. The people of this commonwealth have the sole

and exclusive right of governing themselves, as a free, sovereign, and independent state; and do, and forever

hereafter shall, exercise and enjoy every power, jurisdiction, and right, which is not, or may not hereafter, be by

them expressly delegated to the United States of America in Congress assembled. Plaintiff, seeks the right to have

choice of his legal representation for the class members, the University of Massachusetts

Student Legal Services

Office, with Attorney Chuck J. Dimare and Michelle Leaf as Counsel for Plaintiff and counsel for the class

members.

51. Under the Massachusettes Constitution, Article V. All power residing originally in the people, and

being derived from them, the several magistrates and officers of government, vested with authority, whether

legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them.

The University of Massachusetts at Amherst Board of Trustees is accountable to the Plaintiff and the class members.

The Board of Higher Education is accountable to the Plaintiff and the class members. The Division of Health Care

Finance and Policy is accountable to the Plaintiff and the class members. The University of Massachusetts at

Amherst Health Services is accountable to the Plaintiff and the class members.

52. Under the Massachusetts Constitution, Article VI. No man, nor corporation, or association of men,

have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the

community, than what arises from the consideration of services rendered to the public; and this title being in nature

neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a

magistrate, lawgiver, or judge, is absurd and unnatural. The University of Massachusetts Board of Trustees has

voted to place themselves out of harms way by preventing any lawsuits to be filed by the University of

Massachusetts Student Legal Service Office by entitling themselves to "particular and exclusive privileges" that

other citizens, distinct from those of the community, in the Commonwealth of

Massachusetts are not accorded.

53. Under the Massachusetts Consitution, Article VII. Government is instituted for the common good;

for the protection, safety, prosperity and happiness of the people; and not for the profit, honor, or private interest of

any one man, family, or class of men: Therefore the people alone have an incontestable, unalienable, and

indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection,

safety, prosperity and happiness require it. Plaintiff, and the class members, seek to enforce Massachusetts

General Law Chapter 15A in respect to their rights as a class of students that have had their prosperity and happiness

affected by the discriminatory actions on the part of the Defendants.

54. Under the Massachusetts Constitution, Article XI. Every subject of the commonwealth ought to

find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person,

property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it;

completely, and without any denial; promptly, and without delay; conformably to the laws. The University of

Massachusetts Board of Trustees require that a Student Activities Fee be paid by full-time and part-time students in

Order to maintain services such as the University of Massachusetts Student Legal Services Office. The fact that the

University of Massachusetts Board of Trustees demands that students make payments for services but denies a

student access to obtain services is contrary to the Massachusetts Constitution. The fact that a Mr. Getachew

admitted that students are not required to obtain health insurance if they are enrolled under nine (9) credits and then,

sought counsel to obtain advice; and counsel instructed Mr. Getachew "to not give anything

in writing", and denied

Ms Rastogi, on behalf of this Plaintiff, a certain remedy, by having recourse to the laws, does invoke Plaintiffs

Federal and State rights "for all injuries and wrongs which he may receive in his person, property, or character."

> 55. Under the Massachusetts Constitution, Article XXIII. No subsidy, charge, tax, impost, or duties,

ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or

their representatives in the legislature. The Commonwealth of Massachusetts Legislature writes the laws of this

great commonwealth. The Qualifying Health Insurance Program, as administered by the University of

Massachusetts Health Services; the University Board of Trustees; the Board of Higher Education; the Division of

Health Care Finance and Policy have imposed, fixed and levied a fee, under the pretext that such fee was allowable

by laws enacted by the commonwealth.

WHEREFORE Plaintiff, and the proposed class members, respectfully pray that the Court grant the

declaratory and injunctive relief, as well as nominal damages and other relief, set forth hereinafter in the prayer for

relief.

### GENERAL PRAYER FOR RELIEF

WHERFORE, Plaintiffs pray for judgment as follows:

a. That this Court permanently enjoin the conduct of Defendants, their officers, agents,
servants, and employees and direct Defendants to remove the status of "administratively withdrawn" from the

Plaintiff's record, and allow the Plaintiff to enroll, at the University of Massachusetts at Amherst;

b. That this Court permanently enjoin Defendants, their officers, agents,

servants, and

employees from denying Plaintiff, equal rights to use the University of Massachusetts Student Legal Services

Office to act as counsel for Plaintiff and the class members.

c. That this Court render a Declaratory Judgment declaring the Defendants' conduct denying equal rights to

Plaintiff, , and the class members to be invalid and unconstitutional in all respects under the

Massachusetts General Laws, Massachusetts Consitution, the United States Constitution and the Code of Federal

Regulations Title 34.

d. That this Court render a Declaratory Judgment declaring that defendants' refusal to allow Plaintiff, and the

proposed class members, to have equal access to services paid for through University Student Activities Fees, but

not permitted to utilize such services as paid for as unconstitutional and constitutes impermissible discriminatory

denial of civil rights of the Plaintiff, and the proposed class of members, accorded by the Massachusetts

Constitution.

e. That this Court retain jurisdiction of this matter for the purposes of enforcing the Court's

order;

g. That this Court exercise discretion pursuant to Rule 65 of the Federal Rules of Civil

Procedure to accelerate the trial on the merits;

h. That this Court order a trial by jury to assess actual and compensatory damages suffered

by Plaintiffs due to Defendants' flagrant violation of Plaintiff's constitutional rights;

i. That this Court issue the requested injunctive relief without condition of bond or surety or

other security being required of Plaintiffs.

## **PRAYER FOR OTHER RELIEF**

j. Grant to Plaintiffs an award of nominal damages;

k. Grant to Plaintiffs an award of the costs of litigation, including reasonable attorneys' fees

and expenses;

n. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 6th day of September 2004.


Respectfully submitted this 3rd day of November, 2004.

*Scott Stern* (signature)

Scott Stern

Pro-Se Plaintiff

400 West Main Street

North Adams, Massachusetts 01247


### Acknowledgement Certificate

On this __3rd__ day of __November__ 2004, before me, the undersigned Notary Public, personally appeared __Scott Stern__ proved to me through satisfactory evidence of identification, which were drivers license issued by the Commonwealth of Massachusetts, to be the person whose name is signed on the preceding document and acknowledge to me that he signed it voluntarily for its stated purpose.

_____
Signature of Notary Public

My Commission Expires __4-21-11__