UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Scott Stern,  ) Case No.: 04-30176-FDS
400 West Main Street  )
North Adams, MA. 01247,  )
and other persons similarly situated in the  )
Commonwealth of Massachusetts; and other persons  )
similarly situated in the United States of America;  )
and other persons similarly situated not currently  )
residing within the Commonwealth of Massachusetts  )
or the United States of America,  )
 )
       Plaintiff,  )
vs.  )

University of Massachusetts at Amherst
University Health Services
Director of Health Services, Bernadette Melby
150 Infirmary Way
Amherst, Massachusetts. 01003,
Defendant

and,

University of Massachusetts at Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts 01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts 02108
Defendant

and,

Massachusetts Board of Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696

Defendant

1

and,

Division of Health Care Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

---

## MEMORANDUM OF LAW FOR PLAINTIFF IN SUPPORT OF PLAINTIFF's RIGHT TO THE CIVIL RIGHTS ACT OF 1871

Scott Stern
400 West Main Street
North Adams, Massachusetts 01247
Pro-Se Litigant
For the Plaintiffs and class members

### STATEMENT OF FACTS

Plaintiff, Scott Stern, brings this action challenging the Validity of a University of Massachusetts Policy requiring that all Students, enrolled in five (5) or more credits are required and mandated to enroll in a Qualifying Student Health Insurance Program, hereinafter referred to as the "program", "QSHIP" or "plan", on behalf of himself and the class members.

The University of Massachusetts at Amherst Health Service has Violated Massachusetts General Law Chapter 15A §18, the Code of Massachusetts Regulations 114.6 CMR 3.00 and the Guidelines established by the Division of Health Care Finance and Policy, a Massachusetts government division, authorized to monitor and enforce the provisions of Massachusetts General Law Chapter 15A §18. The Division of Health

2

Care Finance and Policy published a guide entitled "Access to Health Care in Massachusetts: A Catalog of Health Care Programs for Uninsured and Underinsured Individuals, Third Edition, May 2004."

The plaintiff, Scott Stern, on behalf of himself and the class members, researched and discovered that the University of Massachusetts at Amherst may not be alone in their violation of this Massachusetts General Law against the class members. Their may be other private colleges and universities that are also complicit in violating "part-time" students rights like the University of Massachusetts at Amherst Health Services has conspired by this "ultra vires" plan against the plaintiff and the class members.

The Massachusetts General Law Chapter 15A §18, an Act of the Massachusetts Legislature, implements the definitions and minimums required to be mandated to participate in a "QSHIP" health plan as a part-time student. Chapter 15A §18 also delineates the definition of "part-time" student respective to the act. Institutions of Higher Learning, are mandated to enroll students that participate in "at least" 75% of the full-time curriculum. Each institution of Higher Learning is allowed to determine its classification of "full-time" respective to their curriculum and criteria as they deem fit. The University of Massachusetts at Amherst determined, through the Board of Trustees, that a "full-time" curriculum for the University of Massachusetts at Amherst campus would be twelve (12) or more credits. This determination, of twelve (12) or more, would then set the threshold for the minimum "***required to participate***" (emphasis added) as legislatively enacted by Massachusetts General Law Chapter 15A §18

3

to be 75% of the "full-time" curriculum, which would be nine (9) credits or more.

The University of Massachusetts at Amherst instituted a policy of mandating, not offering as optional, "part-time" students, such as Scott Stern, the plaintiff in this action, that he be required to participate in a "QSHIP" plan. The University of Massachusetts at Amherst enrolled the plaintiff, without his consent, acknowledgement or authorization, into this "QSHIP" plan, and demanded that the plaintiff pay for this "QSHIP" plan thus violating another Massachusetts General Law regarding insurance and the enrolling of individuals in insurance plans without their consent and authorization. Nevertheless, plaintiff refused to pay for this "QSHIP" plan and was administratively withdrawn by the herein named defendants after attempting alternative means of resolution with the Defendant Bernette Melby.

The Honorable Judge F. Dennis Saylor IV misunderstood the intent of one of plaintiff's arguments, that of the graduating fee imposed by the University of Massachusetts Board of Trustees vs the "QSHIP" fee or plan legislatively enacted by the Massachusetts Legislature. The plaintiff, disagrees with both fees, however, the difference is that one of these two fees are legislatively mandated with minimum thresholds and criteria for "part-time" classification of student, and "full-time" curriculum for institutions of higher learning, and stipulates the minimum for "**_requirement to participate_**", the "QSHIP" plan, while the other, the Graduating Fee, is **not** (emphasis added) legislatively enacted, with minimums and definitions, the University of

4

IDEA Act and violated plaintiff's Federal and State Constitutional Rights.

