UNITED STATES  DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Scott Stern,
400 West Main Street
North Adams, MA.  01247,
and other persons similarly situated in the
Commonwealth of Massachusetts; and other persons
similarly situated in the United States of America;
and other persons similarly situated not currently
residing within the Commonwealth of Massachusetts
or the United States of America,

      Plaintiff,

  vs.

Case No.: 04-30176-FDS

)
)
)
)
)
)
)
)
)
)
)
)
)

University of Massachusetts at Amherst
University Health Services
Director of Health Services, Bernette Melby
150 Infirmary Way
Amherst, Massachusetts.  01003,
Defendant

and,

University of Massachusetts at Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts  01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts  02108
Defendant

and,

Massachusetts Board of Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696

Defendant

1

and,

Division of Health Care Finance and Policy
Two Boylston Street
Boston, Massachusetts 02116-4737

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF's RIGHT TO DUE PROCESS

Scott Stern
400 West Main Street
North Adams, Massachusetts 01247
Pro-Se Litigant
For the Plaintiffs

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| INTRODUCTION | 3 |
| STATEMENT OF FACTS | 5 |
| DUE PROCESS | 10 |
| 11th AMENDMENT, IT'S TRUE INTENT, AND PLAINTIFF'S RIGHT TO SUE STATE | 13 |
| MASSACHUSETTS TAXPAYERS FOUNDATION | 25 |
| A FEDERAL QUESTION | 33 |
| ILLEGAL SUSPENSION | 34 |
| CONSPIRACY TO VIOLATE EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION AND 42 U.S.C. Sec. 1981 | 35 |
| NEGLIGENCE AND/OR GROSS NEGLIGENCE IN VIOLATION OF THE UNITED STATES CONSTITUTION | 35 |
| THE SUPREME JUDICIAL COURT'S RULING IN MCDUFFY | 37 |
| SCOPE OF ISSUE | 38 |

MASSACHUSETTS BOARD OF EDUCATION AND
UMASS BOARD OF TRUSTEES....................................................................................40

PLAINTIFF HAS A FEDERAL RIGHT TO A HIGHER EDUCATION..............................46

PLAINTIFF HAS A MASSACHUSETTS STATUTORY RIGHT TO AN EDUCATION..................47

THE JUDICIARY AND THE BOARD OF TRUSTEES......................................................48

THE 11TH AMENDMENT AND PLAINTIFFS' RIGHT TO SUE THE STATE.......................50

THE INTERPRETATION OF STATUTES.........................................................................52

THE ARGUMENT.............................................................................................................58

THE PLAINTIFF WILL SUFFER IRREPARABLE HARM
THE COURT DOES NOT ISSUE A TEMPORARY RESTRAINING
ORDER AGAINST THE DEFENDANTS..........................................................................58

THE DENIAL OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS
UNDER THE EDUCATION CLAUSE CONSTITUTES IRREPARABLE HARM......................59

ENFORCEMENT OF DEFENDANT'S INTERPRETATION DISPARAGES
PLAINTIFF, AFFECTS HIS DIGNITY AND THREATENS HIS SELF-ESTEEM.....................61

BALANCING THE HARMS SUFFERED BY THE PLAINTIFF AND THE DEFENDANT'S
FAVORS THE ISSUANCE OF A PRELIMINARY INJUNCTION.........................................61

THE CLASS MEMBERS....................................................................................................62

MASSACHUSETTS CONSTITUTIONAL PROVISIONS....................................................65

PLAINTIFFS IMMEDIATE RELIEF REQUESTED............................................................70

GENERAL PRAYER FOR RELIEF...................................................................................70

PRAYER FOR OTHER RELIEF.........................................................................................71

## INTRODUCTION

Plaintiff, Scott Stern, brings this action challenging the validity of a University of Massachusetts Policy requiring that all students enrolled in five (5) or more credits are required and mandated to enroll in a Qualifying Student Health Insurance Program, hereinafter

referred to as the "program", "QSHIP" or "plan", on behalf of himself and the class members.

The University of Massachusetts at Amherst Health Services has violated Massachusetts General Law Chapter 15A §18, the Code of Massachusetts Regulations 114.6 CMR 3.00 and the Guidelines established by the Division of Health Care Finance and Policy in their guide "Access to Health Care in Massachusetts: A Catalog of Health Care Programs for Uninsured and Underinsured Individuals, Third Edition, May 2004."

The Plaintiff, Scott Stern, researched and discovered that the University of Massachusetts at Amherst may not be alone in their violation of this policy against the class members. From his initial inquiry, it seems apparent, on the surface, that the University of Massachusetts at Lowell may have also violated class members thus requiring a mandatory plan for students that are enrolled in less than 75% or more of the full-time curriculum for the respective institution.

