setting this threshold at all, if it was the interpretation by the
University of Massachusetts Board of Trustees that the legislature
allows them to change the minimum standards as required by the statute,
than why did they stop at 42%? Most classes at the University of
Massachusetts at Amherst are three (3) credit courses. A part-time
student is defined by the University of Massachusetts as a student that
is taking less than the minimum of the full-time student. The full-
time student is defined as a student that takes twelve (12) or more
credits. Using the percentage stipulated in the Massachusetts General
Laws, the Code of Massachusetts Regulations and the Guidelines as
issued by the Division of Health Care Finance and Policy, of which is
75% time or more of the full-time student curriculum, that number would
be nine (9). This figure was derived by tabulating the number of
credits an individual would have if enrolled in three (3) courses.

The essence of this is that the bill levied against the Plaintiff
was not a fee, it is a plan. This plan has certain guidelines and
stipulations to it. This plan is based on statutory provisions. While
the University of Massachusetts has found itself in a precarious
situation, and has taken upon itself to levy fees against students, it
is in no capacity to modify Massachusetts General Laws, the Codes of
Massachusetts Regulations, or the Guidelines implemented by the
Division of Health Care Finance and Policy of the Executive Office of
Health and Human Services. There is something terribly amiss here and,
beyond an investigation, requires serious scrutiny by the Massachusetts
Legislature as to what has occurred to lead to these unauthorized fees
being levied against the students, and the plan minimums to be so
willfully, recklessly and negligently mismanaged.

So what was the reason for arbitrarily setting the plan to a
lower threshold than is stipulated by the Massachusetts General Laws,

29

the Code of Massachusetts Regulations, and the Guidelines of the
Division? In short, it is, and for, the aspect of collecting revenue.
Consider this, the Massachusetts Taxpayer Foundation has suggested that
the University of Massachusetts could collect an additional five (5)
million dollars if it:

> "The Amherst Budget Office calculates that the margin by
> which extra revenue exceeds extra cost for an additional out-of-
> state student is about $5000. Adding an additional 1,000
> students could give the campus $5 million a year to invest in
> research seed money and other areas."

This number is for tuition, and not for fees. At the University
of Massachusetts Amherst campus, the University has been allowed to
retain twenty-five (25) million dollars from out-of-state students for
the fiscal years 2004 and 2005.

The numerical value is staggering. One must truly understand
what is at stake here. The University of Massachusetts at Amherst
Health Services, and other Universities may be complicit in deriving
revenue, *ultra vires*, from students in order to sustain itself. The
University of Massachusetts Board of Trustees has done this because the
legislature has failed to provide for the citizens of the commonwealth
and "all its citizenry" the opportunity to an education. This action
of billing, collecting and appropriating funds derived from *fees*, over
the last fifteen years, has been a negative and not a positive to
students.

The Massachusetts Taxpayer Foundation stated:

> "While control of tuition rates currently rests with
> the Board of Higher Education, the university trustees actually
> determine the ultimate cost for a student to attend UMass—the
> result of a critically important semantic distinction that

30

renders the board's control more nominal than real. The Board of Higher Education sets what is called *tuition,* which is currently retained by the state. The university trustees have the right to set *fees,* which are retained by the University. As a result, at the Amherst campus, to name one example, actual tuition represents only 21 percent of undergraduate in- state student charges (excluding room and (board) and 57 percent of non-resident charges.

The transfer of tuition-setting authority to the trustees will allow the university to restate tuition and fee rates (with no net change in total costs) to reflect the reality of the existing situation. This re-labeling will help hundreds of students who receive reimbursement for tuition costs from their employers. Typically, employers reimburse their employees only for what is labeled "tuition" and not for "fees." As we have seen for the Amherst campus, this could mean that students receive only 21 percent of actual tuition from their employers (see Figure 1). For every 100 students (full-time equivalent) for whom this applies, some $650,000 in potential employer reimbursements are left uncollected. Similar arguments apply for foreign students who receive scholarship support from their governments. Across the university system as a whole, students may lose millions of dollars.  Worse, there may be hundreds or thousands of students who could afford the university with full tuition reimbursement, but choose not to go because they must bear 80 percent of the cost."

