claimed by the State and to obtain damages for the period of withholding.  The immunity of a State and from suit has long been held not to extend to actions against state officials for damages arising out of willful and negligent disregard of state laws.  (See Johnson v. Lankford, 245 U.S. 541 (1918); Martin v. Lankford, 245 U.S. 547 (1918).

The defendants have willfully, negligently and/or gross negligently disregarded state laws.

The reach of the rule is evident in Scheur v. Rhodes, 416 U.S. 233 (1974) in which the Court held that plaintiffs were not barred from suing the governor and other officials of a State alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials.  There was no "executive immunity" from suit, the Court held; rather, the immunity of state officials is qualified and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken.  Such suits, like suits against local officials and municipal corporations, are typically brought under 42 U.S.C. §1983 and typically  involve all the decisions respecting liability and immunities thereunder.

In Quern v. Jordan, 440 U.S. 332 (1979) (reaffirming Edelman v Jordan, 425 U.S. 651 (1974), the court held:

"that state officials could be ordered to notify members of the class that had been denied retroactive relief in that case that they might seek back benefits by invoking state

administrative procedures; the order did not direct the payment
but left it to state discretion to award retroactive relief"

## THE INTERPRETATION OF STATUTES

Defendant's Counsel argued, by telephone hearing, that the
University of Massachusetts Board of Trustees had the authority to
interpret Massachusetts General Law Chapter 15A §18.  Counsel argued
that this interpretation, allowed the defendants to arbitrarily
determine a percentage below the Massachusetts General Laws, the Code
of Massachusetts Regulations and the Guidelines from the Division of
Health Care Finance and Policy.  Massachusetts courts have held that
that a statute cannot be interpreted

"so as to render it or any portion of it meaningless" Adamowicz
v. Ipswich, 395 Mass. 757, 760 (1985).

Defendant's counsel argued that the legislators intent was to
reduce the "Free Care" pool, and the Defendants were fulfilling their
duty to the Commonwealth by reading this passage of the statute without
consideration of the numerical value (75%) and the words preceding this
numerical value "at least".  Such interpretation argued by defendant's
counsel is analogous to the University of Massachusetts Board of
Trustees adapting the drinking age from twenty one to twenty four, or
eighteen, based on whatever words they wish to employ in determining
either of these outcomes.  Plaintiff has shown that the University of
Massachusetts Board of Trustees is a "lay" organization and is not
entitled to interpreting statute whether said statute would help or
hinder the citizens of the Commonwealth of Massachusetts.  In this
example, plaintiff argues that the reduction of the drinking age would
both be advantageous and disadvantageous for the citizens of the
Massachusetts;  likewise raising the drinking age would foster the same

53

reaction, both advantageous and disadvantageous. The same can be held true for the minimum threshold for the student health insurance plan. While it can lower the uncompensated "free care" pool, it can also preclude students from entering the University because it raises the cost of their education and places an undue burden on them to raise the necessary funds to attend the University, to pay for this, ultra vires plan. In either case, the University of Massachusetts Health Services or the University of Massachusetts Board of Trustees is not authorized to change the drinking age, or the minimum stipulated in the student health insurance plan and this authority is vested in the elected representatives and senators of the 351 cities and towns of which they serve, the Massachusetts General Court.

In ROPT Ltd. P'Ship v. Katin, 431 Mass. 601, 603 (2000) the Court held that the:

"court must not ignore statutory language or produce an illogical result".

The language of interpreting statutory language can be difficult if only certain statements are held out and above the entire statute. This is an incorrect argument that defendant's counsel argues. The court held in Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass 101, 104 (2000) that a:

"statute must be read as a whole to produce an internal consistency".

In Metropolitan Youth Services, Inc. v Massachusetts State Lottery Commission, Docket Number 00-4532, Middlesex Court, the court noted and stated:

"In recent years, a great deal of attention has been given in both case law and academic writing to the use of dictionaries as an aid in statutory interpretation.  See e.g., A.R. Randolph, "Dictionaries, Plain Meaning, and Context in Statutory Interpretation," 17 Harvard Journal Law & Public Policy 71 (1994); Note, "Looking it Up: Dictionaries & Statutory Interpretation," 107 Harvard Law Review 1437 (1994).  Resort to dictionaries or to what is often termed the "plain meaning" of statutory language has emerged as a reaction what was regarded as judicial overreaching in terms of unwarranted reliance on legislative history, among other things."