### PLAINTIFF HAS THE RIGHT TO THE CIVIL RIGHTS ACT OF 1871

"Section 1983 of the Civil Rights Act of 1871 renders individuals in state government liable when they deprive citizens of "any rights, privileges or immunities secured by the Constitution and laws" 42 U.S.C. 1983 (1982) This provision, enacted as section 1979 of the Civil Rights Act of 1871, was originally a part of the general civil rights legislation passed by Congress after the Civil War in an effort to give substantive freedom to the emancipated slaves. (Slaughter House Cases, 83 U.S.(16 Wall.) 36, 71 (1873).

A section 1983 plaintiff must also show that the defendant, herein named, Bernette Melby, Director of Health Services, et al, are individuals, who, acting under the color of state law, violated the right of the plaintiff and the class members to **choose** (emphasis added) if they wanted to participate in said "QSHIP" plan by mandating their participation contrary to the legislative enacted requirements and stipulations of the law defined by the legislature. Generally, this condition is satisfied if the individual's conduct would constitute "state action" for the purposes of the fourteenth amendment. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982). "If the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under 1983"; See also Griffin v. Maryland, 378 U.S. 130, 135 (1964) "action of one who possesses state authority

and purports to act according to that authority is state action even if not authorized under state law, and may violate the equal protection clause."

Judge Posner, in Bowers 686 F. 2d at 618 declared that:

"if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." This "position of danger" test exactly as a "special relationship" to expose the state to section 1983 liability for failure to act. When Suman Rastogi, the law clerk, telephoned the Division of Health Care Finance and Policy of the Massachusetts Government, and, according to documentation supplied to the plaintiff, that the individual named avoided the situation by a "clear and convincing" argument of "failure to act" by denying the law clerk, Suman Rastogi, on behalf of the plaintiff, the resolution to the situation involving the "QSHIP" plan, by denying the law clerk and the plaintiff, published government documents, it did in fact, "fail to act" and did invoke plaintiff's right to a 1983 claim under the federal constitution.

The actions of the defendants were tantamount to "deliberate Indifference" against the plaintiff. The United States Supreme Court has held that "deliberate indifference" may be demonstrated either by showing that [prison] officials intended to deprive the (prisoner) of a constitutional right or by showing that they acted in "reckless disregard" of the [prisoner's] rights. Gregg v. Georgia, 428 U.S. 153, 173 (1976).

7

In Goldberg v. Kelly, 397 U.S. 254, 261 (1970), the Supreme Court held that welfare recipients are entitled to evidentiary hearings before a state may terminate their benefits. Plaintiff, in this action, had been administratively withdrawn by the University of Massachusetts Health Services Director, Bernette Melby, was not notified or allowed the process of an evidentiary hearing on the merits of his claim and contention for payment of this "QSHIP" plan mandated by the University of Massachusetts Health Services in contrary to Massachusetts General Law Chapter 15A §18, the Code of Massachusetts Regulations, 114 CMR 3.00 and the Guidelines established by the Division of Health Care Finance and Policy. In fact, according to affidavit submitted by plaintiff, the only venue the University of Massachusetts at Amherst affords to waive such a "QSHIP" plan is through the defendant, Bernette Melby, Director of Health Services, and the University of Massachusetts at Amherst, does not accord students with any other means to object to said "QSHIP" plan but through this individual. It is this same individual that issues authorizes the refunds for said "QSHIP" plan. Thus, had the plaintiff paid the "ultra vires" fee, then sought reimbursement, the plaintiff would have to seek such reimbursement from the same individual at the University of Massachusetts at Amherst that administers the plan, thus creating a conflict of interest and rendering any attempt by any individual null and void, since the Director of Health Services is mandated by University Policy to collect any "QSHIP" fees from "part-time" students that are enrolled in five (5) or more credits. The "QSHIP" plan delineates that "part-time" students are students that take "75% or

8

more" of a full-time curriculum, of which is nine (9), according to the University of Massachusetts at Amherst campus criteria for "full-time" students.

Plaintiff was a student that enrolled in two courses in the fall of 2003 which were a total of six (6) credits. Plaintiff has used basic math skills to determine the percentage of nine (9) and the basic math fact that six (6) is less than nine (9). Thus, the requirement by the University of Massachusetts at Amherst Health Services to mandate that the plaintiff **"must"** (emphasis added) participate, by University Policy, was and is, contrary to established law, codes and guidelines regarding the "QSHIP" plan.

Plaintiff, a disabled individual, has a "property interest" in continuing his education at the University of Massachusetts at Amherst because the plaintiff receives services through another Massachusetts government entity, the Massachusetts Rehabilitation Commission.