Massachusetts State law Chapter 15A section 18 is supported by the Massachusetts Code of Massachusetts Regulations. The Code of Massachusetts Regulations (118 CMR 3.00) is further supported by the Massachusetts Division of Health Care Finance and Policy Guidebook entitled "Access to Health Care" published by the Massachusetts State Government.

The Plaintiff, had sought a simple, obtainable, change of status for himself, regarding his educational status at the University of Massachusetts at Amerhst, from the United States Federal Court in Springfield, Massachusetts. Judge Michael Ponsor recused himself because of "a close relative also being a part-time student" at the University of Massachusetts at Amherst. The case was transferred to the Worcester Division of the United States Federal Court, Judge Dennis

4

Saylor IV presiding.  Plaintiff is still seeking a Preliminary
Declaratory Mandatory Injunction allowing the plaintiff to be enrolled
and matriculated in the University of Massachusetts at Amherst.
Pursuant to Federal Rules of Civil Procedure 65 (b) Plaintiff seeks a
Temporary Restraining Order against the Defendants to allow Plaintiff
to attend classes, continue and pursue his goal of obtaining his higher
education, and continue being enrolled after this Fall 2004 semester;
to bar the Defendants from defying said order and preventing Plaintiff
from being administratively withdrawn for the same health plan, which
is automatically generated against the class members, including the
Plaintiff, which is contrary to Massachusetts General Law Chapter 15A
§18, Code of Massachusetts Regulations 114.6 CMR 3.00 and the Division
of Health Care Finance and Policy, Executive Office of Health and Human
Services guide "Access to Health Care in Massachusetts, May 2004".

## STATEMENT OF FACTS

Plaintiff enrolled in the University of Massachusetts at Amherst
for the fall semester of 2003 through the Massachusetts Rehabilitation
Commission.  Plaintiff enrolled in two (2) courses in order to continue
fulfilling his General Education requirements as stipulated by the
Massachusetts Board of Higher Education and the University of
Massachusetts at Amherst Faculty Senate and general guidelines for
obtaining a double-major Bachelor of Arts degree from the University of
Massachusetts at Amherst.  The University of Massachusetts Health
Services automatically bills each student that is enrolled in five (5)
or more credits, a mandatory health plan.  Plaintiff enrolled in two
courses at the University of Massachusetts at Amherst that totaled
six(6)credits.  The University of Massachusetts Health Services

5

automatically billed Plaintiff this plan, which constituted an amount
of seven hundred five dollars ($705). The University of Massachusetts
Director of Health Services refused to waive, release, and otherwise
remove this plan, permanently, from plaintiff's bill after completion
of the two courses during the fall semester of 2003. Plaintiff was
allowed to continue his pursuit of a higher education in spite of the
fact that there was this billed, unpaid plan. Plaintiff was objecting
to and was wrongfully charged, ultra vires, this plan. Plaintiff,
because he did not pay, refused to pay, and was unable to be granted a
remedy to the situation, was sent letter demanding payment of said
plan. Plaintiff sought remedial action through the University of
Massachusetts at Amherst Health Services Director, Bernadette Melby;
the Interim Bursar Tom Mathers; the Associate Counsel, Brian Burke, and
the Associate Dean of Students, Gladys Rodriguez. The University of
Massachusetts does not offer students a means by which to object to a
fee or a plan without losing their individual status of "enrolled".
(See Daily Collegian September 9, 2004 – Exhibit 1)

It should be noted to the court, that Tom Mathers, Interim
Bursar, and Gladys Rodriquez were quite helpful and understanding of
the situation but were unable to resolve this situation because of
their unique position at the University of Massachusetts at Amherst.
The outstanding amount has caused Plaintiff to be "administratively
withdrawn" from the University of Massachusetts at Amherst. This
status, which is illegal, and *ultra vires*, as stated from the
aforementioned laws, codes, and guidelines is preventing the plaintiff
from obtaining a Tuition Bill from the University of Massachusetts at
Amherst. Plaintiff is required, by guidelines of the Massachusetts
Rehabilitation Commission, to provide a tuition bill to the
Massachusetts Rehabilitation Commission, in order to obtain funding for

the fall 2004 semester. Plaintiff brought this suit, on behalf of himself, to request a TEMPORARY RESTRAINING ORDER, against the Defendants allowing his status to be changed to "enrolled" and remove the status of "administratively withdrawn" from his academic, or any other record at the University of Massachusetts at Amherst.