This has led the University of Massachusetts to create new, arbitrary and *ultra vires* fees, to offset the legislatures declining appropriations to the five (5) University Campuses. It has led to the University utilizing fees to raise revenues, in a clandestine and pretentious manner, in lieu of raising tuition, through the creation, and mandate of various "fees". At the University of Massachusetts at Amherst, the Board of Trustees has now instituted, for example, a fee for graduating seniors, called the "graduation fee". Recently, the Graduate Students of the University of Massachusetts withheld a fee designating foreign students had to pay $65 for the International Programs Office. The University of Massachusetts was overruled, by an outside arbitrator, that the fee was discriminatory because it singled out Foreign Graduate Students as opposed to Domestic Graduate Students. The University has decided not to appeal this decision and decided to withdraw the mandatory fee against the Foreign Graduate Students.

The University of Massachusetts, in 2003, received in fees, two hundred and five (205) million dollars, from the students, which was a larger number than the Tuition being billed to the same students. It is Plaintiffs argument that the plan instituted, by the University of Massachusetts Health Services, while seeking to fulfill the wording of the Massachusetts General Law Chapter 15A §18, failed to employ the entire statute and thereby forced upon part-time students, this plan, to increase revenue on the Amherst Campus. This fact may not be only being exacted against the University of Massachusetts at Amherst campus; there may be other students, on other colleges and universities, within the Commonwealth, since 1989, that have been a victim of improper, *ultra vires*, plans relative to this Qualifying Student Health Program.

The significance is that the plan, is a Massachusetts Enacted Law, and the fees, are not approved by the Legislature. The plan was modified against the Statutory provisions while the fees were levied without the legislatures approval.

In essence, the Massachusetts Taxpayer Association is suggesting that all the fees that have been levied against the students, should be merged into the tuition for the students in order that a certain class of students. Students who are on scholarship; students that have employer reimbursements; foreign students that receive their government money to attend higher education, will be able to receive reimbursement. Thus benefiting a class of students in the relabeling of the fees as tuition, but not necessarily helping students by increasing the expense of a college education.

This would allow the University of Massachusetts at Amherst to start the program all over again, just with other fees. It is most certainly a great possibility that the University of Massachusetts has a long-term plan associated with the generation of fees, their implementation, and their potential application. This health plan, however, is not a fee. It is a mandated insurance program that the University of Massachusetts at Amherst, or other institutions, did not have any authority in lowering the minimum threshold for mandating student participation. It is clear and unequivocably written in the law, the statute and the guidelines. Their actions have been *ULTRA VIRES*.

## A FEDERAL QUESTION

Defendant's counsel, during a telephone hearing with United States District Court, Honorable Judge Saylor, and Plaintiff, argued that the action plaintiff is seeking would not fall under a Federal

33

Jurisdiction.  Plaintiff, in seeking restitution on behalf of the class members, would beg to differ and point out to this court and the defendant counsel that this Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331(a) and Sections 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 to declare the rights of the parties and to grant all further relief found to be necessary and proper.

Venue is proper in the United States District Court for Western District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claim occurred within this judicial district and all relevant facts to this action occurred in this District.  With the newly discovered information that the University of Massachusetts at Lowell may also be violating the rights of class members this venue is even more prevalent and required.

Some of these class members may have had fees, fines, and attorney's costs, from litigation, defending such and *ultra vires* plan. Such action may have already caused irreparable harm to these class members.  The consequence of the United States District Court not enjoining the University of Massachusetts at Amherst will be harsh, cruel and permanent to the plaintiff.  Plaintiff will further suffer from depression, anxiety and fear, and constantly worry about the ability to attend the University of Massachusetts at Amherst because of not enjoining the defendants and their actions against the Plaintiff. Plaintiff will also lose funding by the Massachusetts Rehabilitation Commission for the current semester.

**ILLEGAL SUSPENSION**

34

As a direct and proximate result of the intentional, reckless, and/or malicious acts of the Defendants, Bernadette Melby, Brian Burke, and an individual named "Mr. Getachew", separately and in concert and in conspiracy with each other and acting under color of law, the Plaintiff was, intentionally and unlawfully, administratively withdrawn as a student at the University of Massachusetts at Amherst.  This intentional, reckless and malicious acts was without consent or other legal justification, and without any notice or an opportunity to be heard, and his rights created by the Regulations and Policies of the University of Massachusetts at Amherst were violated, and he was deprived of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  The plaintiff is thereby entitle to damages and equitable relief under 42 U.S.C. sec. 1982, 1983, 1985, 1986 and 1988.