The sentence that is in question from the Massachusetts General Laws and the Code of Massachusetts Regulations has no punctuation.  Even if it did, the court has found, in Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 432 (1983) that:

"in the interpretation of statutes, it has been repeatedly observed that "matters of punctuation are not necessarily determinative.""

Defendant's counsel argued, in essence, that their interpretation of the statute was void of the words "at least" preceding the numerical value (75%).  The Oxford American Dictionary and Thesaurus, Oxford University Press, 2003, pg 852 defines the word, "least", in its first meaning, as "smallest; slightest; most insignificant."  The third meaning from this same Dictionary and Thesaurus refers to "least" with this definition "in the least degree".  The dictionary continues to refer to

55

"least" also as "at the least" which would be meant to be "not less than".

On the World Wide Web, at http://dictionary.oed.com the Online dictionary under its fifth definition, describes it as follows:

"5. Governed by a preposition, forming an adverbial phrase. A. at least, at the least (also (ME.) Middle English atta leste, Ormin att allre. A qualifying phrase, attached to a quantitative designation to indicate that the amount is the smallest admissible."

The New Oxford American Dictionary, Oxford University Press, 2001 page 970 defines the word "least" under Phrases, in its first definition referring to its use with the word "at", as in "at least" defining the two to mean "not less than".

Defendant's counsel's argument simply does not hold weight, at least, from this Plaintiff's viewpoint, and as taken in the context of generally accepted use and language of the English language.

The proper interpretation of the sentence within the Code of Massachusetts Regulations and the Massachusetts General Laws would imply that the percentage of seventy-five would be a minimum, which is clearly the intent of the Legislature in considering that the Division of Health Care Finance and Policy has published it in their Access to Health Care in Massachusetts, A Catalog of Health Care Programs for Uninsured and Underinsured Individuals. Third Edition, May 2004.

This document requires the reader to install Adobe Acrobat and can be downloaded and reviewed from this website: www.mass.gov/dhcfp/pages/pdf/access.pdf    In this Executive document, student health insurance is clearly explained and the sentence employed and utilized in both the Massachusetts General Laws and the Code of Massachusetts Regulations can be found within the first paragraph.

"A part-time student is defined as a student participating in at least 75% of the full-time curriculum."

The Division of Health Care Finance and Policy clearly define the Eligibility requirements for Students.  Under eligibility:

"Full-time and Part-time students (75% time *or more*)(emphasis added) enrolled in Massachusetts institutions of higher learning are *required*(emphasis added) to participate. Other students *may*(emphasis added) purchase plans, and family plans are also available."

The complete reading of the statute delineates in the second paragraph, first sentence, of the Code of Massachusetts Regulations:

"Prior to the 1989-1990 academic year, no law required (emphasis) students to have health insurance in order to enroll in higher education, nor was there a standard set of *defined minimum benefits* (emphasis added) for college and university health insurance programs."

Thus, if reading this section of the Code of Massachusetts Regulations, the term "minimum" is referring to the percentage

clearly described in the preceding paragraph.  There are no other numerical references in this statute other than the date the law came into effect and the Chapter and section of the Acts of the Commonwealth.  There is no other possible use of this word within the statute and its application.  The percentage "75" was intended to be a minimum.  Massachusetts General Law and the Code of Massachusetts Regulations are clear and unequivocal on this. The percentage is a minimum, and it is a statutory law according to be enforced by the University of Massachusetts at Amherst and the University of Massachusetts Board of Trustees.

### THE ARGUMENT

The argument Plaintiff argues is precise, clear, unequivocal, undeniable and factual.  The University of Massachusetts Health Services and the University of Massachusetts Board of Trustees have been discriminating against a class of students enrolling in less than nine (9) but more than five (5) credits for potentially fifteen years.

The further extended argument is, through careful research and analysis, other Massachusetts colleges and universities that did not follow the letter of the law accordingly, may have also violated part-time students rights, possibly at the same or different credit levels. Such actions of mandating and forcibly enrolling these part-time students in health insurance programs, would again be in violation of the Massachusetts General Laws, the Code of Massachusetts Regulations and the Division of Health Care Finance and Policy Guidelines.

## THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT ISSUE A TEMPORARY RESTRAINING ORDER AGAINST THE DEFENDANTS.

By failing to allow plaintiff the opportunity to register, enroll and participate at the University of Massachusetts at Amherst the defendant's will cause irreparable harm to the plaintiff.  The defendant's are in violation of Massachusetts General Laws Chapter 15A §18 and are forcing this part-time student to enroll in a program that is contrary to the Law, Code and Guidelines issued by the Massachusetts General Court and the Division of Health Care Finance and Policy, of the Executive Office of Health and Human Services.

## THE DENIAL OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER THE EDUCATION CLAUSE CONSTITUTES IRREPARABLE HARM.

By failing to abide by the Massachusetts General Laws, the Code of Massachusetts Regulation, the Division of Health Care Finance and Policy, the defendant's have failed to provide Plaintiff with the education to which the plaintiff is entitled under the Education Clause.  The deprivation of plaintiff's constitutional rights is an irreparable harm.  O'Brien v. Mass Bay Transp. Authority, NO. Civ A 951659E, 1995 WL 808707(Mass. Super., Apr. 6, 1995)(citing Wright & Miller, Federal Prac. & Procedure §2948

"[w]hen an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary";

Whitney v. Ashburnham-Westminister Regional School District., No. Civ. A. 960365S, 1996 WL 1185116 (Mass Super., Feb. 22, 1996)

59

## ENFORCEMENT OF DEFENDANT's INTERPRETATION DISPARAGES
## PLAINTIFF, AFFECTS HIS DIGNITY AND THREATENS HIS SELF-ESTEEM

Defendants actions of denying plaintiff enrollment at the University of Massachusetts at Amherst based on an illegal and *ultra vires* policy, have disparaged the plaintiff and has had his reputation diminished and looked down upon by means of a status of "administratively withdrawn" which has effectively denied the Plaintiff to use borrowing privileges at the University of Massachusetts W.E. DuBois library to continue his pursuit of a higher education. Such status has also prevented Plaintiff from accessing the system known as Spire and has denied Plaintiff the ability to register for classes.

" To adversely disparage a student's competence by such language, is stating that he or she lacks a necessary characteristic, thereby impair his or her standing within the community, harms one reputation and is defamatory." Ravnikar v. Bogojavlensky, 408 Mass 627 (Mass. 2003); see also RESTATEMENT OF TORTS (Second) (1977) §§559-573

One of the express goals of the Education Reform Act is the provision of an education in which students "engage fully in learning as an inherently meaningful and enjoyable activity without threats to their sense of security or self-esteem" Massachusetts General Law Chapter 69, §1. Contrary to this Act, under the policy of the University of Massachusetts Health Services, plaintiff is insecure about his plans for the future, including his plans for continuing his education beyond the University of Massachusetts at Amherst.

The uncertainty and insecurity of not knowing whether plaintiff will receive a Temporary Restraining Order against the defendants has left plaintiff, being "physically and emotionally drained", and "frustrated" and "emotionally upset" at the prospect of explaining to all the individuals, Professors, support services as to why plaintiff would not be enrolled at the University of Massachusetts at Amherst this semester.  These threats to plaintiff's self-esteem and individual indignities constitute irreparable harm.  See Cupolo v. Bay Area Rapid Transit, 5 F. Supp. 2d 1078 (N.D.Cal 1997)(injuries to individual dignity constitute irreparable harm); Chalk v. United States District Court, 840 F.2d 701, 710 (9th Cir. 1988)(finding irreparable injury can occur from emotional stress, depression and reduced sense of well-being); Sullivan v. Vallejo City Unified Sch, Dist., 731 F. Supp 947, 961 (E.D. Cal 1990) (finding inconvenience to school [district] caused by preliminary injunction did not outweigh injury to the plaintiff's dignity and self-respect).

### BALANCING THE HARMS SUFFERED BY THE PLAINTIFFS AND THE DEFENDANTS FAVORS THE ISSUANCE OF A PRELIMINARY INJUNCTION.

The goal of a preliminary injunction is to minimize the risk of irreparable harm. Packaging Indus. Group Inc. v. Cheney, 380 Mass. 143 (1952). If the moving party can demonstrate that:

"the requested relief is necessary to prevent irreparable harm to it and that *granting the injunction poses no substantial risk of such harm to the opposing party*, a possibility of success on the merits warrants issuing the injunction." Id. at 617, n. 12 (emphasis added).  When a governmental authority or agent acts in an *ultra vires* manner, it cannot show that issuing an injunction prohibiting them from continuing to act *ultra vires* will

constitute harm under the balancing analysis of Cheney. See One

Centre Street, Inc. v. Finnegan, No. Civ.A 981259B, 1998 WL

1183949 (Mass. Super. Oct. 13, 1998)(ruling there can be no harm

inflicted on either the governmental authority or the public

interest because the government official acted ultra vires).