"Because the due process clause defines "property" in light of the expectation created by the state, and not according to the entitlement, property interests may exist in promises to provide services that would not be considered property in a more traditional sense of the term. For example, the Supreme Court has held that individuals have property for due process purposes in a driver's license, public education, or even a cause of action itself, where state law specifies that such benefits will be conferred on certain classes of persons" Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

In Fuentes v Shevin, 407 U.S. 67 (1972) the court held that the

9

state may not seize property that is in one's possession upon application of another person without first providing for a hearing. Applying this standard, the defendant Bernette Melby should have notified the plaintiff, and the plaintiff, had an opportunity to be heard, at a hearing, determining his status at the University of Massachusetts at Amherst.

The defendants, refused to participate by "failure to act"; by refusing to return phone calls and by not offering the plaintiff an opportunity to be heard by any other means than herself. In what manner can one say that the defendants have guaranteed the right or rights of the plaintiff. They cannot. Nor can the defendant's provide that they offered the plaintiff an "opportunity for an evidentiary hearing" regarding the "QSHIP" plan.

In effect, the University of Massachusetts at Amherst Health Services, et al, through the defendant Bernette Melby, Director of Health Services, have acted in a manner, for example, that could be termed as "robber", and the plaintiff, a "part-time" student, being the "victim", has sought to reclaim "property interest" both in his right to seek an education and the reimbursement of the "ultra vires" fee, which he has been "robbed" by the same individual that committed the "robbery". Thus, paying the University at the Bursar's Office, but seeking reimbursement from the same individual that has authorization to waive the "plan" in the first place seems a clear deprivation of one's due process rights for relief. In supporting affidavit submitted by the plaintff, the Comptroller of the University of Massachusetts at Amherst, Tom Mathers, agreed and stated

that: "it didn't make sense to pay for a fee that one would seek for reimbursement later." (paraphrased)

In Goss, 419 U.S. at 574, the Court rejected from the plurality opinion in Arnett v. Kennedy, 416 U.S. 134, 154 (1974), which suggested that plaintiffs whose statutory benefits are cut off without due process "must take the bitter with the sweet." Instead of adopting the rationale offered by the Arnett plurality, that a "grant of substantive right is inextricably intertwined with the limitations on the procedures" laid out in statute, the majority in Goss held that a statutory entitlements may not be withdrawn "absent fundamentally fair procedures to determine [the grounds for termination]."

It might be argued, incorrectly, that a section 1983 suit in Federal court cannot be a proper remedy for the state's alleged violation of the individual's due process rights as long as the state provides an adequate postdeprivation remedy. In this situation, plaintiff has been informed, and will submit, by affidavit, the only remedy is to pay for the "QSHIP" plan or "not go to school here". In Parratt v. Taylor, 451 U.S. 527 (1981), for example, the Supreme Court held that a state official's negligent deprivation of an individual's property might be actionable under section 1983, but only where the state did not provide an adequate postdeprivation remedy. In this case, plaintiff's property interest is in the potential loss of funding from, and by, the Massachusetts Rehabilitation Commission, a federally subsidized program that the plaintiff is a client of.

11

Thus, the defendants have, in effect, deprived the plaintiff of his constitutional rights. Plaintiff, a citizen of the United States, has sought to invoke his constitutional rights with a federal cause of action. The explicit purpose of the 1983 provision was to prove a federal cause of action and to provide a federal forum for citizens who suffer "deprivation".

The defendants have not provided plaintiff with a post deprivation remedy to resolve his status of "administratively withdrawn" and, in so doing, deprived plaintiff of his right to hearing before a "property interest" was deprived of him.

Wherefore plaintiff respectfully prays that this court overturn the erroneous ruling of the Honorable Judge F. Dennis Saylor IV, and grant the preliminary declaratory mandatory injunctive relief sought, as well as nominal damages and other relief, set forth in plaintiff's Complaint and incorporated herein, in plaintiff's Memorandum of Law in Support of Plaintiff's Right to Due Process, incorporated herein, and set forth in the general prayer for relief of the Memorandum of Laws incorporated herein as if set forth within this Memorandum of Law in Support of Plaintiff's Right to the Civil Rights Act of 1871. Plaintiff respectfully prays that this court will allow the motion to Amend the complaint, removing the State as a named defendant, and incorporating the named defendants, set forth in the Motion to Amend the Complaint, as well as correcting the names of named defendants in original complaint.

Respectfully submitted this 10th day of February 2005.

_____
Scott Stern
Pro Se Plaintiff, and on behalf of the class members
400 West Main Street
North Adams, Massachusetts 01247

13