Plaintiff brought this class action suit, on behalf of the class members, and himself, to mandate that the University of Massachusetts at Amherst be ordered to reimburse and refund the affected class members in this suit, whether or not they are attending the University of Massachusetts at Amherst; whether or not they are living or residing in the Commonwealth of Massachusetts; whether or not they are living or residing outside the Commonwealth of Massachusetts but within the continental United States, and whether or not they are living or residing within the continental United States; whether or not they are undergraduate or graduate, matriculating or non-matriculating, Doctoral, part-time or full-time degree seeking candidates at this time.

Plaintiff, after much anguish, stress, depression and anxiety, requests this court to order the Commonwealth of Massachusetts to compensate Plaintiff for his time and effort to resolve this case, putative damages and emotional damages which would be deemed fair and proper.

Plaintiff requests this court to further order the University of Massachusetts to release all records, to some independent investigatory agency, all records, data and facts relative to information regarding the class members and their payment of said plan for the last fifteen (15) years.

Plaintiff, through statutory law, regulations and guidelines will show this court that the University of Massachusetts at Amherst Policy

is in direct conflict with Massachusetts General Laws, the Code of
Massachusetts Regulations and the Division of Health Care Finance and
Policy Guidelines. Such actions on their behalf, and their employees
may be a larger violation of student rights within the Commonwealth of
Massachusetts and demands an investigation by the United States
District Attorney's Office on the role, practice, policies that each of
the Defendants may have been complicit and conspiring to defraud the
citizens, its students in particular, the class members, of the
Commonwealth of Massachusetts. This violation occurred through mandated
insurance programs or plans, under color of law, at the University of
Massachusetts at Amherst and other institutions across this great
Commonwealth.  Through careful and analytical research, the class
members may be in need of reclassifying should any of the Colleges or
Universities have used a lower threshold than five (5) credits at their
respective institutions.

Plaintiff has brought this suit to order to seek a public apology
from the Board of Higher Education, the Division of Health Care Finance
and Policy, particularly an individual named, or similarly named, "Mr.
Getachew"; the University of Massachusetts Board of Trustees, in
general; the University of Massachusetts at Amherst Associate Counsel,
particularly Brian Burke and Geoffrey McCullough; and the University of
Massachusetts Health Services Director, Bernette Melby.


## DISCRIMINATION IS BIAS WHICH IS A VIOLATION OF DUE PROCESS


Federal Judge Dennis Saylor should have recused himself for the
simple reason that he was biased against the Plaintiff in this matter
by supplying, giving, offering, allowing, to provide, give guidance,
give case law, to the Defendant, in this matter.  This was a violation

of the Judicial Code of Ethics, but more importantly, it violated this plaintiff's right to due process.

"Due Process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of decency and fairness that has been woven by common experience into the fabric of acceptable conduct." Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408.

A reasonable person, upon reading the statute, and the Code of Massachusetts Regulations, and the Guidebook, would believe that the plaintiff was correct. Unfortunately, this plaintiff was not dealing with a reasonable person, rather, this plaintiff was dealing with Judge Dennis Saylor IV.   In addition, not only did the defendants deny they did anything wrong, contrary to the written law, code and guidebook which plaintiff clearly presented, but they also created new law by demanding payment of insurance premiums contrary to the Massachusetts General Court's Statutory Law that a person, corporation or entity could purchase insurance for another individual, the plaintiff in this matter without the plaintiff's consent or knowledge. Unfortunately for this plaintiff, this action was heard by a newly appointed Judge that wanted to ensure that this plaintiff's truly meritorious claims would fail, by blatantly disregarding statutory law, code and guidelines and fail they did by his hand, by this same individual that was not reasonable, regarding this simple violation of statutory law, code and guidelines.  Yet, even though Judge Saylor's hand failed the citizens of the Commonwealth of Massachusetts, his erroneous decisions can be overturned, and set right before the citizenry of the Commonwealth. This plaintiff seeks the opportunity that the Judgments and decisions of United States District Judge F. Dennis Saylor be overturned.  This

9

plaintiff's actions should have been allowed and held favorably for the plaintiff, against the defendants, rather than against the plaintiff.

<u>DUE PROCESS</u>

"The protection of the individual from arbitrary action is the very essence of due process of law" Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S Ct 637.