### CONSPIRACY TO VIOLATE EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. sec 1981

As a direct and proximate result of the intentional, reckless and/or malicious acts of all the defendants who were employees of the University of Massachusetts, separately and in concert and in conspiracy with each other, and acting under color of law, the defendants by their willful abuse of the lawful authority vested in them as public officials have deprived the plaintiff of his right to the full and equal benefit and protection of law and proceedings for the security of persons and property, and the right not to be subject to unequal unequal punishment, pains and penalties by reason in part of impermissible disability considerations, and deprived him of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution.  The plaintiff is thereby entitled to damages and

equitable relief under 42 U.S.C. sec 1981, 1982, 1983, 1985, 1986 and 1988.

## NEGLIGENCE AND/OR GROSS NEGLIGENCE IN VIOLATION OF THE UNITED STATES CONSTITUTION

On occasions prior to the actions alleged herein, the defendants knew, or should have known, that administrators of the University of Massachusetts at Amherst violated the constitutional rights of citizens by illegally academically withdrawing students, thus suspending students, thus engaging in conspiracies to violate their constitutional rights.

With the knowledge of and under the direction of the defendant Bernadett Melby, the University of Massachusetts and its administrators, acting under color of law, have engaged in the pattern of conduct alleged in this memorandum of law in support of the Plaintiff's complaint for a preliminary declaratory mandatory injunction and in support of the class action complaint. The defendant Melby and the defendants have failed to adequately classify students and their required participation in a mandatory health plan, train, instruct, supervise, control, investigate, discipline, and terminate the defendant Melby and Burke, each of whom, separately and in concert, has denied the plaintiff of rights guaranteed to him by the Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution.

The official policy, custom or usage of the defendant University of Massachusetts, aforesaid, is unconstitutional, insofar as it dictates, encourages and permits employees and administrators of the University to violate the rights of citizens.

As a direct and proximate result of the negligent and/or grossly negligent acts of the defendants Melby and the University of

Massachusetts to classify part-time students according to the
Massachusetts General Laws, the Code of Massachusetts Regulations and
the Guidelines established by the Division of Health Care Finance and
Policy, and to instruct, control, supervise, investigate, and
discipline the defendants for their egregious and wrongful acts, the
plaintiff has been deprived of his constitutional rights.  The
plaintiff is therefore entitled to damages and equitable relief under
42 U.S.C. sec 1982, 1983, 1985, 1986, and 1988.


## The Supreme Judicial Court's Ruling in McDuffy


On June 15, 1993, the Supreme Judicial Court issued its decision
in McDuffy, in which it ruled that the Education Clause of the
Massachusetts Constitution imposes a "duty [on the Commonwealth] to
provide an education for all its children, rich and poor, in every city
and town of the Commonwealth at the public school level..." (McDuffy v.
Secretary of the Executive Office of Education, 415 Mass 545 (1993) at
606. The Court further held that "this duty is designed not only to
serve the interests of the children, but more fundamentally, to prepare
them to participate as free citizens of a free State to meet the needs
and interest of a republican government, namely the Commonwealth of
Massachusetts" Id. The duty to properly educate all children in the
Commonwealth, the Court ruled, lies squarely on the executive and
legislative branches of the Commonwealth.  Additionally, the Court held
that "[w]hile the Commonwealth may delegate some of the implementation
of the duty to local governments, such power does not include the right
to abdicate the obligation on magistrates and Legislatures placed on
them by the Constitution." Id.

Plaintiff admits, he is no longer a child, but believes that this case citing can be applicable to all individuals attending schools and higher education institutions. Plaintiff is a client with the Massachusetts Rehabilitation Commission and is seeking to complete a degree he started two decades ago, at the University of Massachusetts at Amherst.

In this class action suit the University of Massachusetts is a public school, chartered for use by all the citizens of the Commonwealth of Massachusetts and outside the Commonwealth of Massachusetts. The University of Massachusetts Health Services is endowed and enforces guidelines established by the Executive and Legislative branches of the government but is not in a position to interpret laws nor modify guidelines thus abdicating altogether its fiduciary responsibility when determining such an insurance plan against the student populace, this being the class members. The University of Massachusetts Health Services receives its authority from the University of Massachusetts Board of Trustees. The legislature has not granted the University of Massachusetts Board of Trustees the authority to modify statutory minimums, or to interpret statutory law.