The defendants have acted in an ultra vires fashion by enacting a

policy and guideline that is repugnant to Massachusetts General Law.

The defendants thus are precluded from asserting that a preliminary

injunction would cause harm to them or the public interest.

Consequently, balancing the harms warrants the issuance of a

preliminary injunction against the defendants.  Even if the defendants

were not barred from demonstrating any alleged harm, they still could

not establish that the balancing of harms tips in their favor.

### The CLASS MEMBERS

The plaintiff is an aggrieved person under federal civil

rights law as a result of the actions, policies and practices of

defendants.

The named individual plaintiff seeks immediate Preliminary

Declaratory Mandatory Injunctive Relief in the form of a Temporary

Restraining Order on behalf of himself to prevent defendants from

denying plaintiff access to enroll at the University of Massachusetts
at Amherst during the Fall of 2004 by removing the status of

"Administrative Withdrawal" from his record(s) and allow plaintiff to

register, enroll and continue his pursuit of a higher education.

All class members are aggrieved persons under federal civil

rights law as a result of the actions, policies and practices of

defendants.  Plaintiff seeks, on behalf of all class members, an order

from this court, that shall prevent the defendants from requiring

62

students, the class members, here in named in this class action
suit, presently and in the future, from mandating their participation
in a student health insurance program.

All class members are aggrieved persons under federal civil
rights law as a result of the actions, policies and practices of
defendants. Plaintiff seeks, on behalf of all class members, the
University of Massachusetts Health Services to reimburse, credit or
otherwise refund any and all monies charged against the class, or any
other individual, in violation of the Laws, Codes and Guidelines of the
Commonwealth of Massachusetts.

The members to this suit, for whatever period of time the
defendants have been incorrectly, wrongfully charging students a
mandatory health plan, during regular academic session, during non-
academic session, whenever such plan was billed and received as monies
from the class members, irregardless of the term the class members were
attending the University of Massachusetts at Amherst.

This matter is properly maintainable as a class action pursuant
to Federal Rules of Civil Procedure 23(b)(2) in that the class members
are so numerous as to make the joinder of all them impracticable.
Based on information and belief, there have been thousands of students
enrolled at the University of Massachusetts at Amherst
campus on a part-time basis. These students have been enrolled in
courses to further their personal and education goals. The class
members may or may not still be attending the University of
Massachusetts at Amherst; may or may not reside in the Commonwealth of
Massachusetts; may or may not reside in the United States of America.
The class members affected may be matriculating or non-matriculating
students. The class members may be both older and younger

63

students and did not realize that they were being required to participate in a plan that was not mandatory or required.

The failure of the University of Massachusetts at Amherst Health Services to distinguish between the two classifications of part-time students has led to a discriminatory act against the class members.

The failure of the University of Massachusetts at Amherst to monitor the compliance of their Health Services Office with regard to the QSHIP program under Massachusetts General Laws has led to a discriminatory act against the class members.

The failure of the University of Massachusetts Board of Trustees to ensure that students were properly classified according to the Massachusetts General Laws and the Code of Massachusetts Regulations and the Guidelines issued from the Division of Health Care Finance and Policy has led to a discriminatory act against the class members.

The failure of the Director of Health Services, Bernadette Melby to take remedial action to overcome the effects of past policies and practices has led to this class action lawsuit on behalf of the class members.

There are questions of law and fact common to the class members.

These common Questions of law and fact predominate over questions affecting individual class members. Among the questions of law and fact common to the class is whether the practices and policies of the University of Massachusetts at Amherst Health Services; the University of Massachusetts at Amherst; the University of Massachusetts Board of Trustees; and the Massachusetts Board of Higher Education; the Division of Health Care Finance and Policy has violated the class members rights to seek a higher education by exploiting their status as part-time students by mandating a health insurance program in violation of the Code of Massachusetts Regulations CMR 114.6 3.00 Qualifying Student

64

Health Insurance Program (QSHIP).

Whether the University of Massachusetts Board of Trustees, and the Massachusetts Board of higher Education, two "lay boards", have conspired, individually and collectively, to deny the class members the ability to sue, by the Student Legal Services Office, by mandating a fee to operate this office, and deny the class members the ability to use their services equally according to the United States Constitution.