"Due process of law is a summarized constitutional guaranty of respect for those personal immunities which are so rooted in the traditions and conscience of the nation as to be ranked as fundamental or are implicit in the concept of ordered liberty." Rochin v. California, 342 U.S. 165, 72 S Ct 205, 25 ALR2d 1396

"Due process is an elusive concept; its exact boundaries are undefineable, and its content varies according to specific factual contexts." Hannah v. Larche, 363 US 420, 80 S Ct 1502

"To determine whether due process requirements apply, courts must not look to the "weight," but to the nature of the interest at stake." Goss v. Lopez, 419 US 565, 95 S Ct 729

Due process, unlike some legal rules, is not a technical conception, with a fixed content unrelated to time, place and circumstances; due process is flexible and calls for such procedural protections as the particular situation demands. Mathews v Eldridge, 424 US 319, 96 S Ct 893

When Judge Dennis Saylor provided case law to the opposing counsel, thus denying plaintiff case law, it was a form of bias, and to this plaintiff was a blatant form of discrimination against the plaintiff. Discrimination by Judge Dennis Saylor not as to offend the person of the plaintiff, but to offend the simple, clearly obtainable,

clearly warrantable, right the plaintiff had, in seeking to continue his education at the University of Massachusetts at Amherst, under the Massachusetts Rehabilitation Commission, a federally subsidized program. When Judge Dennis Saylor asked the opposing counsel, "Have you heard of the case of Chesterton?" during oral arguments, and requested the opposing counsel to submit briefs on such, it was tantamount to discrimination. When this plaintiff objected to this action, Judge F. Dennis Saylor IV did not suggest or grant this plaintiff case law that would be in his favor, certainly allowing parity to the unfolding events at the oral arguments. The actions of Judge F Dennis Saylor IV were tantamount to discrimination against the Pro-Se plaintiff, and the federal courts have held that:

"While the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process." Boiling v. Sharpe, 347 US 497, 74 S Ct 693

"A state may not, by any of its agencies, disregard the prohibitions of the 14th Amendment." Georgia Power Co. v. Decatur, 281 US 505, 50 S Ct 369

"The due process clauses of both the Fifth and Fourteenth Amendments are directed at the protection of the individual, and he is entitled to their immunity as much against the state as against the national government." Curry v. McCanless, 307 US 357, 59 S Ct 900, 123 ALR 162

This case is about the University of Massachusetts Health Services using its administrative position at the University of Massachusetts at Amherst, part of State-wide Five Campus System to demand and extort money, ultra vires, from students without their consent, against insurance statutory law and regulations, without these same students right to know what the minimum requirements of this law

is regarding this health fee, by the Health Services violating
Massachusetts State Law, the Code of Massachusetts Regulations, the
Guidelines clearly established by the Division of Health Care, Finance
and Policy. The organizations that were named in this suit, were or
should have clearly known that this violation was occurring, since each
ultimately were responsible for the other. Was it a simple oversight
or a purposeful action? Why didn't the University of Massachusetts
under the University of Massachusetts Board of Trustees implement this
same policy at its other campuses? One of the reasons is that The
University of Massachusetts at Amherst is far removed from the
Massachusetts State Legislature, the Division of Health Care Finance
and Policy and logistically, the individuals that conspired to defraud
the students, the class action members, felt that no one would dare
recognize the illegality of what they were doing. By their actions of
implementing policy on one campus and not the entire state wide system,
did the trustees then discriminate against students for not demanding
student participation and their enrollment in this "mandatory health
plan" as they did this plaintiff at the University of Massachusetts at
Amherst campus?

    This mandatory health fee enforced by the University of
Massachusetts Health Services, exacted against the plaintiff is the
issue, in addition, it is the fact that the University of Massachusetts
Health Services wrongfully displaced this same plaintiff, by
administratively withdrawing this plaintiff, contrary to his federal
right under the Americans with Disabilities Act, to continue his
education, uninterrupted, through the Massachusetts Rehabilitation
Commission. The University of Massachusetts at Amherst Health Services,
the Universtiy of Massachusetts Board of Trustees, The Massachusetts
Board of Higher Education and the Division of Health Care Finance and

12

Policy has been caught with their hands in the cookie jar so to speak, and, in so doing, may have to refund a lot of money which was wrongfully exacted against the students, the students parents, the citizens of the Commonwealth of Massachusetts of which this class action lawsuit seeks to recover. The other simple and clear issue is to order the University of Massachusetts Health Services to remove the wrongful status they placed against this plaintiff, thus denying this plaintiff the right to continue his education with the assistance of the Massachusetts Rehabilitation Commission.

Why then, are the defendant using the 11th Amendment to protect them from a suit? What was the true intent of the 11th Amendment and, more importantly, are they, the University of Massachusetts and their co-defendants protected from an individual citizens, or class of citizens from a lawsuit? Does the state have the right to sue its citizenry while denying its citizenry the right to sue it?