## SCOPE OF ISSUE

Defendant's counsel argued that the University of Massachusetts at Amherst, and the University of Massachusetts Board of Trustees are authorized to interpret laws written by the State Legislature. To the contrary, the University of Massachusetts Board of Trustees receives its authority from the Massachusetts General Court, by the elected representatives and senators of the 351 Cities and Towns of the Commonwealth of Massachusetts, by enactment of Massachusetts General

Laws Chapter 75 §1, Status; Governing body. The Board of Trustees
shall:

"The board shall: (a) cause to be prepared and
submit to the board of higher education estimates of maintenance
and capital outlay budgets for the university; (b) establish all
fees at said institution, subject to guidelines established by
the council. The board shall submit recommendations for fee
guidelines to the council."

Clearly the University of Massachusetts Board of Trustees
is not in the capacity to interpret laws, but rather, is "subject
to guidelines established by the council". This therefore does
not empower the University of Massachusetts Board of Trustees the
authority to "set" fees, simply that they can "submit
recommendations for fee guidelines to the council." Likewise, the
University of Massachusetts Health Services, managed by the
University of Massachusetts Board of Trustees, does not have the
authority to interpret explicit and exacting language of the
Massachusetts General Court, the Code of Massachusetts
Regulations and the Division of Health Care Finance and Policy.
These are the executive and legislative branches of the
Commonwealth of Massachusetts. The University of Massachusetts
is merely a "lay board" and derives authority to perform certain
functions and only those functions. The actions by the
University of Massachusetts Health Services would be in direct
contradiction, action and violation of the statutory laws, Codes
and Guidelines of Massachusetts and would violate their
responsibility to the citizens and the class action members,
which are students, of the Commonwealth of Massachusetts.

39

The University of Massachusetts Board of Trustees is obligated to provide the State Auditor with accountability of said fees, from Mass General Law, Chapter 75 §1A:

"Said fees established under the provisions of this section shall be retained by the board of trustees in a revolving fund or funds, and shall be expended as the board of the institution may direct; provided that the foregoing shall not authorize any action in contravention of the requirements of Section 1 of Article LXIII of the Amendments to the Constitution. Said fund or funds shall be subject to annual audit by the state auditor;" The ramifications of a potential audit from an outside, independent source, may prove distasteful and bothersome to those that are involved, in that the Massachusetts State Auditor, and others may have been cognizant, aware and knowledgeable that the University of Massachusetts at Amherst, and other institutions, were violating the Legislative Intent of Massachusetts General Law Chapter 15A, §18, the Code of Massachusetts Regulations 114.6 CMR 3.00 and the Division of Health Care Finance and Policy guidelines in the Catalog of Health Care Programs for Uninsured and Underinsured individuals, Third Edition, May 2004, page 95.

The mandated Student Insurance Plan, is not a fee. It is a plan and the University of Massachusetts Health Services may treat this revenue in a different manner, and not be providing the State Auditor with a review mechanism for the protection of the citizens of the Commonwealth of Massachusetts.

## MASSACHUSETTS BOARD OF EDUCATION AND UMASS BOARD OF TRUSTEES

The University of Massachusetts Board of Trustees is subject to the Massachusetts Board of Higher Education, a "lay board", and has only a limited authority, under Massachusetts General Law Chapter 75, §1A:

" The trustees shall maintain high educational standards at the university and shall, subject only to the general authority in the board of higher education, have complete authority to establish, locate, support, consolidate or abolish classes, courses, curricula, departments, divisions, schools or colleges of the university wherever and whenever required in meeting the needs of the commonwealth in the field of public higher education"

The University of Massachusetts Board of Trustees are not authorized to interpret Massachusetts Statutory Law.

The Massachusetts Board of Education receives its authority from the Massachusetts General Court, and is a "lay board", Chapter 15A §1 Policy and goals:

"Section 1. It is hereby declared to be the policy of the commonwealth to provide, foster and support institutions of public higher education that are of the highest quality, responsive to the academic, technical and economic needs of the commonwealth and its citizens, and accountable to its citizens through lay boards, in the form of the board of higher education and the boards of trustees of each of the system's institutions"

The Massachusetts Board of Higher Education and the University of Massachusetts Board of Trustees is accountable to the citizens of the Commonwealth of Massachusetts.