Whether the University of Massachusetts Board of Trustees, and the Massachusetts Board of Higher Education, two "lay boards" have willingly, recklessly, negligently and/or gross negligently denied the class members full and uninhibited use and services from the Student Legal Services Office at the University of Massachusetts at Amherst.  The Student Legal Services Office is funded through revenue billed and collected from students, for their individual and collective use, both Full-time and Part-time students at the University of Massachusetts at Amherst.

Whether the University of Massachusetts Board of Trustees, a "lay board", can prevent the University of Massachusetts Student Legal Services Office from seeking injunctive and declaratory relief on behalf of a class of students, as named in this proposed class action suit under the United States Constitution, the Code of Federal Regulations, the Federal Rules of Civil Procedure, the Massachusetts Constitution, the Code of Massachusetts Regulations, and the Massachusetts Rules of Civil Procedure.

The claims of the individual plaintiff are typical of the claims of the proposed class members.  The plaintiff, as the other class members, are students that wish to continue their education on a part-

65

time basis, and desire to further their education without being mandated to participate in a health insurance program at the university of Massachusetts at Amherst through the University of Massachusetts at Amherst Health Services Office. The Plaintiff, as the other class members, may have already enrolled in courses at the University of Massachusetts at Amherst and may have been subjected to this mandatory plan of the health insurance program.

The named individual Plaintiff will fairly and adequately protect the interests of the class members.

Defendants have acted on grounds generally applicable to the class, thereby making final preliminary declaratory mandatory injunctive relief with respect to the plaintiff as a whole appropriate.

## MASSACHUSETTS CONSTITUTIONAL PROVISIONS

Under the Massachusettes Constitution, <u>Article V.:</u>

"All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are accountable to them."

The University of Massachusetts at Amherst Board of Trustees is accountable to the Plaintiff and the class members. The Board of Higher Education is accountable to the plaintiff and the class members. The Division of Health Care Finance and Policy is accountable to the plaintiff and the class members. The University of Massachusetts at Amherst Health Services is accountable to the plaintiff and the class members.

66

Under the Massachusetts Constitution, <u>Article VI</u>.

"No man, nor corporation, or association of men, have any
other title to obtain advantages, or particular and exclusive
privileges, distinct from those of the community, than what
arises from the consideration of services rendered to the public;
and this title being in nature neither hereditary, nor
transmissible to children, or descendants, or relations by blood,
the idea of a man born a magistrate, lawgiver, or judge, is
absurd and unnatural."

The University of Massachusetts Board of Trustees has voted to
place themselves out of harms way by preventing any lawsuits to be
filed by the University of Massachusetts Student Legal Service Office
by entitling themselves to "particular and exclusive privileges" that
other citizens, distinct from those of the community,  in the
Commonwealth of Massachusetts are not accorded.  The Massachusetts
Board of Trustees is a "lay board" and is not legislatively authorized
to deprive students of their legal right to be fully represented under
the laws of the Commonwealth of Massachusetts or the United States
Federal Constitution.

Under the Massachusetts Consitution, <u>Article VII</u>.

"Government is instituted for the common good; for the
protection, safety, prosperity and happiness of the people; and
not for the profit, honor, or private interest of any one man,
family, or class of men: Therefore the people alone have an
incontestable, unalienable, and indefeasible right to institute
government; and to reform, alter, or totally change the same,

67

when their protection, safety, prosperity and happiness require it."

Plaintiff, and the class members, seek to enforce Massachusetts General Law Chapter 15A in respect to their rights as a class of students, members, that have had their prosperity and happiness affected by the discriminatory actions on the part of the Defendants.

Under the Massachusetts Constitution, Article XI.

"Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

The University of Massachusetts Board of Trustees require that fees are to be paid to the University, of which the University is authorized to retain, such as the Student Activities Fee be paid by, full-time and part-time students, in order to maintain services such as the University of Massachusetts Student Legal Services Office which advise and counsel students on various legal matters. The fact that the University of Massachusetts Board of Trustees demands that students make payments for services but denies a student equal access to obtain services is contrary to the United States Constitution and the Massachusetts Constitution.