<u>11th AMENDMENT, ITS TRUE INTENT, AND</u>

<u>THE PLAINTIFF'S RIGHT TO SUE THE STATE</u>

"It is not improper to suggest the abandonment, modification, or refinement of existing constitutional interpretation." Herbert v. Lando, 441 US 153, 99 S. Ct 2620

"A constitutional clause must be construed reasonably to carry out the intention of the framers" Woodson v. Murdock, 22 Wall 351

"In interpreting the Constitution, the deliberate choice of words cannot be disregarded." Wright v. United States, 302 US 583, 58 S Ct 395

13

"Words employed in the Federal Constitution cannot be regarded as meaningless." United States v. Butler, 297 US 1, 56 S Ct 312, 102 ALR 914.

"The 11th Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States *by Citizens of another State, or by Citizens or Subjects of any Foreign State*" (emphasis added) United States Constitution Amendment VI. As is evident from its wording, the 11[th] Amendment does not purport to deprive the federal courts of jurisdiction to entertain suits against states *brought by their own citizens*. This is not an accident. It reflects the limited purpose the 11th Amendment was adopted to serve. The 11th Amendment was added to the Constitution to overturn one of the Supreme Court's earliest decisions, *Chisholm v. Georgia* (1793).8 *Chisholm* held that the "diversity of citizenship" clause in Article III of the Constitution conferred jurisdiction on federal courts to adjudicate claims brought by non-citizens alleging that a state had violated *state law*. Justice Iredell, who dissented in *Chisholm*, argued that this was error — that the diversity of citizenship clause should not be construed to deprive states of their traditional immunity when sued *under state law*. But even Justice Iredell conceded that the federal courts had jurisdiction over suits against states seeking to enforce *federal law*; that followed logically from the fact that the Constitution contained a Supremacy Clause declaring federal law to be supreme and binding on the states." This is the statement of Michael H. Gottesman before the Senate Committee on Health, Education, Labor and Pensions, concerning recent Supreme Court decisions affecting Congress' ability to redress employment discrimination, on Apr. 4, 2001.

Professor Michael H. Gottesman.  Professor Gottesman is a professor of law at Georgetown University Law Center. Much of his scholarship focuses on issues of constitutional law.

The Framers of the Constitution of the United States clearly envisioned that the people held inalienable rights, otherwise, why else would they have written such rights into the constitution? Article IX on the Constitution of the United States clearly embodies this ideal:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"

Article X of the United States Constitution:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, *or to the people*" (emphasis added)

Article XI of the United States Constitution:

"The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The reasoning and ratification of and for the Eleventh Amendment was to overturn the decision in the United States Supreme Court's decision in Chisolm. 2 U.S.C. § 419 (1793).

No where in the United States Constitution does the term "states consent" occur, for the people to "redress their government." Such a term became an interpretation of Constitutional law rather than clearly written in the Constitution of the United States.  It is akin to two prize fighters each seeking the title to be called winner, but only one asking the other permission to engage in the fight, and the other

claiming victory before the fight has begun.  It just doesn't make sense that the framers envisioned the people's right to redress their government, and envisioned that nothing could take away their rights, and then allow the states to be protected from suits within its own borders by its own citizenry.  The judicial activism and interpretation of the 11th amendment granting the states "sovereign immunity" against suits by its own citizens, is a clear deprivation of the people's right of "redress" accorded by both the Federal and State Constitutions.  The constitutional interpretation of the 11th Amendment of the court thus deprives the citizenry of its alienable right to life, liberty and the pursuit of happiness accorded by the United States Federal Constitution and the Commonwealth of Massachusetts Constitution.

The United States Supreme Court held in McPherson:

"Where there is ambiguity or doubt, or where two views may well be entertained, contemporaneous and subsequent practical construction of the Constitution are entitled to its greatest weight." McPherson v. Blacker, 146 US , 13 S Ct 3

The United States Supreme Court further held in Ex Parte Quirin:

"Contemporary construction of a constitutional provision which has been followed since the founding of our government is entitled to the greatest respect.  Ex Parte Quirin, 317 US 1, 63 S Ct 2

Why did the framers of the Massachusetts Constitution suggest that the people had the right to "redress their government" in the new constitution if they needed to seek its permission first?  It is non sequitur.

Under the Massachusetts Constitution, Article V:

16

All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them.

Under the Massachusetts Constitution, Article XIX:

" The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer."

Black's law dictionary, fifth edition:

"Remonstrance: Expostulation; showing of reasons against something proposed; a representation made to a court or a legislative body wherein certain persons unite in urging that a contemplated measure be not adopted or passed. A formal protest against the policy or conduct of the government or of certain officials drawn up and presented by aggrieved citizens."

Plaintiff in this civil action is an aggrieved citizen. Plaintiff has clearly established the correct interpretation of the Massachusetts General Court's Statutory Law of Chapter 15A Section 18. Plaintiff sought protection from the United States District Court for enforcement of his rights and "urging that a contemplated measure be not adopted or passed", the ultra vires, University of Massachusetts at Amherst Health Services mandatory health fee for students enrolled in less than nine (9) credits, or AT LEAST 75% of a full-time curriculum.