41

The Massachusetts General Laws specifically designates what the "lay boards" are, that is, what their purpose and function is. It does not stipulate that either of these two specific boards are designated to interpret statutory law and indiscriminately apply policies against a particular class of students.

Massachusetts General Laws, Chapter 15, §1:

> "It is hereby further declared that in pursuit of its stated goals, the system of public higher education will strive for excellence in its programming and strengthen the access of every individual in the commonwealth to educational opportunities.
>
> It is hereby further declared that by maintaining a high quality system of public colleges and universities, the commonwealth moves toward achieving the following goals:--
>
> (a) to provide its citizens with the opportunity to participate in academic and programs for their personal betterment and growth, as well as that of the entire citizenry;
>
> (b) to contribute to the existing base of research and knowledge in areas of general and special interest, for the benefit of our communities, our commonwealth and beyond; and
>
> (c) to understand the importance of higher education to the future of the economic growth and development of the commonwealth, and, by so doing, prepare its citizens to constitute a capable and innovative workforce to meet the economic needs of the commonwealth at all levels.
>
> The board of higher education, in this chapter called the board or the council, shall be responsible for defining the mission of and coordinating the state's system of higher education in accordance with the provisions of this chapter. The council shall work with boards of trustees to identify and define institutional missions, taking into account regional needs, as well as to define each institution's role within the greater system. Said institutional missions shall also relate to the mission the council shall identify for each category of institution within the system, including the university, the state college, and community college segments. The council shall be responsible for publishing such mission statements, which shall be used for purposes of accountability, efficiency, and focus.

The board shall work in conjunction with boards of trustees to hold the system accountable for achieving its goals and establishing a comprehensive system to measure quality by defining educational achievement and success with the use of standards and measurements. The council shall encourage an economical and effective use of the resources of the commonwealth with particular emphasis upon the development of regional and local consortia and related co-operative arrangements by and between public and independent institutions of higher education.

The board shall, work to coordinate its activities within a framework of an integrated public education system extending from early childhood programs through the university level, to promote coordination and greater benefits to students. The council shall also encourage collaboration between educational institutions and business and industry in order to promote employment opportunities and educational improvements.

In achieving these ends the council shall foster decision-making close to the actual learning environment. The council shall encourage participation in that process by students, faculty, and the general public in an effort to create and maintain a system of higher education which provides the cultural, economic and personal growth opportunities to enrich and empower the lives of the people of this commonwealth.

## PLAINTIFF HAS A FEDERAL RIGHT TO A HIGHER EDUCATION

Defendant's Counsel argued the point that this Plaintiff did not have a Federal Constitutional Right to Education. Plaintiff is an active client with the Massachusetts Rehabilitation Commission. Under the Federal Code of Regulations, Title 34 Code of Federal Regulations:

### § 361.1 Purpose.

Under the State Vocational Rehabilitation Services Program (Program), the Secretary provides grants to assist States in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs, each of which is—

(a) An integral part of a statewide workforce investment system; and

(b) Designed to assess, plan, develop, and provide vocational rehabilitation

43

services for individuals with disabilities, consistent with their

strengths, resources, priorities, concerns, abilities,

capabilities, interests, and informed choice, so that they may

prepare for and engage in gainful employment.

(Authority: Section 100(a)(2) of the Act; 29 U.S.C. 720(a)(2)).

Plaintiff has sought the assistance of the Massachusetts
Rehabilitation Commission, a duly authorized agency of the Commonwealth
of Massachusetts which is empowered to service individuals with a
disability. Plaintiff is an individual with a documented disability.

When the University of Massachusetts Health Services, and the
Associate Counsel for the University refused to acknowledge that the
Plaintiff was correct in his determination of the mandatory fee, they
failed to provide plaintiff with access to vocational rehabilitation
and inured to insure that a *ultra vires* plan was improperly being
billed and exacted from this plaintiff before he could attend the
University of Massachusetts at Amherst thus invoking his Federal Right
to a Higher Education under Title 34 CFR §361.1, Office of Special
Education and Rehabilitation Services.