The fact that a Mr. Getachew, of the Division of Health Care Finance and Policy admitted that students are not required to obtain health insurance if they are enrolled under nine (9) credits and then,

68

sought counsel to obtain advice, to refuse this Plaintiff access to

information that is easily accessible in the public domain; and that

advice that is public record, public information, and the right of

every citizen to obtain said advice and information, by "right and

justice freely", and "without any denial" and counsel had instructed

Mr. Getachew "to not give anything in writing" and denied Ms Rastogi,

on behalf of this plaintiff, a certain remedy, by having recourse to

the laws, does invoke plaintiffs Massachusetts Constitutional rights

"for all injuries and wrongs which he may receive in his person,

property, or character.""

Under the Massachusetts Constitution, Article XXIII.

"No subsidy, charge, tax, impost, or duties, ought to be

established, fixed, laid, or levied, under any pretext

whatsoever, without the consent of the people or their

representatives in the legislature."

The Commonwealth of Massachusetts Legislature writes the laws of

this great commonwealth.  The Qualifying Student Health Insurance

Program (QSHIP) was written by the legislature of the Commonwealth.

The QSHIP program is administered by Division of Health Care Finance

and Policy.  The Division writes Codes utilizing this Statutory Law,

known as the Code of Massachusetts Regulations.  The Division also

wrote guidelines regarding this and other insurance regulations located

in their guidebook: "Access to HealthCare".  The University of

Massachusetts Health Services manages and is in a position to insure

that the Qualifying Students have access to this program ; the

University Board of Trustees; the Board of Higher Education; the

Division of Health Care Finance and Policy have knowingly imposed,

69

fixed, levied and collected a plan, under the pretext that such plan was allowable, legal and authorized, against the clear and unmistakeable guidelines established by the Massachusetts Legislature, the Division of Health Care Finance and Policy which was in violation of its own guidelines.

### PLAINTIFF IMMEDIATE RELIEF REQUESTED

WHEREFORE Plaintiff respectfully pray that this Appeals Court overturn the erroneous rulings of United States District Court Judge F. Dennis Saylor IV and grant the Preliminary declaratory Mandatory injunctive relief sought, as well as nominal damages and other relief, set forth hereinafter in the general prayer for relief.

### GENERAL PRAYER FOR RELIEF

WHERFORE, Plaintiffs pray for judgment as follows:

a. That this Court permanently enjoin the conduct of defendants, their officers, agents, servants, and employees and direct defendants to remove the status of "administratively withdrawn" from the Plaintiff's record, and allow the plaintiff to enroll, at the University of Massachusetts at Amherst;

b. That this court permanently restrain and enjoin defendants, their officers, agents, servants, and employees from denying plaintiff, equal rights to use the University of Massachusetts Student Legal Services Office to act as counsel for Plaintiff and the Class members; or appoint an attorney to act on behalf of the plaintiff and the class members; or to appoint the United States District Attorney to investigate the allegations herein contained in this class action lawsuit

c. That this court render an immediate Preliminary Declaratory Mandatory Injunction declaring the defendants' conduct denying equal rights to plaintiff, and the class members, to be invalid andunconstitutional in all respects under the Massachusetts General Laws, Massachusetts Consituition, the United States Constitution and the Code of Federal Regulations Title 34 and Title 42.

d. That this Court render a Declaratory Judgment declaring that defendants' refusal to allow plaintiff, and the proposed class members, to have equal access to services

paid for through University Student Activities Fees, but not permitted to utilize such services as paid for as unconstitutional and constitutes impermissible discriminatory denial of civil rights of the plaintiff, and the proposed class of members, accorded by the United States Constitution and the Massachusetts Constitution.

e. That this court retain jurisdiction of this matter for the purposes of enforcing the court's order;

f. That this court exercise discretion pursuant to Rule 65 of the Federal Rules of Civil Procedure to accelerate the trial on the merits;

g. That this court order a trial by jury to assess actual and compensatory damages suffered by Plaintiff due to defendant's flagrant violation of plaintiff's constitutional rights;

h. That this court issue the requested injunctive relief without condition of bond or surety or other security being required of plaintiffs.

**PRAYER FOR OTHER RELIEF**

i. Grant to plaintiff an award of nominal damages;

j. Grant to plaintiffs an award of the costs of litigation, including reasonable attorneys' fees and expenses;

k. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 27th day of December 2004.