No where does the Commonwealth of Massachusetts Constitution state that this citizen, or any other citizen, requires the permission to engage in a suit against it, or its representatives in order to achieve the "remonstrances" as are necessary to achieve his "life, liberty and pursuit of happiness" both accorded by the United States Federal and Massachusetts Constitutions.

The interpretation of the Federal 11th Amendment clearly states that citizens can sue their own state because it does not preclude it within the interpretation of the same amendment.   What the 11th Amendment does state, is that a citizen of a state, in Massachusetts for example, cannot sue the state of New York.  England, a foreign state, cannot sue New York. Additionally, the "Citizens or Subjects of any Foreign State", such as the King of England, cannot sue the state of New York.

Why is this the correct interpretation of the Amendment?

"A Court has no right to insert any clause in the Constitution which is not expressed and cannot be fairly implied." Prigg v. Pennsylvania, 16 Pet 539

"The words of the Constitution should be given the meaning they were intended to bear when that instrument was framed and adopted." Scott v. Sanford, 19 How 393

One must understand the time period and the ratification process that took place during this tumultuous time period in the history of the United States.

"The Eleventh amendment to the Constitution of the United States was proposed to the legislatures of the several states by the Third Congress, on the 4th of March 1794; and was declared in a message from the President to Congress, dated the 8th of January, 1798, to have been ratified by the legislatures of three-fourths of the States. Ratification was completed on February 7, 1795. The amendment was subsequently ratified by South Carolina on December 4, 1797. Two states, New Jersey and Pennsylvania did not take action on the amendment." The Constitution of the United States of America, Unratified Amendments and Analytical Index, Mr. Ney, United States Government Printing Office, ISBN 0-16-051424-X, 2003.

"In the construction of the Constitution, we must look to the history of the times, and examine the state of things existing when it was framed and adopted. Rhode Island v. Massachusetts, 12 Pet 657

"The constitution must be interpreted in the light of the law existing when it was adopted." Mattox v. United States, 156 US 237, 15 S. Ct 337

"The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted." Ex Parte Grossman, 267 US 87, 45 S. Ct 332, 38 ALR 131

Under the Massachusetts Constitution, Article V.:

"All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are accountable to them."

"The spirit of the Federal Constitution or its preamble cannot be invoked, apart from the words of that instrument, to invalidate a state statute." Jacobson v. Massachusetts, 197 US 11, 25 S Ct 358

The University of Massachusetts at Amherst Health Services and the University of Massachusetts Board of Trustees are accountable to the Plaintiff and the class members. The Board of Higher Education is accountable to the plaintiff and the class members.  The Division of Health Care Finance and Policy is accountable to the plaintiff and the class members.

Under the Massachusetts Constitution, <u>Article VI</u>.

"No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

The University of Massachusetts at Amherst Health Services and their co-defendants have sought protection of the 11th Amendment and has essentially denied this plaintiff "remonstrances"  Board of Trustees has voted to place themselves out of harms way by preventing any lawsuits to be filed by the University of Massachusetts Student Legal Service Office by entitling themselves to "particular and exclusive privileges" that other citizens, distinct from those of the community, in the Commonwealth of Massachusetts are not accorded.  The

20

Massachusetts Board of Trustees is a "lay board" and is not
legislatively authorized to deprive students of their legal right to be
fully represented under the laws of the Commonwealth of Massachusetts
or the United States Federal Constitution.

Under the Massachusetts Consitution, Article VII.

"Government is instituted for the common good; for the
protection, safety, prosperity and happiness of the people; and
not for the profit, honor, or private interest of any one man,
family, or class of men: Therefore the people alone have an
incontestable, unalienable, and indefeasible right to institute
government; and to reform, alter, or totally change the same,
when their protection, safety, prosperity and happiness require
it."

Plaintiff, and the class members, seek to enforce Massachusetts
General Law Chapter 15A section 18 and the Code of Massachusetts
Regulations in respect to their rights as a class of students. The
plaintiff and the class members have had their prosperity and happiness
affected by the discriminatory actions on the part of the Defendants
under the color of law, ultra vires, and in direct contradiction to
these same laws, codes and guidelines.

"Judicial and legislative acts of a state, hostile in their
purpose or mode of enforcement to the authority of the national
government, or which impair the rights of citizens under the
Constitution of the United States, are invalid and void." Taylor v.
Thomas, 22 Wall 479

"A state must recognize as binding an amendment to the
Constitution of the United States, and enforce it within its own

21

limits, without reference to any inconsistent provisions in its own
Constitution or statutes." Neal v. Delaware, 103 US 370

Under the Massachusetts Constitution, Article XI.