Under the Federal Code of Regulations plaintiff is classified as
A student that is receiving vocational rehabilitation services. This
information can be found through Code of Federal Regulations Title 34,
Volume 2, Parts 300 to 399 Revised as of July 1, 1999 From the U.S.
Government CITE: 34CFR361.22 , Page 279-280, TITLE 34 EDUCATION PART
361 THE STATE VOCATIONAL REHABILITATION SERVICES PROGRAM
Subpart B--State Plan for Vocational Rehabilitation Services:

"(b) Students with disabilities who are not receiving

special education services. The State plan must contain plans,

policies, and procedures, including cooperation with appropriate

agencies, designed to ensure that students with disabilities who are not receiving special education services have access to and can receive vocational rehabilitation services, if appropriate, and to ensure outreach to and identification of those students. (Approved by the Office of Management and Budget under control number 1820-0500) (Authority: Secs. 101(a)(11)(C), 101(a)(24) and 101(a)(30) of the Act; 29 U.S.C. 721 (a)(11), (a)(24), and (a)(30)) Note: The following excerpt from page 33 of Senate Report No. 102-357 further clarifies the provision of transition services by the State vocational rehabilitation agency: The overall purpose of this provision is to ensure that all students who require vocational rehabilitation services receive those services in a timely manner. There should be no gap in services between the education system and the vocational rehabilitation system * * *. The committee intends that students with disabilities who are eligible for, and who need, vocational rehabilitation services will receive those services as soon as possible, consistent with federal and state law. These provisions are not intended in any way to shift the responsibility of service delivery from education to rehabilitation during the transition years. School officials will continue to be responsible for providing a free and appropriate public education as defined by the IEP. The role of the rehabilitation system is primarily one of planning for the student's years after leaving school. (S. Rep. No. 357, 102d Cong., 2d. Sess. 33 (1992))

Plaintiff's enrollment with the Massachusetts Rehabilitation Commission falls under the purview and review of the Federal Government because the Federal Government funds the programs of the Massachusetts Rehabilitation Commission.

"The State Vocational Rehabilitation Services Program
(VR program) is authorized by Title I of the Rehabilitation Act
of 1973, as amended (Act) (29 U.S.C. 701-744). The VR program
provides support to each State to assist it in operating a
statewide comprehensive, coordinated, effective, efficient,
and accountable State program, as an integral part of a
statewide workforce investment system, to assess, plan, develop,
and provide vocational rehabilitation (VR) services for
individuals with disabilities so that those individuals may
prepare for and engage in gainful employment consistent
with their strengths, priorities, concerns, abilities,
capabilities, interests, and informed choice."

Plaintiff is an eligible applicant according to the Code of
Federal Regulations in a Federally recognized, supported and reviewed
agency such as the Massachusetts Rehabilitation Commission:

"(15) Eligible individual means an applicant for
vocational rehabilitation services who meets the eligibility
requirements of Sec. 361.42(a)" (Authority: Sections 7(20)(A)
and 102(a)(1) of the Act; 29 U.S.C. 705(20)(A) and 722(a)(1))
Plaintiff is an active client in a Federally recognized,
supported and reviewed agency such as the Massachusetts
Rehabilitation Commission.

"14) Designated State unit or State unit means either—
(i) The State vocational rehabilitation bureau, division, or
other organizational unit that is primarily concerned with
vocational rehabilitation or vocational and other
rehabilitation of individuals with disabilities and that is
responsible for the administration of the vocational

46

rehabilitation program of the State agency, as required under Sec. 361.13(b); or

(ii) The State agency that is primarily concerned with vocational rehabilitation or vocational and other rehabilitation of individuals with disabilities. (Authority: Sections 7(8d)(B) and 101(a)(2)(B) of the Act; 29 U.S.C. 705(8)(B) and 721(a)(2)(B))

Plaintiff is an individual with a Federally recognized illness:

41) Physical or mental impairment means--

(i)    Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculo-skeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine; or

(ii) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(Authority: Sections 7(20)(A) and 12(c) of the Act; 29 U.S.C. 705(20)(A) and 709(c))

## PLAINTIFF HAS A MASSACHUSETTS STATUTORY RIGHT TO AN EDUCATION

Defendant's Counsel, by telephone hearing, argued that plaintiff did not have a "general right to a higher education".    The

47

Massachusetts General Laws, Chapter 15A §1 **Policy and goals states otherwise:**

"Section 1. It is hereby declared to be the policy of the commonwealth to provide, foster and support institutions of public higher education that are of the highest quality, responsive to the academic, technical and economic needs of the commonwealth and its citizens, and accountable to its citizens through lay boards, in the form of the board of higher education and the boards of trustees of each of the system's institutions.