Scott Stern

Pro-Se Plaintiff

400 West Main Street

North Adams, Massachusetts 01247

**ACKKNOWLEDGEMENT CERTIFICATE**

71

## CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, on behalf of himself and the class members, in this action of Stern v. University of Massachusetts, et al, Case Number 04-30176-FDS, certify that I have caused a copy of the foregoing documents, Memorandum of Law in Support of Plaintiff's right to Due Process, Memorandum of Law in Support of Plaintiffs right to the Civil Rights Act of 1871, and the Motion to Request the transcriptions of the hearings of September 17, 2004 and September 23, 2004 to be paid at government expense, argued before the Honorable Judge F. Dennis Saylor IV, presiding, to be delivered, postage prepaid, to the defendants at their respective addresses; the United States Court of Appeals in Boston; the United States District Court in Worcester, on this 10th day of February, 2005.

United States District Court
595 Main Street
Worcester, Massachusetts 01608-2076

Attorney General of Massachusetts
Attention: Salvatore Giorlandino, Assistant Attorney General
One Exchange Place, 3rd floor
Worcester, Massachusetts 01608

Clerk's Office
United States Court of Appeals
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, Massachusetts 02210

University of Massachusetts
President's Office/Board of Trustees
Attention: Geoffrey McCullough, Esquire
One Beacon Street
Boston, Massachusetts 02108

_February 10th, 2005_
Date of Mailing

_Scott Stern_
Signature

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Case name _Stern vs. Umass/Amherst + others_

District Court Case No. _04-30176-MAP FDS_ District of _Massachusetts_

Date Notice of Appeal filed _October 15, 2004_ Court of Appeals Case No. _5-1043_

Form filed on behalf of _Scott Stern and the class members_

### TRANSCRIPT REPORT

Transcript Not Necessary for this Appeal _____

Transcript Already Filed in District Court. List each transcript by docket entry number and date and type of proceeding (attach separate page if necessary) _____

### TRANSCRIPT ORDER

Name of Court Reporter _Mary Ann Kusa-ryll_

Phone Number of Reporter _508-924-3399_

A. ✓ **This constitutes an order of the transcript of the following proceedings [check appropriate box(es) and indicate dates of hearing(s)]:**

| PROCEEDING(S) | HEARING DATE(S) |
|---|---|
| ☐ Jury Voir dire | |
| ☑ Opening Statement (plaintiff) | September 17,23, 2004 |
| ☑ Opening Statement (defendant) | September 17,23, 2004 |
| ☐ Trial | |
| ☑ Closing Argument (plaintiff) | September 17,23 2004 |
| ☑ Closing Argument (defendant) | September 17,23 2004 |
| ☐ Findings of Fact/Conclusions of Law | September 17,23 2004 |
| ☐ Jury Instructions | |
| ☐ Change of Plea | |
| ☐ Sentencing | |
| ☐ Bail hearing | |
| ☐ Pretrial proceedings (specify) _____ | |
| ☐ Testimony (specify) | |
| ☑ Other (specify) _All of hearings on that dates (Entire proceedings)_ | September 17,23 2004 |

NOTE: Failure to specify in adequate detail those proceedings to be transcribed may lead to the rejection of this form and the dismissal of the appeal.

B. ✓ **I certify that I have contacted the court reporter and the following financial arrangements for payment of the transcript have been made:**

☐ Private funds. _(waiting for contact back)_

☑ Government expense (civil case). IFP has been granted and a motion for transcript at government expense has been allowed. (Attach a copy of the order to each copy of this order form.) _(need to get approval from USDC (court)_

☐ Criminal Justice Act. A CJA Form 24 has been approved by the district court judge.

☐ Criminal Justice Act. A CJA Form 24 is attached for authorization by the court of appeals.

☐ Federal Public Defender/Government Counsel - no CJA Form 24 necessary.

Filer's name _Scott Stern_

Firm/Address _400 West Main St. North Adams, MA. 01247_ Filer's Signature _Scott Stern_

Telephone number _413-320-7769_ Date mailed to court reporter _____

(Court Reporter Use ONLY) Date received _____

Form CA1-10 (3/1/04)

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

## APPEARANCE FORM

Case No. 5-1043 Stern v. University of MA

### FAILURE TO FILL OUT COMPLETELY MAY RESULT IN THE REJECTION OF THIS FORM AND COULD AFFECT THE PROGRESS OF THE APPEAL

THE CLERK WILL ENTER MY APPEARANCE AS COUNSEL ON BEHALF OF:

_Scott Stern_____ as the
(Specify name of person or entity represented)

[✓] appellant(s)         [ ] appellee(s)        [ ] amicus curiae

[ ] petitioner(s)        [ ] respondent(s)      [ ] intervenor(s)

[ ] I do not represent a party to the appeal.