"Every subject of the commonwealth ought to find a certain
remedy, by having recourse to the laws, for all injuries or
wrongs which he may receive in his person, property, or
character. He ought to obtain right and justice freely, and
without being obliged to purchase it; completely, and without any
denial; promptly, and without delay; conformably to the laws."

The University of Massachusetts Board of Trustees require that
fees are to be paid to the University, of which the University is
authorized to retain, such as the Student Activities Fee be paid by,
full-time and part-time students, in order to maintain services such as
the University of Massachusetts Student Legal Services Office which
advise and counsel students on various legal matters.  The fact that
the University of Massachusetts Board of Trustees demands that students
make payments for services but denies a student equal access to obtain
legal services is contrary to the United States Constitution and the
Massachusetts Constitution.

The fact that a Mr. Getachew, of the Division of Health Care
Finance and Policy admitted that students are not required to obtain
health insurance if they are enrolled under nine (9) credits and then,
sought counsel to obtain advice, to refuse this Plaintiff access to
information that is easily accessible in the public domain; and that
advice that is public record, public information, and the right of
every citizen to obtain said advice and information, by "right and

justice freely", and "without any denial" and counsel had instructed
Mr. Getachew "to not give anything in writing" and denied Ms Rastogi,
on behalf of this plaintiff, a certain remedy, by having recourse to
the laws, does invoke plaintiffs Massachusetts Constitutional rights
"for all injuries and wrongs which he may receive in his person,
property or character"

Under the Massachusetts Constitution, Article XI.

"Every subject of the commonwealth ought to find a certain
remedy, by having recourse to the laws, for all injuries or
wrongs which he may receive in his person, property, or
character. He ought to obtain right and justice freely, and
without being obliged to purchase it; completely, and without any
denial; promptly, and without delay; conformably to the laws."

The University of Massachusetts Board of Trustees require that
fees are to be paid to the University, of which the University is
authorized to retain, such as the Student Activities Fee which is to be
paid by full-time and part-time students, in order to maintain services
such as the University of Massachusetts Student Legal Services Office
which advise and counsel students on various legal matters.  The fact
that the University of Massachusetts Board of Trustees demands that
students make payments for services but denies a student equal access
to obtain services is contrary to the United States Constitution and
the Massachusetts Constitution.

The fact that a Mr. Getachew, of the Division of Health Care
Finance and Policy admitted that students are not required to obtain
health insurance if they are enrolled under nine (9) credits and then,

23

sought counsel to obtain advice, to refuse this Plaintiff access to information that is easily accessible in the public domain; and that advice that is public record, public information, and the right of every citizen to obtain said advice and information, by "right and justice freely", and "without any denial" and counsel had instructed Mr. Getachew "to not give anything in writing" and denied Ms. Rastogi, on behalf of this plaintiff, a certain remedy, by having recourse to the laws, does invoke plaintiffs Massachusetts Constitutional rights "for all injuries and wrongs which he may receive in his person, property, or character."

Under the Massachusetts Constitution, Article XXIII.

"No subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature."

The Commonwealth of Massachusetts General Court is the elected men and women that represent the citizens of the Commonwealth. The legislature writes the laws of this "Commonwealth. The Qualifying Student Health Insurance Program (QSHIP) was written by the legislature of the Commonwealth for the citizens of the Commonwealth. The QSHIP program is overseen and regulated by the Division of Health Care Finance and Policy. The Division writes Codes utilizing this Statutory Law, known as the Code of Massachusetts Regulations. The Division also wrote guidelines regarding this and other insurance regulations located in their guidebook: "Access to HealthCare". The University of Massachusetts Health Services manages and is in a position to insure that the Qualifying Students have access to this program ; the

University Board of Trustees; the Board of Higher Education; the
Division of Health Care Finance and Policy have knowingly imposed,
fixed, levied and collected a health fee and plan, under
that such plan was legal and authorized, against the clear and
unequivocal statutory provisions established by the Massachusetts
Legislature, and the Division of Health Care Finance and Policy own
guidelines.  The Division of Health Care Finance and Policy was
instituted to oversee the implementation of health insurance for all
the citizens of the Commonwealth of Massachusetts and was complicit in
its knowledge that the University of Massachusetts at Amherst Health
Services was violating these very same provisions.