It is hereby further declared that in pursuit of its stated goals, the system of public higher education will strive for excellence in its programming and strengthen the access of every individual in the commonwealth to educational opportunities.

It is hereby further declared that by maintaining a high quality system of public colleges and universities, the commonwealth moves toward achieving the following goals:--

(a) to provide its citizens with the opportunity to participate in academic and educational programs for their personal betterment and growth, as well as that of the entire citizenry;

Plaintiff is a citizen of the Commonwealth of Massachusetts and has resided in the Commonwealth of Massachusetts for over thirty-five years.

## THE JUDICIARY AND THE BOARD OF TRUSTEES

Massachusetts Appeals Court held, in O'Coins, Inc. v. Treasurer of Worcester County, 362 Mass 507, 511 (1972) that:

48

"it was never intended that any one department(plaintiff inserted: e.g. Board of Trustees), through the exercise of its acknowledged powers, should be able to prevent another department(plaintiff inserted: e.g. United States District Court) from fulfilling its responsibilities to the people under the Constitution"

The O'Coin court cited the Massachusetts Constitution Article 29 which provides:

"It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and the administration of justice". The Court further explained citing Article 11 which provides that:

"Every subject of the commonwealth...ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." As the Court explained:

"From these provisions it necessarily follows that courts of general jurisdiction have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his liberty, property or character is at stake. Simply stated, implicit in the constitutional grant of judicial power is authority necessary to the exercise of that power. Such authority is not limited to adjudication, but includes certain ancillary functions, such as rulemaking and judicial administration which are essential if the courts are to carry out their constitutional mandate."

The doctrine of inherent judicial authority in Massachusetts is intimately connected to the doctrine of separation of powers set forth in <u>Article 30</u> of the Massachusetts constitution. "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

Plaintiff requests that if his legal counsel cannot be the Student Legal Services Office, because of a threat of removal of their litigation authority by the University of Massachusetts Board of Trustees, and the denial of the University of Massachusetts Board of Trustees to allow the Student Legal Services Office to litigate against the Trustees, that, this court, appoint an attorney that will serve the interests of this Plaintiff and the class members similarly situated. Should the court not appoint an attorney for plaintiff, but does issue a Temporary Restraining Order against the defendants, plaintiff requests that the United States District Attorney be appointed to investigate and adjudicate this matter on behalf of the class members, and the citizens of the Commonwealth of Massachusetts.

The University of Massachusetts Board of Trustees, lacks the authority to overrule the judicial authority of this court. This court has proper jurisdiction and this venue is proper to ascertain and determine the merits of the case plaintiff brings on behalf of the members of the class action suit.

## THE 11th AMENDMENT AND PLAINTIFFS RIGHT TO SUE THE STATE

Defendant's Counsel, by telephone hearing, attempted to argue that this action was not an actionable cause and that Plaintiff was not in a capacity to sue the state and that the 11th Amendment of the Constitution prevented the same and the Commonwealth of Massachusetts had Sovereign Immunity.  In Osborn v. Bank of the United States, 22 U.S. (9 Wheat.)738 (1824) the Court, through Chief Justice Marshall, held that the Bank of the United States could sue the Treasurer of Ohio, over Eleventh Amendment Objections, because the plaintiff sought relief against a state officer rather than against the state itself.  Defendant's counsel submitted answer to the complaint served against the defendants by providing not one, but two appearances for the defendants he represents. defendant's Counsel represents three of the five defendants and is not in a capacity to represent the other two, no matter what his good intentions are.  The three that counsel represent are two individuals and one "lay board".

The United States Supreme Court has held:

"a suit is not against a State unless the State is a named party of record"  9 Wheat. At 850-858

Plaintiff has not named the Commonwealth of Massachusetts as a defendant, but named individuals in their official capacity and two "lay boards" in their capacity.  Plaintiff has named the Division of Health Care Finance and Policy which is not the entire state, but an executive branch of the Commonwealth of Massachusetts and therefore is not the entire Commonwealth.

The Court further adopted the rule of United States v. Lee, 167 U.S. 204 (1897) in Tindal v. Westley, 106 U.S. 196 (1883) a tort suit against federal officials, to permit a tort action against state officials to recover real property held by them and

51