_Scott Stern_____
(signature)

(SIGN ONLY IF PARTICIPATING)

Corrections:

Status:

_____        Scott Stern

_____        400 W. Main St.

_____        North Adams, MA 01247

Telephone: (413) 320-7769    **Court Of Appeals Bar Number:** _____

Fax: _____        E-Mail: _SLSHW6@yahoo.com___

Has this case or any related case previously been on appeal?

Yes  ___/___            Court of Appeals No. ___██████___

No   _✓_

[ ]  IF YOU WILL NOT BE PARTICIPATING IN THIS CASE, PLEASE CHECK HERE AND RETURN, AND GIVE US THE NAME AND ADDRESS OF ANOTHER ATTORNEY, IF ANY, WHO WILL PROVIDE APPELLATE REPRESENTATION.

_____

_____

NOTE: Must be signed by an Attorney admitted to practice before the United States Court of Appeals for the First Circuit pursuant to Local Rule 46(a)(2).  If you are applying for admission, please return this appearance form **with** your application for admission.

If your name has changed since you were admitted to the First Circuit Bar PLEASE show the name under which you were admitted.

COUNSEL MUST COMPLETE & RETURN THIS APPEARANCE FORM
IN ORDER TO FILE PLEADINGS IN THIS COURT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Scott Stern,                          ) Case No.: 04-30176-FDS
400 West Main Street                  )
North Adams, MA.  01247,              ) MOTION TO ALLOW THE TRANSCRIPTION OF
and other persons similarly situated  ) SEPTEMBER 17, 2004, a telephone
in the Commonwealth of Massachusetts; ) hearing, and a hearing on September
and other persons similarly situated  ) 23, 2004 hearings, between the named
in the United States of America; and  ) Defendants and Plaintiff, with Judge
other persons similarly situated not  ) F. Dennis Saylor IV presiding, at
currently residing within the         ) Government Expense.
Commonwealth of Massachusetts or the  )
United States of America,             )
                                      )
            Plaintiff,

      vs.

University of Massachusetts at
Amherst
University Health Services
Director of Health Services,
Bernette Melby
150 Infirmary Way
Amherst, Massachusetts.   01003,
Defendant

and,

University of Massachusetts at
Amherst
Brian Burke, Associate Counsel
300 Whitmore Administration Building
Amherst, Massachusetts  01003
Defendant

and,

Massachusetts Board of Trustees,
One Beacon Street
26th Floor
Boston, Massachusetts  02108
Defendant

and,

Massachusetts Board of
Higher Education
One Ashburton Place
Room 1401
Boston, Massachusetts 02108-1696
Defendant

and,

Division of Health Care
Finance and Policy
It's EMPLOYEE "MR GETACHEW" and not
the DIVISON IN ITS ENTIRETY.
Two Boylston Street
Boston, Massachusetts 02116-4737

_____

NOW HERE COMES PLAINTIFF AND MOVES this court to humbly request that
the hearings of September 17, 2004 and September 23, 2004 be
transcribed at government expense.

Now here comes plaintiff and wishes to express his deep remorse
and regret for motioning and requesting that the Honorable Judge F.
Dennis Saylor IV, presiding over this case, to recuse himself.

Plaintiff hereby moves the Court for an order setting aside the
Judgment of the Honorable Judge F. Dennis Saylor IV and directing that
the transcript of the aforementioned proceedings before the Honorable
Judge F. Dennis Saylor IV be prepared at government expense pursuant to
28 U.S.C. §753 (f) and the defendants and plaintiffs be granted copies
of the transcripts, in addition to the United States Court of Appeals
in Boston, Massachusetts.

In support of this motion, plaintiff will rely on the
accompanying memorandum of law in support of plaintiff's right to due
process. A memorandum of law regarding the Civil Rights act of 1871
which creates a federal cause of action against state officials who

deprive private citizens of their constitutional rights.

Wherefore, for the attached reasons, inclusive of plaintiff's memorandums of law, the plaintiff prays that this court, the Honorable Judge F. Dennis Saylor will grant this motion to transcribe the proceedings at government expense and grant the plaintiff, and defendants, copies of these transcribed proceedings.

Respectfully submitted this 10th day of February, 2005 by the plaintiff, Scott Stern, on behalf of himself and the class members.

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247