### MASSACHUSETTS TAXPAYER FOUNDATION


According to the Massachusetts Taxpayer's Foundation, a
nationally recognized, non-profit research organization working to
promote the most effective use of tax dollars, improve the operations
of state and local governments, and foster positive economic policies.
Their credibility is based on independent, objective, and accurate
analysis of state and local spending, taxes and the econonmy.  Founded
in 1932, the Massachusetts Taxpayers Foundation ranks among the largest
and effective organizations in the country.  In June 2004, the
Massachusetts Taxpayers Foundation, published a report The University
of Massachusetts: Removing Barriers to Educational Excellence at the
State's Public Research University. In this report, on page 13:

"Umass has a very confusing system for tuition and fees.
In contrast to most other colleges and universities, total *fee* revenue

at UMASS-$205 Million-dwarfs *tuition(unlike fees which are set by the University), and have not kept up with costs."*

The University of Massachusetts five campuses: Amherst, Lowell, Worcester, Dartmouth and Boston are institutions that derive monies from fees and Tuitions.  Tuitions are returned to the State Treasury. Fees, are withheld by the University for their own discretion in appropriating. The Health fee Plaintiff is objecting to is one of these many fees that are being mandated on the student population.   In this past year alone, Graduate students rallied to remove a fee that was directed at International Students specifically.  The fee was for sixty five(65) dollars.  This fee was rescinded by the University of Massachusetts, and/or the University of Massachusetts Board of Trustees as it was blatantly discriminatory against the foreign graduate students.

The University of Massachusetts Administration, with or without the consent of the University of Massachusetts Board of Trustees, is implementing new fees, for different applications.  Such fees are directly generated because tuition is maintained in moderate levels, to give the consumer, the public, the feeling and statistic that tuition is not being dramatically increased, but rather a fee for a particular department is being instituted instead to offset the Commonwealths legislature lack of, and decline of appropriations to the University. This situation is, as the Massachusetts Taxpayers Foundation reported, on page 8:

> "The practice of sending tuition dollars to the state
> treasury has another negative affect.  Under current practice,
> there is little incentive for the university to recruit
> additional students (particularly non-residents) to generate new
> revenues that can be leveraged for research and partnerships.

26

the pretext

While the fees paid by astudent are available for the
university's use, the additional tuition paid by the student goes
to the state.  Since the state appropriation is not adjusted for
the higher enrollment, the university incurs all of the
additional cost of educating that extra student while receiving
only a portion of the added revenue"

The Massachusetts Taxpayers Foundation is, in this report,
recommending that tuitions paid into the University of Massachusetts
should be retained by the Board of Trustees in order to offset and
replace the budgetary shortfall the University of Massachusetts
experiences each year on each of the five campuses.  In a way, the
mandated health plan is an attempt to recover costs that the
legislature itself has declined to provide by and through, its own
statutes regarding education.  The health plan for a student enrolled
at the University of Massachusetts is exceptionally higher than the
health plan for a student enrolled at a community college.  Considering
the law of numbers, and the power of purchasing in bulk, this
disproportionate determination levied against the University of
Massachusetts students should be lower, not higher.  The fact that
University of Massachusetts Students are required to purchase a health
plan several hundred dollars more than their community college
brethren, bespeaks and cries out that there is foul play occurring at
the University level.  Wal-Mart, the largest corporation, by revenue
and size, has grown, and continues to grow, because of its ability to
purchase products and services, at a much reduced initial cost, because
of its "buying power".  This same argument should hold true for the
University of Massachusetts at Amherst and the five college campuses.
The sad fact is, that this is not the situation.

27

In addition, it is apparent that the University of Massachusetts is being continually forced to exact fees, in this case a health plan, from students in order to remain a viable and operating entity within the Commonwealth of Massachusetts and uses the implementation of fees to generate revenue, maintain its status quo, and increase its investments all without authorization from the University of Massachusetts Board of Trustees and the State Legislature. It is worth noting that the Commonwealth of Massachusetts is one of two states in the United States that does not allow its University's to retain the tuition they receive from their students. In the other 48 States, tuition retention is the standard practice.

The University of Massachusetts Board of Trustees however, is mandated to follow statutory provisions. The Qualifying Student Health Insurance Program is designed to *require* (emphasis added) that part-time students taking 75% or more credits on the University of Massachusetts at Amherst campus are *required to participate*. This, program, is not a fee. This program is an enactment by the legislature and sets minimum standards as described in the Code of Massachusetts Regulations 114.6 CMR 3.00

The University of Massachusetts is *requiring* that all students below the minimum threshold of 75%, or in this case, nine (9) credits, but above five (5) credits, are *required* to enroll in the University of Massachusetts Health Program. In the reverse argument, the University of Massachusetts is discriminating against students that enroll at the University of Massachusetts at Amherst but take less than five (5) credits but more than one (1) credit. If the University of Massachusetts can interpret the law to allow them to reduce the legislative threshold of 75% to 42%, what basis was there to set this new lower threshold at 42%? In other words, what was the purpose of

28